HONORABLE TIFFANY M. CARTWRIGHT

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT TACOMA

BRAD ERHART,

Plaintiff,

v.

TRINET HR XI, INC., SWITCHBOARD TECHNOLOGY LABS, INC., AND HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY, INC.,

Defendants.

Case No. 3:23-cv-5882-TMC

**DEFENDANT SWITCHBOARD TECHNOLOGY LABS, INC.'S MOTION TO COMPEL ARBITRATION**

NOTED ON MOTION CALENDAR:
Friday, December 29, 2023

ORAL ARGUMENT REQUESTED

## I. RELIEF REQUESTED

Defendant Switchboard Technology Labs, Inc., ("Switchboard") moves the Court to compel Plaintiff Brad Erhart ("Plaintiff") to arbitrate his claims against Switchboard as required by the TriNet Terms and Condition Agreement ("TCA") incorporated into the parties' employment agreement. Through the TCA, Plaintiff promised to arbitrate all disputes arising out of or relating to his employment with Switchboard, as well as his co-employment with Defendant TriNet HR XI, Inc. ("TriNet"), the professional employer organization that Switchboard uses to outsource human resource management services. Under well-established law, Plaintiff is required

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

to arbitrate his claims as promised. Switchboard respectfully asks the Court to compel arbitration of Plaintiff's claims against Switchboard and to dismiss Switchboard from this lawsuit.

## II. FACTUAL BACKGROUND

### A. The Parties and the TriNet Terms and Conditions Agreement (TCA).

Plaintiff is a former employee of Switchboard. In August 2021, Switchboard offered Plaintiff a job as a Senior DevOps Engineer working remotely from Washington. As Plaintiff's offer letter explains, Switchboard contracts with TriNet to provide human resource management services, including, as relevant here, setting dispute resolution protocols. Declaration of Chris Hermida ("Hermida Decl."), Ex. A. Consequently, the offer letter incorporates Trinet's Terms and Conditions Agreement (TCA), stating that the TCA expressly forms a part of Plaintiffs' employment agreement: "This offer letter, together with the TCA and your Employee Non-Disclosure and Invention Assignment Agreement, forms the complete and exclusive agreement as to your employment with Switchboard Technology Labs, Inc." *Id.* Plaintiff had an opportunity to review the TCA before accepting Switchboard's offer of employment. Hermida Decl., Ex. B (August 19, 2021 email from Switchboard to Plaintiff attaching the TCA and stating, "As requested I've attached copies of TriNet's terms and the employee handbook.").

As explained in more detail below, the TCA requires Plaintiff to arbitrate claims against Switchboard arising out of or relating to his employment. It begins, "PLEASE READ THIS TCA CAREFULLY. IT CONTAINS IMPORTANT INFORMATION REGARDING . . . THE HANDLING OF ANY DISPUTES ARISING OUT OF YOUR RELATIONSHIP WITH TRINET, YOUR COMPANY, AND RELATED MATTERS." Hermida Decl., Ex. C at 1 (emphasis original). "[Y]our company" is defined in the TCA as "the company you work for"—i.e., Switchboard. *Id.* at 2.

Section 8 of the TCA is titled "Dispute Resolution Protocol ("DRP") and Mandatory Arbitration of Claims." *Id.* at 1, 5. It provides in part,

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

> **arbitration will be used instead of going before a court (for a judge or jury trial) . . . for any dispute arising out of or relating to your co-employment with TriNet and/or arising out of or relating to your employment with your company, and for any dispute with an employee, officer, or director of TriNet or of a TriNet client.**

*Id.* at 5 (bold original). The agreement further provides, "[t]he Federal Arbitration Act ("FAA") applies to this DRP." *Id.* It selects the "rules and procedures of the Judicial Arbitration and Mediation Services, Inc.," unless the parties agree otherwise. *Id.* at 6.

Plaintiff signed the offer letter on August 23, 2021. He worked for Switchboard from August 31, 2021, until November 2022 when the parties entered a Separation and General Release Agreement. This lawsuit followed.

