UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT TACOMA

| | |
|---|---|
| BRAD ERHART,<br><br>       Plaintiff,<br><br> v.<br><br>TRINET HR XI, INC., SWITCHBOARD TECHNOLOGY LABS, INC. AND HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY, INC.,<br><br>       Defendants. | Case No. 3:23-cv-05882-TMC<br><br>**PLAINTIFF'S BRIEF IN OPPOSITION OF SWITCHBOARD TECHNOLOGY LAB, INC.'S MOTION TO COMPEL ARBITRATION**<br><br>NOTE ON MOTION CALENDAR:<br><br>Friday, January 12, 2023<br><br>**ORAL ARGUMENT REQUESTED** |

## I. INTRODUCTION

Brad Erhart, the pro se Plaintiff in this matter, respectfully provides this brief in opposition of the motion by Switchboard Technology Labs, Inc. ("Switchboard") to compel arbitration. Switchboard's arguments are all predicated on what they allege to be the

PLAINTIFF'S BRIEF IN OPPOSITION OF
SWITCHBOARD TECHNOLOGY LAB, INC.'S
MOTION TO COMPEL ARBITRATION  - 1

Brad Erhart
300 SE 184th Ave Apt 101
Vancouver, WA 98683
971-319-2723

incorporation of an unsigned and copyrighted *TriNet Terms and Conditions Agreement* (Dkt. 18, Exhibit C). Switchboard argues that the "signed offer letter clearly and unequivocally incorporates" the *TriNet Terms and Conditions Agrement* "into the parties' employment agreement" due to the following sentence in the offer letter which contains an unknown acronym at time (original emphasis):

> "This offer letter, together with the TCA **and your Employee Non-Disclosure and Invention Assignment Agreement**, forms the complete and exclusive agreement as to your employment with **Switchboard Technology Labs, Inc."**

Mr. Hermida's declaration, and accompanying exhibits, are not an accurate and full representation of the relevant facts. The fundamental basis of their arguments are fully contradicted by the accompanying emails, the offer letter, their alleged Switchboard employee handbook (the *TriNet Employee Handbook*), and the *TriNet Terms and Conditions Agreement* itself.

Switchboard's motion should be denied for the following reasons:

- Switchboard does not show knowledge, assent, or intent
- The offer letter in itself was not a binding contract, nor has it been determined that employment with Switchboard ever formed
- Any alleged arbitration clause and claimed delegation provision is unenforceable and unconscionable
- The claims are explicitly excluded from arbitration altogether under the terms of the TCA
- The alleged arbitration clause itself would have been fraudulently induced due to conspiracy between Switchboard and TriNet to deny a preserved right

PLAINTIFF'S BRIEF IN OPPOSITION OF
SWITCHBOARD TECHNOLOGY LAB, INC.'S
MOTION TO COMPEL ARBITRATION  - 2

Brad Erhart
300 SE 184th Ave Apt 101
Vancouver, WA 98683
971-319-2723

- Switchboard's latter *Separation and General Release Agreement* (Erhart Declaration, Exhibit I) supersedes all prior agreements, whether written or oral

## II.   FACTUAL BACKGROUND

I was contacted around July 7 of 2021 by Josh Wu, a recruiter for CyberCoders, about a full-time Senior DevOps Engineer opening for a cryptocurrency startup. He stated that the startup had recently secured a significant seed investment. Having over 20 years of professional "DevOps" experience and an amateur interest in blockchain solutions, I sent him my resume for consideration. I was enthusiastic about the prospect of leading IT development and operations for a startup in hopes I'd have more opportunity to demonstrate the value of my passionate skills and ideas.

After my initial interviews, I learned that the cryptocurrency startup was Switchboard, and that their investors included the now defunct Alameda Research. The interview process took over a month, and Switchboard explained their main product was a blockchain oracle service. This service fetched data from cryptocurrency exchanges like Coinbase and FTX, and then used Switchboard's formula to determine a monetary value for popular virtual currencies like Bitcoin, Ethereum, and later Mango. These values were then recorded digitally on the Solana distributed ledger. They were also building out features to allow users to create their own custom data feeds and were collaborating with companies like Mango Markets to integrate their data into "smart" contracts.