### B. The Parties' dispute.

Plaintiff brings claims against three defendants: Switchboard, TriNet, and Hartford Life and Accident Insurance Company, Inc. ("Hartford"). While Plaintiff chiefly raises claims against TriNet, including for disability discrimination, violations of ERISA, and breach of fiduciary duty, Plaintiff asserts two claims against Switchboard. First, in Claim 2, Plaintiff alleges Switchboard violated the Separation and General Release Agreement by purportedly requiring Plaintiff to sign before a stipulated 10-day review period and providing copies of the agreement to Hartford and TriNet. Dkt. 1 at IV.B. Second, in Claim 3, Plaintiff alleges Switchboard "engaged in a civil conspiracy intended to interfere with Plaintiff's rights under the Americans with Disabilities Act (ADA) and other employment-related laws; and to fraudulently induce Plaintiff into the separation agreement and other employer-related agreements." Dkt. 1 at IV.C.

## III. ARGUMENT

### A. Governing law and legal standards.

#### 1. The Federal Arbitration Act.

Pursuant to the Federal Arbitration Act ("FAA" or "Act"), agreements to arbitrate are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Under § 4 of the Act, "a party 'aggrieved' by the failure

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

of another party 'to arbitrate under a written agreement for arbitration' may petition a federal court 'for an order directing that such arbitration proceed in the manner provided for in such agreement.' The court 'shall' order arbitration 'upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue.'" *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010) (quoting 9 U.S.C. § 4). The FAA applies to "contract[s] evidencing a transaction involving commerce," 9 U.S.C. § 2, which the Supreme Court has held includes employment agreements. *Cir. City Stores, Inc. v. Adams*, 532 U.S. 105, 123 (2001) (the FAA generally applies to employment agreements); *see also id.* ("Arbitration agreements allow parties to avoid the costs of litigation, a benefit that may be of particular importance in employment litigation.").

Congress passed the FAA to "reverse the longstanding judicial hostility to arbitration agreements." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991). "The 'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced according to their terms.'" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) (quoting *Volt Info. Scis. v. Bd. of Trs.*, 489 U.S. 468, 478 (1989)). Consistent with this purpose, the Supreme Court has emphasized that "courts must rigorously enforce arbitration agreements according to their terms, including terms that specify with whom [the parties] choose to arbitrate their disputes and the rules under which that arbitration will be conducted." *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (internal quotations and citations omitted).

**2. Legal standard for compelling arbitration.**

A court has only a limited gatekeeper function in determining whether to compel arbitration under the FAA. *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). In this role, the court's inquiry is generally limited to considering "two gateway issues: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute. However, these gateway issues can be expressly delegated to the arbitrator where the parties *clearly and unmistakably* provide otherwise." *Brennan v. Opus Bank*, 796 F.3d

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

1125, 1130 (9th Cir. 2015) (emphasis original) (internal quotations and citations omitted). Thus, where "there is clear and unmistakable evidence" that the parties have delegated arbitrability to an arbitrator, the court may properly reach only the first question: the existence of an agreement to arbitrate. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 527, 531 (2019). In such cases, the court must compel arbitration if it finds there is a valid agreement to arbitrate, leaving questions of the scope of that agreement to the arbitrator. *Id.* at 530 ("[I]f a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue."); *LeBoeuf v. Nvidia Corp.*, 833 F. App'x 465, 467 (9th Cir. 2021) ("the Supreme Court requires enforcement of [delegation] clauses").

An arbitration agreement "clearly and unmistakably" delegates arbitrability to the arbitrator when it incorporates arbitration rules that give the arbitrator authority to decide arbitrability. *Brennan*, 796 F.3d at 1130; *accord Raven Offshore Yacht, Shipping, LLP v. F.T. Holdings*, LLC, 400 P.3d 347, 350 (Wash. Ct. App. 2017). As explained in more detail below, the Judicial Mediation and Arbitration Services (JAMS) rules selected by the parties here specifically grant such authority to the arbitrator. *See* JAMS Employment Arbitration Rule 11(b). The only issue properly before the Court in this case is, therefore, whether the parties agreed to arbitrate.