Mr. Hermida, on behalf of Switchboard, provided two different offer letters. The first was sent on August 13, 2021 for me to sign. Attached alongside it is the ***TriNet HR XI, Inc. Benefits Guidebook and Summary Plan Description***, ***UnitedHealthcare Choice Plus Benefit Summary***, and ***Employee Non-Disclosure and Invention Assignment Agreement***

PLAINTIFF'S BRIEF IN OPPOSITION OF
SWITCHBOARD TECHNOLOGY LAB, INC.'S
MOTION TO COMPEL ARBITRATION  - 3

Brad Erhart
300 SE 184th Ave Apt 101
Vancouver, WA 98683
971-319-2723

(Erhart Declaration, Exhibit A). The email makes no reference to, nor does it provide any alleged **_TriNet Terms and Conditions Agreement_**. Although I had the opportunity to sign the initial offer letter promptly, negating their arguments now entirely, I immediately raised concerns after seeing the inclusion of TriNet as an employer in the benefits attachment and offer letter, which was not brought to my attention during the interview process.

I emailed Josh Wu on August 14 stating, "this appears similar to working full-time for a staffing agency or as consultant" and "I do not have an insight into any contractual agreements between Switchboard and TriNet that shows what they are permitted to offer on behalf of TriNet in regards to employment." (Erhart Declaration, Exhibit B) I had prior knowledge of employee-leasing arrangements, sometimes referred to as W-2 consulting, due to my previous work with Wells Fargo, PayPal, American Express, Microsoft Research, and more. This arrangement appeared to be substantially the same.

Josh Wu passed along my concerns to Mr. Hermida, which I began to communicate with directly. Mr. Hermida reassured me that TriNet was a PEO ("Professional Employer Organization") and that it would be a co-employer arrangement. I was unfamiliar with PEOs and this terminology, so I did some quick research online about the topic. Mr. Hermida then invited me to call him on August 17 to address my concerns where he again reassured me about the PEO relationship. (Erhart Declaration, Exhibit C) I asked him to send me a copy of the PEO contract to help address my concerns (the legal agreement between Switchboard and TriNet that defines the actual employment relationship).

In response to my request, Mr. Hermida sent the now alleged TCA attachment on August 19, only referring to it as the "TriNet Terms." (Dkt. 18, Exhibit B) Mr. Hermida also attached what he now refers to as the Switchboard employee handbook (Dkt. 18 pg. 2), but

what is actually the *TriNet Employee Handbook*. Although Mr. Hermida ostensibly indicated that I had requested the other documents, he clarified thereafter that he couldn't provide the PEO contract and the purpose was to "alleviate any" of my concerns about the arrangement.

I had also requested in my communications with Mr. Wu and Mr. Hermida that the offer include a severance clause, due to the broad nature of the *Employee Non-Disclosure and Invention Assignment Agreement*, which was attached alongside the offer letter. With Mr. Hermida's reassurance about the arrangement and agreement to include a severance clause, I did not pay any special attention to the prior documents or acronyms contained in them. They appeared to be onboarding material that I'd have an opportunity to review once I started employment.

This was the basis for my response on August 20 where I state, "Thanks for the update. Looking forward to getting the updated offer letter and onboarding soon." (Dkt. 18, Exhibit B) Mr. Hermida further responded on August 20 stating, "Just letting you know that we're still waiting for a response from our TriNet rep before we can get that over. Will keep you posted." (Erhart Declaration, Exhibit E)

The updated offer letter was not provided until August 23, four days after the email that contained the TriNet-exclusive attachments. Mr. Hermida gave no indication that I should rely on them as part of the offer letter, and the context shows their purpose was to alleviate my concerns about the arrangement. Mr. Hermida only mentioned and attached the *Employee Non-Disclosure and Invention Assignment Agreement* alongside the updated offer letter, which is also listed as an enclosure in the offer letter itself. (Erhart Declaration, Exhibit F) (Dkt. 18, Exhibit A pg. 3)

PLAINTIFF'S BRIEF IN OPPOSITION OF
SWITCHBOARD TECHNOLOGY LAB, INC.'S
MOTION TO COMPEL ARBITRATION  - 5

Brad Erhart
300 SE 184th Ave Apt 101
Vancouver, WA 98683
971-319-2723

Upon reviewing both offer letters, they are the same except for the severance clause in the updated offer. They both use the **TCA** acronym twice. The first instance is in the ***Benefits*** section, prior to the latter part used by Switchboard as the sole basis for their motion. In the ***Benefits*** section it states, "information about these benefits is included with this letter, and additional information will be available **on-line** on the terms and conditions included in the **Terms and Conditions Agreement** (TCA) each new employee must accept in order to access TriNet's on-line self-service portal, TriNet Passport." (added emphasis) (Dkt. 18, Exhibit A pg. 2) As I later argue, the ***Benefits*** section here clarifies that the TCA is not to be part of the offer letter agreement, but restricted to TriNet as an alleged part of TriNet's exclusive online platform during onboarding.