**B. Plaintiff agreed to arbitrate claims against Switchboard via the TCA.**

Plaintiff plainly agreed to arbitrate his claims against Switchboard. "In determining whether the parties agreed to arbitrate, Courts apply ordinary state-law contract [principles]" (here, Washington contract law). *Peters v. Amazon Servs. LLC*, 2 F. Supp. 3d 1165, 1170 (W.D. Wash. 2013), *aff'd*, 669 F. App'x 487 (9th Cir. 2016). "Washington courts apply the manifest theory of contract interpretation: '[t]he role of the court is to determine the mutual intentions of the parties according to the reasonable meaning of their words and acts.'" *Id.* (citations omitted).

As a threshold matter, Plaintiff's employment agreement with Switchboard incorporates the TCA in full, including its arbitration provision. "A nonsignatory may be bound to an arbitration agreement through contract or agency principles . . . include[ing] incorporation by

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

reference." *Raven*, 400 P.3d at 351; *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006) (same). "If the parties to a contract clearly and unequivocally incorporate by reference into their contract some other document, that document becomes part of their contract." *Satomi Owners Ass'n v. Satomi, LLC*, 225 P.3d 213, 225 (Wash. 2009) (finding document containing arbitration agreement was incorporated by reference); *W. Washington Corp. of Seventh-Day Adventists v. Ferrellgas, Inc.*, 7 P.3d 861, 865 (Wash. Ct. App. 2000) ("Incorporation by reference allows the parties to 'incorporate contractual terms by reference to a separate . . . agreement to which they are not parties, and including a separate document which is unsigned." (citation omitted)). Courts routinely compel arbitration based on contracts that are incorporated into the underlying agreement by reference. *See, e.g.*, *Satomi*, 225 P.3d at 234; *see also Todd v. Venwest Yachts, Inc.*, 127 Wash. App. 393, 398, 111 P.3d 282, 284 (2005) ("We agree that when the parties' employment agreement has incorporated an arbitration clause by reference, the arbitration clause may be enforced."). Here, Plaintiff's signed offer letter clearly and unequivocally incorporates the TCA into the parties' employment agreement, providing, "This offer letter, *together with the TCA* . . . forms the complete and exclusive agreement as to your employment with Switchboard Technology Labs, Inc." Hermida Decl., Ex. A (emphasis added).

The TCA contains a valid, enforceable arbitration agreement. By its plain language, the TCA requires Plaintiff to arbitrate claims against Switchboard. Section 8 of the TCA, titled "Dispute Resolution Protocol ('DRP') and Mandatory Arbitration of Claims," emphatically states in bold,

> **the DRP expressly requires that arbitration will be used instead of going before a court (for a judge or jury trial) and that NO JURY TRIAL WILL BE PERMITTED (unless applicable law does not allow enforcement of a pre-dispute jury trial waiver in the particular circumstances presented) for any dispute arising out of or relating to your co-employment with TriNet and/or arising out of or relating to your employment with your company, and for any dispute with an employee, officer, or director of TriNet or of a TriNet client.**

Hermida Decl., Ex. C at 5. It goes on,

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

> this DRP covers any dispute arising out of or relating to your co-employment with TriNet, including your TriNet co-employer, and/or arising out of or relating to your employment with your company, as well as any dispute with an employee, officer, or director of TriNet or of a TriNet client (all of whom, in addition to TriNet clients, are intended to be beneficiaries of this DRP) ("covered dispute"), including, but not limited to, all claims whether arising in tort or contract and whether arising under statute or common law including, but not limited to, any claim of breach of contract, discrimination or harassment of any kind.

*Id.* "[Y]our company" is defined as "the company you work for," here Switchboard (which is also a "TriNet client"): "Your relationship with TriNet is beginning because the company you work for ('your worksite employer,' 'your company' or 'my company') is a TriNet customer." *Id.* at 2. This language is unambiguous: Plaintiff agreed to arbitrate claims against Switchboard. And Switchboard can enforce the agreement to arbitrate as contemplated by the TCA. *See e.g. id.* at 7 (contemplating "a TriNet client . . . enforcing this DRP for its/their own benefit").[1] In sum, the first gateway requirement is met: the parties agreed to arbitrate.

**C. The arbitration agreement delegates issues of arbitrability to the arbitrator.**

The Court need not address the second gateway issue—the scope of the TCA's arbitration agreement—because the parties expressly delegated the issue to the arbitrator. The TCA "clearly and unmistakably" delegates arbitrability to an arbitrator by incorporating the JAMS rules and procedures.