Upon recently reviewing the *TriNet Employee Handbook* that Switchboard alleges belongs to them, it states, "**when you first logged into the TriNet platform**, you were asked to read and accept the TriNet Terms and Conditions Agreement (TCA)." (added emphasis) And thereafter, "after you accepted the TCA, you received a confirmation email with a copy of the TCA." Furthermore, "this handbook is for worksite employees and, together with the Terms and Conditions Agreement ('TCA'), governs your relationship between **you** and **TriNet**." (added emphasis) (Erhart Declaration, Exhibit D pg. 2, 1)

The content of the ***TriNet Terms and Conditions Agreement*** (Dkt. 18, Exhibit C), which displays TriNet's copyright on each page, also clearly demonstrates its intent and exclusivity to TriNet's online onboarding activity. Pg. 2 states, "You will be prompted to review and acknowledge these important policies once you acknowledge this TCA." Pg. 4 states, "once you acknowledge this TCA, you will be prompted to review and acknowledge receipt of the TriNet Employee Handbook and other additional policies applicable to your

employment as part of your onboarding." Pg. 7 states, "**you may opt out** of the Class Action Waiver by **checking** this box **before you acknowledge this TCA below**." (added emphasis) Finally, the *Acknowledgement* section on pg. 9 states, "**by acknowledging below**, I confirm that I have read and understand the contents of this TCA…" (added emphasis)

I recently searched and found an email from TriNet received on August 31 on my start date, eight days after I signed the Switchboard offer letter. The email provides steps from TriNet to "ensure your first paycheck from TriNet is accurate and on time," which includes a link with instructions to log in to "login.TriNet.com," and then "Read the TriNet Terms and Conditions Agreement (TCA), and if you agree to the TCA, then click **Accept**." (original emphasis) Thereafter, "Read the company policies and the Employee Handbook, and if you agree to the policies, then click **Accept**." (original emphasis) (Erhart Declaration, Exhibit G)

I also reviewed the email from August 19 where Mr. Hermida provided the "TriNet Terms" to "alleviate any" concerns about the PEO contract and arrangement. Gmail truncates the attachment filenames when displaying emails, but I noticed when hovering over the relevant attachment that it shows the full filename to be **TriNet_TCA_Universal_non_selected.pdf**. (Dkt. 18, Exhibit B)

As I argue below, the filename contradicts Switchboard's claims of incorporation and shows that it is merely a preview of the universal TriNet-exclusive online agreement. The phrase in the *TriNet Terms and Conditions Agreement*, "you **may opt out** of the Class Action Waiver by **checking this box** before you **acknowledge this TCA below**" (added emphasis) is notable here as well, because the preview version by Mr. Hermida has the class action waiver unselected, as demonstrated in the filename. This further validates that the TCA was not intended to be incorporated, but to later be presented online through TriNet,

PLAINTIFF'S BRIEF IN OPPOSITION OF
SWITCHBOARD TECHNOLOGY LAB, INC.'S
MOTION TO COMPEL ARBITRATION  - 7

Brad Erhart
300 SE 184th Ave Apt 101
Vancouver, WA 98683
971-319-2723

supposedly giving the user an option to select the class action waiver checkbox and decide if they accept the agreement.

However, I do not recall ever being made to accept the *TriNet Terms and Conditions Agreement* when logging in through TriNet. Switchboard has not shown acceptance of an online agreement, nor do they argue it is necessary. Switchboard has only provided a signed offer letter while solely arguing for incorporation by reference.