JAMS Employment Arbitration Rule 11(b) provides,

> Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator. Unless the relevant law requires otherwise, the Arbitrator

---

[1] Although it is enough that the parties' agreement incorporates the TCA, one could also view Switchboard as a third-party beneficiary of the arbitration agreement. *See Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006). ("[N]onsignatories can enforce arbitration agreements as third party beneficiaries.").

SUMMIT LAW GROUP, PLLC
315 Fifth Avenue South, Suite 1000
Seattle, Washington 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

> has the authority to determine jurisdiction and arbitrability issues as a preliminary matter.

Courts presented with the issue consistently hold that by incorporating JAMS rules, parties delegate questions of arbitrability to an arbitrator. *See Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1279 (10th Cir. 2017) ("We conclude that by incorporating the JAMS Rules into the Agreement, Dr. Belnap and SLRMC evidenced a clear and unmistakable intent to delegate questions of arbitrability to an arbitrator."); *LeBoeuf v. NVIDIA Corp.*, 833 F. App'x 465, 467 (9th Cir. 2021) (same); *Simply Wireless, Inc v. T-Mobile US, Inc.*, 877 F.3d 522, 527–28 (4th Cir. 2017) (same), *abrogated on other grounds by Henry Schein*, 139 S. Ct. 524. In addition, Washington courts have found that the incorporation of similarly worded arbitral rules provide "clear and unmistakable" evidence that the parties agreed to arbitrate arbitrability. *See In re Estate of Anches*, No. 78732-2-I, 2019 WL 3417100, at *2 (Wash. Ct. App. July 29, 2019) (American Arbitration Association rule providing that the "arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim"); *Raven*, 400 P.3d at 349–50 (Maritime Arbitration Association rule providing that "the arbitral tribunal shall have the power to decide all issues arising out of or related to any claim or response, or agreement to arbitrate an existing dispute. This includes not only the merits of the dispute but any issues with respect to the jurisdiction of the arbitral tribunal and the existence, scope or validity of the underlying arbitration agreement.").

Here, the TCA incorporates the JAMS rules, providing, "Arbitration begins by bringing a claim under the applicable employment arbitration rules and procedures of the Judicial Arbitration and Mediation Services, Inc. ("JAMS")." The agreement then directs the parties to those rules: "JAMS' Employment Arbitration Rules may be found on the internet at www.jamsadr.com or by using an internet search engine to locate the 'JAMS Employment Arbitration Rules.'" That is, the agreement incorporates and specifically directs the parties to the JAMS rules that give the arbitrator authority to decide issues of arbitrability (unless, inapplicable here, the parties have



SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

agreed to use another dispute resolution provider). By agreeing to the JAMS rules, the parties clearly and unmistakably delegated issues of arbitrability to the arbitrator. *Raven*, 400 P.3d at 350. The Court "possesses no power to decide the arbitrability issue" and must compel arbitration on the scope of the arbitration agreement. *Henry Schein*, 139 S. Ct. at 529.

**D. The arbitration clause covers the parties' dispute, in any event.**

Because the parties delegated issues of arbitrability to the arbitrator, the Court should not consider the scope of the arbitration clause. Even if the Court reached the issue, however, the outcome would be the same: Plaintiffs' claims against Switchboard all arise out of or relate to his employment and must be arbitrated under the plain language of the TCA.

The FAA imposes a presumption of arbitrability, requiring courts to resolve "any doubts concerning the scope of arbitrable issues . . . in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983) ("any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."). Therefore, "[i]n determining whether parties have agreed to arbitrate a dispute," courts "apply general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration." *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1044 (9th Cir. 2009).

The TCA's mandatory arbitration provision "covers any dispute arising out of or relating to [Plaintiff's] employment with [Switchboard], . . . including, but not limited to, all claims whether arising in tort or contract and whether arising under statute or common law including, but not limited to, any claim of breach of contract, discrimination or harassment of any kind." Washington courts construe the phrases "arising out of" and "relating to" broadly in arbitration provisions, consistent with the "strong policy favoring arbitration." *David Terry Invs., LLC-PRC v. Headwaters Dev. Grp. Ltd. Liab. Co.*, 463 P.3d 117, 122 (Wash. Ct. App. 2020); *JC Aviation Invest., LLC v. Hytech Power, LLC*, No. 81539-3-I, 2021 WL 778043, *3 n.11 (Wash. App. Div. I,

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

March 1, 2021) ("Clauses requiring arbitration of disputes 'arising out of' are interpreted broadly."). But even applying a narrow interpretation, Plaintiff's claims fall within the scope of the agreement.