### III.   ARGUMENTS AND REBUTTAL

**A.   Switchboard has not shown knowledge, assent, or mutual intent**

Switchboard states in their motion, "Plaintiff's signed offer letter clearly and unequivocally incorporates the TCA into the parties' employment agreement…" However, what they claim is "clear and unequivocal" is an inconspicuous and wholly unfamiliar acronym at the time. This is the sentence that is the entire basis of their motion and arguments, "This offer letter, together with the TCA **and your Employee Non-Disclosure and Invention Assignment Agreement**, forms the complete and exclusive agreement as to your employment with **Switchboard Technology Labs, Inc.**." (original emphasis) (Dkt. 18, Exhibit A pg. 2)

In the paragraph directly thereafter they state, "If you wish to accept employment at **Switchboard Technology Labs, Inc** under the terms described above, **please sign and date this letter and the Employee Non-Disclosure and Invention Assignment Agreement and return them to your supervisor at Switchboard Technology Labs, Inc** by **08/25/2021**." (original emphasis) (Dkt. 18, Exhibit A pg. 3). In both instances they use the much longer bolded and formal name, *Employee Non-Disclosure and Invention Assignment Agreement*.

PLAINTIFF'S BRIEF IN OPPOSITION OF
SWITCHBOARD TECHNOLOGY LAB, INC.'S
MOTION TO COMPEL ARBITRATION  - 8

Brad Erhart
300 SE 184th Ave Apt 101
Vancouver, WA 98683
971-319-2723

Here they add the "wish" to accept employment at Switchboard requires signing, dating, and returning the ***Employee Non-Disclosure and Invention Assignment Agreement*** with the offer letter. The ***Employee Non-Disclosure and Invention Assignment Agreement*** itself claims to be a condition of employment with Switchboard, and requires Switchboard's countersigned acceptance underneath a section titled "Accepted by Company", which they never provided. (Erhart Declaration, Exhibit F pg. 2, 3) Furthermore, it declares its subject matter jurisdiction to the federal or state courts in Delaware, which is incompatible and contradictory to their alleged incorporation.

Requesting that I sign the separately attached ***Employee Non-Disclosure and Invention Assignment Agreement***, immediately after the paragraph they claim to incorporate it as well, is contradictory to their alleged intent. Likewise, their continued bold emphasis and formal usage of the much longer ***Employee Non-Disclosure and Invention Assignment Agreement*** obstructs any substantiveness of the TCA acronym, and the immediate request thereafter to sign the emphasized ***Employee Non-Disclosure and Invention Assignment Agreement*** makes it appear that the offer letter and the ***Employee Non-Disclosure and Invention Assignment Agreement*** are the only relevant agreements. (Dkt. 18, Exhibit A pg. 3)

In the prior email from Mr. Hermida on August 19 he doesn't use the TCA acronym, but only refers to the attachment as the "TriNet Terms." Furthermore, any allegation of familiarity with the attachments would only cause me to believe that the TCA was something that would later be presented online. (Dkt. 18, Exhibit B) As the additional attachment containing the ***TriNet Employee Handbook*** states, "when you first logged into the TriNet

PLAINTIFF'S BRIEF IN OPPOSITION OF  
SWITCHBOARD TECHNOLOGY LAB, INC.'S  
MOTION TO COMPEL ARBITRATION  - 9

Brad Erhart  
300 SE 184th Ave Apt 101  
Vancouver, WA 98683  
971-319-2723

platform, you were asked to read and accept the TriNet Terms and Conditions Agreement (TCA)." (Erhart Declaration, Exhibit D pg. 2)

The earlier ***Benefits*** section in the offer letter does not use its official name either, but only the ***Terms and Conditions Agreement***. (Dkt. 18, Exhibit A pg. 2) Similarly to requesting that I sign the ***Employee Non-Disclosure and Invention Assignment Agreement*** after its alleged incorporation, the ***Benefits*** section only adds more ambiguity and confusion, and contradicts their intent. (Dkt. 18, Exhibit A pg. 3) It states the ***Terms and Conditions Agreement (TCA)*** is something that will be available online to accept when "accessing TriNet's on-line self-service portal, TriNet Passport." (Dkt. 18, Exhibit A pg. 2) However, instructions and access was only given after commencing employment on August 31 when onboarding with TriNet, and those instructions fully contradict Switchboard's claim. (Erhart Declaration, Exhibit G)