Both of Plaintiff's claims against Switchboard arise out of or relate to his employment. In Claim 2, Plaintiff alleges Switchboard violated the agreement by which the parties ended Plaintiff's employment. In Claim 3, Plaintiff alleges Switchboard engaged in a civil conspiracy to interfere with his rights as an employee and fraudulently induced Plaintiff to enter "employer-related agreements." Dkt. 1. These claims fall well within the language of the provision. And even if there was ambiguity (there is not), caselaw directs it must be resolved in favor of arbitrability.

In sum, each of Plaintiffs claims against Switchboard is arbitrable under the parties' arbitration agreement. The Court should compel arbitration.

**E. Dismissal is appropriate.**

Section 3 of the FAA provides that, upon determination by a court that an issue or issues are referable to arbitration, the court, on application of a party, "shall" stay the trial of the action pending arbitration. 9 U.S.C. § 3. "On its face, Congress's use of 'shall' appears to require courts to stay litigation that is subject to mandatory arbitration, at least where all issues are subject to arbitration." *Forrest v. Spizzirri*, 62 F.4th 1201, 1204 (9th Cir. 2023). But the Ninth Circuit "has long carved out an exception if all claims are subject to arbitration." *Id.*; *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1073 (9th Cir. 2014). Courts have applied this exception where all claims against a particular defendant are subject to arbitration: the court may dismiss that defendant from the lawsuit, even if other defendants remain. *See, e.g.*, *F.D.I.C. v. Artesa Holdings, LLC*, No. CV11-00499-PHX-FJMRE, 2011 WL 2669231, at *3 (D. Ariz. July 7, 2011).

As all of Plaintiff's claims against Switchboard should be referred to arbitration, a stay of proceedings would needlessly waste judicial resources. Accordingly, the Court should dismiss Switchboard from this lawsuit.

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

## IV. CONCLUSION

For the foregoing reasons, the Court should grant Switchboard's motion to compel arbitration and dismiss Switchboard from this litigation.

DATED this 1st day of December 2023.

Respectfully submitted,

SUMMIT LAW GROUP, PLLC

By *s/ Eva Sharf Oliver*
Alexander A. Baehr, WSBA No. 25320
Eva Sharf Oliver, WSBA No. 57019
315 Fifth Avenue S., Suite 1000
Seattle, WA 98104
Telephone: (206) 676-7000
Email: alexb@summitlaw.com
Email: evao@summitlaw.com

*Attorneys for Defendant Switchboard Technology Labs, Inc.*

DEFENDANT SWITCHBOARD TECHNOLOGY LABS, INC.'S MOTION TO COMPEL PLAINTIFF - 11
Case No. 3:23-cv-5882-TMC

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

**CERTIFICATE OF SERVICE**

I hereby certify that on this day I electronically filed the foregoing with the Clerk of the USDC, Western District of Washington, using the CM/ECF system which will send notification of such filing to the following:

*Plaintiff Pro Se*

Brad Erhart
300 SE 184th Avenue, Apartment 101
Vancouver, WA 98683
Email: china_nanomaterial@leo.spacejunk.dev

*Attorneys for Defendant Hartford Life and Accident Ins. Co., Inc.*

Sarah E Swale
JENSEN MORSE BAKER PLLC
1809 7th Avenue, Suite 410
Seattle, WA 98101
Email: sarah.swale@jmblawyers.com

*Attorneys for Defendant Trinet HR Xi, Inc.*

Catharine M. Morisset
Jeremy F. Wood
FISHER & PHILLIPS LLP
1700 7th Avenue, Suite 2200
Seattle, WA 98101
Email: cmorisset@fisherphillips.com
jwood@fisherphillips.com

DATED THIS 1st day of December 2023.

*s/ Karen M. Lang*
Karen M. Lang, Legal Assistant
karenl@summitlaw.com

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001