The phrases "this offer letter," "together with," and "forms the complete and exclusive agreement as to your employment with **Switchboard Technology Labs, Inc.**" (Dkt. 18, Exhibit A pg. 2) do not clearly and unequivocally incorporate. Their alleged incorporation does not use conspicuous words such as integrate, merge, or the most obvious, incorporate. It only suggests that they exist independently, with the "complete and exclusive agreement" being composed of multiple self-contained and self-governed instruments, each retaining their individual terms and acceptance requirements. This is demonstrated by the offer letter therein immediately requesting that I sign and date the ***Employee Non-Disclosure and Invention Assignment Agreement*** and return it with the signed offer letter. (Dkt. 18, Exhibit A pg. 3) The TCA also has its own online acceptance requirements which is described in multiple

PLAINTIFF'S BRIEF IN OPPOSITION OF
SWITCHBOARD TECHNOLOGY LAB, INC.'S
MOTION TO COMPEL ARBITRATION  - 10

Brad Erhart
300 SE 184th Ave Apt 101
Vancouver, WA 98683
971-319-2723

1  documents. (Dkt. 18, Exhibit A pg. 2, *Benefits;* Erhart Declaration, Exhibit D; Dkt. 18,

2  Exhibit C pg. 2, 7, 4 9; Erhart Declaration, Exhibit G)

3  "Still, It must be clear that the parties had knowledge of and assented to the
incorporated terms. *Ferrellgas,* 102 Wn.App. at 494-95. Furthermore, the party claiming incorporation by reference bears the burden of proving it. *Baarslag v. Hawkins,* 12 Wn.App. 756, 760, 531 P.2d 1283 (1975)." *Edifice Constr. Co. v. Arrow Insulation, Inc.*, No. 79407-8-I (Wash. Ct. App. Feb. 18, 2020) ("In *Ferrellgas*. the party met this burden by showing that, though it did not attach the incorporated contract, the opposing party knew the incorporated contract was an AIA Document A201 form and that this was "**a standard form used by owners and contractors**.") (added emphasis)

I had no familiarity with the TCA acronym nor that they allegedly intended to incorporate the previous "TriNet Terms" attachment using the TCA acronym. (Dkt. 18, Exhibit B) The offer letter only indicates that the offer letter and ***Employee Non-Disclosure and Invention Assignment Agreement*** are relevant to the "wish" to accept employment. (Dkt. 18, Exhibit A pg. 3) Furthermore, the offer letter, employee handbook, and TCA itself all describe a different method of acceptance that is contrary to their alleged incorporation. Even if I had been fully knowledgeable of the previous attachments' contents, the documents would only cause me to believe that acceptance is done online through the TriNet Platform.

The TCA is also a TriNet-copyrighted document with its own clear acknowledgement instructions and necessitates interaction for the class-action waiver checkbox. (Dkt. 18, Exhibit C pg. 7) It would not create an exclusive agreement with Switchboard and it does not adequately identify them as a party to the agreement. It would only include Switchboard as a potential beneficiary ("TriNet customer") if they "have entered into an agreement with a

PLAINTIFF'S BRIEF IN OPPOSITION OF
SWITCHBOARD TECHNOLOGY LAB, INC.'S
MOTION TO COMPEL ARBITRATION  - 11

Brad Erhart
300 SE 184th Ave Apt 101
Vancouver, WA 98683
971-319-2723

TriNet PEO company to share certain employer responsibilities as co-employers." (Dkt. 18, Exhibit C pg. 2)

However, TriNet HR XI, Inc. claimed in my discrimination complaint to the Washington State Human Rights Commission ("WSHRC") that they were never my employer, and that I did not work for them. Although it is alleged in my complaint that TriNet's statements are clearly false, Switchboard has also not shown a "co-employer" agreement ever existed or evidenced that an employment relationship with them ever formed. (Erhart Declaration, Exhibit I pg. 3, 4, 5)

**B.     The offer letter was non-binding and there is no determination that employment with Switchboard ever formed**

Switchboard states in the same paragraph containing their alleged incorporation, "Additionally, **Switchboard Technology Labs, Inc.** reserves the right to revoke this offer should it not receive a satisfactory reference check for you." (original emphasis) (Dkt. 18, Exhibit A pg. 3). This is also clarified where they state, "If you **wish** to accept employment at **Switchboard Technology Labs, Inc** under the terms described above…" (double emphasis) (Dkt. 18, Exhibit A pg. 3) The *Employee Non-Disclosure and Invention Assignment Agreement* signing requirement which also claims to be a condition of employment was never returned with a countersigned signature under "Accepted by Company" (Erhart Declaration, Exhibit F pg. 3)

In this instance, signing the offer letter does not indicate it is meant to be an enforceable employment agreement, but that a binding agreement would be created upon satisfaction of references by Switchboard and corroboration of an official and lawful employer-employee relationship. However, it is argued in my complaint and believed that an

PLAINTIFF'S BRIEF IN OPPOSITION OF
SWITCHBOARD TECHNOLOGY LAB, INC.'S
MOTION TO COMPEL ARBITRATION  - 12

Brad Erhart
300 SE 184th Ave Apt 101
Vancouver, WA 98683
971-319-2723

employer-employee relationship with Switchboard never formed. This is supported in my declaration (Exhibit H), where none of my relevant employment and benefit documents adequately lists Switchboard as the employer. Furthermore, the disability policy documents explicitly require that I have worked for TriNet HR XI, Inc. (Exhibit H, pg. 14, 16, 17)

Moreso, the Department of Labor ("DoL") had provided clear notice to TriNet as documented in TriNet Group's Form 10-K Risk Factors, where they state "...the DOL has indicated that while it agrees that we are an employer for ERISA purposes, it believes that wherever there is more than one employer of a WSE, no employer may qualify as a single employer for ERISA purposes." (Erhart Declaration, Exhibit M pg. 2) This is further clarified in the U.S. Department of Labor's MEWA guidebook, which states, "if the PEO's client employers remain, **in any respect**, employers of the employees covered by the PEO's plan or arrangement, then the PEO's plan or arrangement would cover the employees of two or more employers and would be a **MEWA**." (added emphasis) (Erhart Declaration, Exhibit L)

This aligns with the exact definition of multiple employer welfare arrangement under ERISA (29 U.S. Code § 1002) which states, "The term 'multiple employer welfare arrangement' means an employee welfare benefit plan, or any other arrangement (other than an employee welfare benefit plan), which is established or maintained for the purpose of offering or providing any benefit described in paragraph (1) to the employees of two or more employers (including one or more self-employed individuals), or to their beneficiaries, except that such term does not include any such plan or other arrangement which is established or maintained—(i) under or pursuant to one or more agreements which the Secretary finds to be collective bargaining agreements, (ii) by a rural electric cooperative, or (iii) by a rural telephone cooperative association."

PLAINTIFF'S BRIEF IN OPPOSITION OF
SWITCHBOARD TECHNOLOGY LAB, INC.'S
MOTION TO COMPEL ARBITRATION  - 13

Brad Erhart
300 SE 184th Ave Apt 101
Vancouver, WA 98683
971-319-2723

There is no reason to believe that Switchboard and TriNet constitute a control group. The benefit information provided by Switchboard and TriNet does not list the benefit plan as a multiple-employer plan, as would be required in their Form 5500s, nor a single-employer benefit plan provided by Switchboard. Instead, it defines the benefits as a single-employer benefit plan provided by TriNet. (Erhart Declaration, Exhibit H pg. 7, 10) This would require TriNet to have been my sole employer, which I allege in my complaint. Switchboard is instead arguing for an illegal benefit and employment arrangement by claiming "employment with Switchboard Technology Labs, Inc." ever formed.

**C.     The alleged arbitration clause and claimed delegation provision is unenforceable and unconscionable**

Switchboard argues that the arbitration delegates issues of arbitrability to the arbitrator. They state, "The TCA 'clearly and unmistakably' delegates arbitrability to an arbitrator by incorporating the JAMS rules and procedures." In doing so, they only provide a partial quote of the relevant sentence. The full quote contradicts their claims, "Arbitration begins by bringing a claim under the applicable employment arbitration rules and procedures of the Judicial Arbitration and Mediation Services, Inc. ("JAMS") **or any other dispute resolution provider agreed to by the parties, as then in effect and as modified by any superseding provisions in this DRP**." (added emphasis) (Dkt. 18, Exhibit C pg. 6[c])

The full clause gives the equal right for a party to bring any and all claims through "any other dispute resolution provider agreed to by the parties," which is a necessary component to begin arbitration. This does not impose an obligation to accept JAMS rules, and parties could search in perpetuity for a mutually agreeable provider. Therefore, the clause does not incorporate JAMS rules and procedures, nor does it delegate arbitrability, but instead

PLAINTIFF'S BRIEF IN OPPOSITION OF
SWITCHBOARD TECHNOLOGY LAB, INC.'S
MOTION TO COMPEL ARBITRATION  - 14

Brad Erhart
300 SE 184th Ave Apt 101
Vancouver, WA 98683
971-319-2723

1 introduces indefiniteness and ambiguity. This also strikes at the heart of the arbitration clause
2 itself which cannot be enforced when it does not provide reasonable certainty of the parties
3 obligations.

4     Furthermore, the offer letter that Switchboard alleges "clearly and unequivocally
5 incorporates the TCA into the parties' employment agreement," also contains a provision
6 allowing Switchboard to unilaterally change its policies and procedures whenever they feel
7 like it. It states, "In order to retain necessary flexibility in the administration of its policies
8 and procedures, **Switchboard Technology Labs, Inc** reserves the right to change or revise its
9 policies, procedures, and benefits at any time." (original emphasis) (Dkt. 18, Exhibit A pg. 2)

10     An alleged incorporation of the TCA into the parties employment agreement would
11 allow them to modify any part of its arbitration clause at any time without notice. As
12 demonstrated in their motion, they are claiming that the "TCA 'clearly and unmistakably'
13 delegates arbitrability to an arbitrator by incorporating the JAMS rules and procedures,"
14 despite the fact that the arbitration clause never defaults to incorporating the JAMS rules and
15 procedures, or delegation thereunder.

16 **D.     The arbitration clause excludes the claims from arbitration altogether**

17     The arbitration clause in the alleged TCA explicitly and fully excludes the claims in
18 this matter from arbitration, "**does not apply to any claims that are legally prohibited from**
19 **being subject to a pre-dispute mandatory arbitration agreement**." (Dkt. 18, Exhibit C pg.
20 5[b]) There is no delegation of arbitrability as they allege for the excluded claims, because it
21 does not require bringing those claims to arbitration. This is further explained in the DRP
22 where it states, "With only the exceptions described below, arbitration will be used instead of

going before a court (for a judge or jury trial)" and "Subject to the limitations in subsection (b)." (Dkt. 18, Exhibit C pg. 5[a])

*RCW* 49.44.085 is a Washington state statute that prohibits pre-dispute mandatory arbitration agreements for the claims in this matter. It states, "A provision of an employment contract or agreement is against public policy and is void and unenforceable if it requires an employee to waive the employee's right to publicly pursue a cause of action arising under chapter 49.60 RCW or federal antidiscrimination laws or to publicly file a complaint with the appropriate state or federal agencies, or if it requires an employee to resolve claims of discrimination in a dispute resolution process that is confidential."

It applies to me because Washington state is where I live and worked, and received my relevant employment notices and deductions. These claims are not preempted by the FAA because the TCA excludes them from arbitration entirely. The Separation and Release Agreement itself was an instrument designed by Switchboard to try to absolve them of my claims of discrimination at the time in a manner that was confidential. It was crafted immediately following their so-called reasonable accommodations meeting and termination, where Switchboard and TriNet continued to misrepresent my employer. (Erhart Declaration, Exhibit K) This is evidenced in the complaint, "Plaintiff entered into a Separation and Release Agreement ('Agreement') with Defendant Switchboard Technology Labs, Inc. on November 22, 2021, while under distress from alleged harassment, discrimination, and misrepresentation over the identity of his employer." (Dkt. 1 pg. 18)

Therefore, the claims regarding the breach of the agreement are claims that directly involve an agreement that "is against public policy and is void and unenforceable if it requires an employee to waive the employee's right to publicly pursue a cause of action arising under

PLAINTIFF'S BRIEF IN OPPOSITION OF
SWITCHBOARD TECHNOLOGY LAB, INC.'S
MOTION TO COMPEL ARBITRATION  - 16

Brad Erhart
300 SE 184th Ave Apt 101
Vancouver, WA 98683
971-319-2723

chapter 49.60 RCW or federal antidiscrimination laws." They are also inherently connected to the conspiracy by TriNet and Switchboard to interfere with my rights under the ADA as further evidenced in the complaint. (Dkt. 1)

The breach by Switchboard as documented in the short-term disability claim file shows that TriNet had adequately determined my eligibility and requested for Mr. Hermida to send Hartford a job description supporting the disability claim. Mr. Hermida ignored their advice, utilizing the opportunity instead to breach Switchboard's bound confidentiality of the separation agreement (Erhart Declaration, Exhibit I pg. 10)  by sending a copy to Hartford stating that he didn't believe I was eligible for benefits. Mr. Hermida did not send a job description as requested, and Switchboard was not a party to the plan.

Mr. Hermida later then, in direct violation of RCW 49.60.310 upon learning of the WSRHC investigation with TriNet, breached the confidential Switchboard agreement by giving it to TriNet HR XI, Inc., a non-party to the agreement, to provide it in their response alleging that they were too a released party in order to impede and interfere with the commission's investigation. Therefore, the breaches are all inherently connected to and arise under "chapter 49.60 RCW or federal antidiscrimination laws." (Erhart Declaration, Exhibit I pg. 3, 4, 5)

**E.     Conspiracy and interference of a preserved right makes the alleged arbitration clause unconscionable**

The arbitration clause also states it preserves the right to file a claim with the EEOC, or other relevant agency in which the claims cannot be waived. (Dkt. 18, Exhibit C pg. 6[b]) The WSHRC works in tandem with the EEOC as part of an interagency agreement where the complaint is automatically dually filed with both agencies. The investigator then works jointly

on behalf of the EEOC to investigate the claim and provide their findings. Although I cannot ascertain that a PEO contract with Switchboard and TriNet ever existed, or that it would be the same as a TriNet subscriber agreement found online, it is alleged it would be substantially the same as the one found on the Securities and Exchange Commission (SEC) website with Napa Valley Kitchens. (Erhart Declaration, Exhibit N)

In the agreement between TriNet and Napa Valley Kitchens, under the ***AMERICANS WITH DISABILITIES ACT (A.D.A.)*** section it states "SUBSCRIBER agrees to indemnify, hold harmless, and defend TRINET from any costs, attorneys' fees, or other consequences of any sort arising out of SUBSCRIBER's breach of this provision. Any and all damages awarded to a **TRINET employee**, his or her representative, or any other person as a result of a claim related to such access or accommodation, will be paid by SUBSCRIBER and not TRINET, or if required to be paid by TRINET, SUBSCRIBER will reimburse TRINET for all costs expended by TRINET, including but not limited to awards, judgments, and attorney fees." (added emphasis)

It is argued that their alleged subscriber agreement ("PEO contract") that they concealed was the reason Switchboard and TriNet misrepresented the relationship by claiming that I was not a "TRINET employee" in order to "indemnify, hold harmless, and defend TRINET." This plan would have been concocted prior to signing the offer letter itself, and any alleged incorporation. Therefore their later interference of a preserved right listed in the alleged arbitration clause (Dkt. 18, Exhibit C pg. 6), by again claiming that TriNet was not my employer, shows a plan all along with incentive to misrepresent the relationship. This plan and inducement would further render the alleged arbitration clause unconscionable, as they had intended to interfere with the preserved rights listed therein.

**F.      Switchboard superseded any alleged arbitration in their separation agreement**

The separation agreement provided by Switchboard after discriminating against me states that it supersedes all prior agreements whether written or oral. The only document it states to retain is the *Employee Non-Disclosure and Invention Assignment Agreement*. The subject matter of the separation agreement is broad and includes all matters of employment, including the offer letter itself. Therefore, their alleged incorporation of the TCA into the offer letter would be fully superseded by their later agreement. (Erhart Declaration, Exhibit I pg. 11)

## IV.     RELIEF

It is respectfully requested this court deny Switchboard's motion to compel arbitration. In the alternative, that limited discovery be permitted. It is further requested, if so determined, that Switchboard be sanctioned for filing a frivolous motion and that I be awarded any fees the court deems appropriate.

I certify that this brief contains 5174 words, in compliance with the Local Civil Rules.

DATED this 8th day of January, 2024.

                                                            Respectfully submitted,

                                                            By: /s/ Brad Erhart
                                                            Brad Erhart
                                                            300 SE 184th Ave Apt 101
                                                            Vancouver, WA 98683
                                                            971-319-2723
                                                            complaint@leo.spacejunk.dev
                                                            Pro Se Plaintiff

PLAINTIFF'S BRIEF IN OPPOSITION OF
SWITCHBOARD TECHNOLOGY LAB, INC.'S
MOTION TO COMPEL ARBITRATION  - 19

Brad Erhart
300 SE 184th Ave Apt 101
Vancouver, WA 98683
971-319-2723