UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT TACOMA

| | |
|---|---|
| BRAD ERHART,<br><br>                         Plaintiff,<br><br>    v.<br><br>TRINET HR XI, INC., SWITCHBOARD<br>TECHNOLOGY LABS, INC. AND<br>HARTFORD LIFE AND ACCIDENT<br>INSURANCE COMPANY, INC.,<br><br>                         Defendants. | Case No. 3:23-cv-05882-TMC<br><br>**DECLARATION OF BRAD ERHART**<br>**IN SUPPORT OF PLAINTIFF'S BRIEF**<br>**IN OPPOSITION OF SWITCHBOARD**<br>**TECHNOLOGY LAB'S MOTION TO**<br>**COMPEL ARBITRATION** |

COMES NOW, Brad Erhart, the pro se Plaintiff in this matter, and I hereby declare:

1. I am over the age of 18 and am competent to testify to the following facts.

2. I am the pro se Plaintiff in the above-captioned action.

3. I was initially contacted on approximately July 7, 2021 about a Senior DevOps role by Josh Wu, a recruiter from CyberCoders.

DECL. OF BRAD ERHART IN SUPP. OF
PLAINTIFF'S BRIEF IN OPP. OF
SWITCHBOARD TECHNOLOGY LAB'S
MOTION TO COMPEL ARBITRATION  - 1

Brad Erhart
300 SE 184th Ave Apt 101
Vancouver, WA 98683
971-319-2723

4.   On August 13, 2021, Mr. Hermida emailed me attaching copies of the initial offer letter, the ***TriNet HR XI, Inc. Benefits Guidebook and Summary Plan Description***, the **UnitedHealthcare Choice Plus Benefit Summary**, and the ***Employee Non-Disclosure and Invention Assignment Agreement***. Attached as **Exhibit A** is a true and correct copy of Mr. Hermida's email.

5.   On August 14, 2021, I emailed Josh Wu relaying my concerns about the inclusion of TriNet as an employer. Attached as **Exhibit B** is a true and correct copy of the email to Josh Wu.

6.   On August 17, Mr. Hermida emailed me inviting me to discuss with him on the phone my concerns about the arrangement. Attached as **Exhibit C** is a true and correct copy of the email from Mr. Hermida.

7.   On August 19, Mr. Hermida sent what he now alleges to be the TCA, only referring to it as the "TriNet Terms," to address my concerns about the arrangement and request for the PEO contract. Mr. Hermida also attached what he now alleges to be the Switchboard employee handbook, but what is actually the ***TriNet Employee Handbook***. (Dkt. 18, Exhibit B)

8.   Upon recently reviewing the ***TriNet Employee Handbook***, it states "When you first logged into the TriNet platform, you were asked to read and accept the TriNet Terms and Conditions Agreement (TCA)" and "After you accepted the TCA, you received a confirmation email with a copy of the TCA." Furthermore, that "This handbook is for worksite employees and, together with the Terms and Conditions Agreement ('TCA'), governs the relationship between you and TriNet." Attached as **Exhibit D** are true and correct copies of the relevant pages from the handbook.

DECL. OF BRAD ERHART IN SUPP. OF
PLAINTIFF'S BRIEF IN OPP. OF
SWITCHBOARD TECHNOLOGY LAB'S
MOTION TO COMPEL ARBITRATION  - 2

Brad Erhart
300 SE 184th Ave Apt 101
Vancouver, WA 98683
971-319-2723

9. On August 20, Mr. Hermida responded to my email about looking forward to the updated offer letter. Attached as **Exhibit E** is a true and correct copy of his response.

10. On August 23, Mr. Hermida sent the updated offer letter and only attached alongside it the ***Employee Non-Disclosure and Invention Assignment Agreement***. Attached as **Exhibit F** is a true and correct copy of his email and the relevant section of the ***Employee Non-Disclosure and Invention Assignment Agreement***.

11. On August 31, I was sent an email with instructions to onboard with TriNet. This includes information about accepting the now alleged TCA document. Attached as **Exhibit G** is a true and correct copy of this email.

12. As part of my employment, the documents provided evidence that my only employment by law was with TriNet HR XI, Inc. Attached as **Exhibit H** are true and correct copies of the relevant portions of those documents.

13. On December 27, 2022, TriNet HR XI, Inc. responded to my Washington State Human Rights Commission ("WHSRC") complaint alleging that they too were a released party under the Switchboard ***Separation and General Release Agreement*** and that they were never my employer. On October 19, 2023, I made a public records request to the WSHRC and paid for copies of the public records from their investigation. Attached as **Exhibit I** is the cover sheet showing the documents are now public record, and TriNet's response including the Switchboard ***Separation and General Release Agreement***.

14. The only other party listed in a limited capacity in the Switchboard ***Separation***

DECL. OF BRAD ERHART IN SUPP. OF
PLAINTIFF'S BRIEF IN OPP. OF
SWITCHBOARD TECHNOLOGY LAB'S
MOTION TO COMPEL ARBITRATION  - 3

Brad Erhart
300 SE 184th Ave Apt 101
Vancouver, WA 98683
971-319-2723

*and General Release Agreement* is TriNet HR Corporation. Attached as **Exhibit J** are documents showing that TriNet HR Corporation is a different legal entity from TriNet HR XI, Inc. altogether.

15. In their response, TriNet HR XI, Inc. also claims that they were never informed by me about a request for reasonable accommodations. Attached as **Exhibit K** is a copy of the email showing that they were informed and even responded prior to the effective termination about my request and claims of discrimination while claiming Switchboard was the only employer.

16. Attached as **Exhibit L** is a copy of the relevant page from the Department of Labor's MEWA guidebook regarding multiple employer benefit plans, stating that a worksite employer cannot remain an employer in any respect under a single-employer plan provided by a PEO.

17. Attached as **Exhibit M** is a copy of the relevant sections of TriNet's 2021 Form 10-K Risk Factors showing that TriNet had been made aware of the requirement involving single-employer plans prior to my employment.

18. Attached as **Exhibit N** is a copy of the relevant section from a Subscriber Agreement ("PEO Contract") involving TriNet and Napa Valley Kitchens from the Securities and Exchange Commission (SEC) website.

I hereby certify under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.

SIGNED and DATED this 8th day of January, 2024.

*Brad Erhart*

DECL. OF BRAD ERHART IN SUPP. OF
PLAINTIFF'S BRIEF IN OPP. OF
SWITCHBOARD TECHNOLOGY LAB'S
MOTION TO COMPEL ARBITRATION  - 4

Brad Erhart
300 SE 184th Ave Apt 101
Vancouver, WA 98683
971-319-2723

1

2

3

4

5

6

7

8

Respectfully submitted,

By: /s/ Brad Erhart
Brad Erhart
300 SE 184th Ave Apt 101
Vancouver, WA 98683
971-319-2723
complaint@leo.spacejunk.dev
Pro Se Plaintiff

DECL. OF BRAD ERHART IN SUPP. OF
PLAINTIFF'S BRIEF IN OPP. OF
SWITCHBOARD TECHNOLOGY LAB'S
MOTION TO COMPEL ARBITRATION  - 5

Brad Erhart
300 SE 184th Ave Apt 101
Vancouver, WA 98683
971-319-2723

# EXHIBIT A

 Gmail

Brad Erhart <brae04@gmail.com>

---

## Brad Erhart - Offer Letter

---

**Chris Hermida** <chris@switchboard.xyz>                    Fri, Aug 13, 2021 at 4:25 PM
To: brae04@gmail.com
Cc: Hiring <hiring@switchboard.xyz>, Mitch Gildenberg <mitch@switchboard.xyz>

Brad,

We're excited to formally extend you an offer to join Switchboard as a Senior DevOps Engineer reporting to Mitch Gildenberg (cc'd). Below we've attached our offer letter as well as the Employee Non-Disclosure and Invention Assignment Agreement (NDIAA) and a summary of our benefits.

Switchboard currently provides 100% premium coverage of our United Choice Plus plan for qualified employees and their spouse or partner. In addition, we also provide dental and vision plans.

Let us know if you have any questions and on behalf of the entire Switchboard team we're looking forward to having you on board!

---

**4 attachments**


📄 **2021_Benefits_Guidebook .pdf**
834K

📄 **2021 Heathcare Plan Summary Switchboard (1).pdf**
959K


📄 **Switchboard Technology Labs, Inc. - Employee Offer Letter Brad Erhart.pdf**
55K

📄 **Switchboard Technology Labs, Inc. - Employee NDIAA Brad Erhart.pdf**
183K

# EXHIBIT B

 Gmail

Brad Erhart <brae04@gmail.com>

---

## Offer questions

**BE** <brae04@gmail.com>
To: josh.wu@cybercoders.com

Sat, Aug 14, 2021 at 11:52 PM

Josh,

Prior to contacting Chris at Switchboard, I wanted to reach out because I do have some questions and/or concerns regarding the offer letter.

One area of concern, they mention an employer of record which is listed as TriNet HR Corporation. This appears similar to working full-time for a staffing agency or as consultant, but I would be reporting to Switchboard on a day-to-day basis. I do not have any insight into any contractual agreements between Switchboard and TriNet that shows what they are permitted to offer on behalf of TriNet in regards to employment, and as such I cannot adequately determine if such terms would even be recognized by TriNet. In the past, anytime I've worked as a contractor the offer letter and employee requirements came from the staffing agency and not the company I was assigned to.

In multiple places in the offer letter they also mention Switchboard as my employer. I believe this is ill-advised and the wording would need to be revised to ensure that any mention of employment correctly list the employer of record (EOR), and any agreements clearly outline the differences.

I do also want to mention that the offer letter states employment is at-will, with no provision regarding a two-month notice. It was my understanding that something like this would be included so long that job performance is satisfactory based on the job description and scheduling requirements.

Last, I see no mention of getting 10% of an equity pool. It does mention the option to purchase company stock, pending the approval of the Company's board of directors, but does not include the number of issued shares nor getting a percentage from an equity pool.

I am going to have a family member who is a financial advisor review the offer letter tomorrow and provide any additional feedback they may have, but wanted to give you a heads up and see if you had any insight regarding how to address these concerns.

Sincerely,

--
Brad Erhart
+1 971 319 2723
https://github.com/braderhart
https://aur.archlinux.org/packages/?SeB=m&K=braderhart

Checkout some recent tech videos in my YouTube playlist.

# EXHIBIT C

**Chris Hermida** <chris@switchboard.xyz>                                    Tue, Aug 17, 2021 at 10:21 AM
To: BE <brae04@gmail.com>

Hey Brad,

It might be easiest to just hop on a call and walk through each of your concerns. When would be the best time to reach you?

Chris

[Quoted text hidden]

---

**BE** <brae04@gmail.com>                                                    Tue, Aug 17, 2021 at 10:25 AM
To: Chris Hermida <chris@switchboard.xyz>

Chris, you can reach me for the next hour and I will also be available after 2PM PST today until around 5:30.

Thanks,

[Quoted text hidden]

---

**Chris Hermida** <chris@switchboard.xyz>                                    Tue, Aug 17, 2021 at 10:35 AM
To: BE <brae04@gmail.com>

Great, I'll give you a ring shortly.

Looking forward to chatting!

[Quoted text hidden]

# EXHIBIT D

## IMPORTANT NOTICE

At TriNet, we refer to people who are co-employed by TriNet and a TriNet client as "worksite employees." This handbook is for worksite employees and, together with the Terms and Conditions Agreement ("TCA"), governs the relationship between you and TriNet.

Where necessary to distinguish between a client company and TriNet, the term "company" will be used to refer to the client company and TriNet will be referenced by name.

Of course, it is not possible for this handbook to address every situation that may arise or provide information that answers every possible question regarding your relationship with TriNet or your company's relationship with TriNet. And because circumstances change over time, TriNet reserves the right to change any of its offerings, policies, procedures or rules at any time, with or without notice.

TriNet is the single-employer sponsor of its benefits plans. If you are eligible to participate in TriNet-sponsored benefits, please refer to the TriNet Benefits Guidebook and Summary Plan Description (the "Benefits Guidebook") posted on the TriNet platform (**login.TriNet.com**) or available to you via mobile app. If you are not eligible to participate in certain or any TriNet-sponsored benefits under the TriNet Benefits Plan—either because you do not meet eligibility requirements or because your company has not contracted with TriNet to make certain or any TriNet-sponsored benefits available to you—then references to TriNet-sponsored benefits in this handbook will not apply to you. Nothing in this handbook is a guarantee of benefits coverage under the TriNet Benefits Plan.

Nothing in this handbook is intended to interfere with the rights of any worksite employee to engage in protected concerted activity, either with coworkers or others, or any other rights provided under the National Labor Relations Act (NLRA). To the extent that conduct is protected under the NLRA, this handbook does not prohibit it.

If you have any questions regarding any policies, please ask your supervisor or manager or contact TriNet.

Unless and until superseded by a subsequent TriNet Worksite Employee Handbook, this handbook applies to all TriNet worksite employees regardless of date of hire and supersedes any and all prior handbooks or policies on the same subjects between TriNet and worksite employees, except as otherwise expressly provided herein. In the event of any conflict between a policy in this handbook and a policy of your company, this handbook shall control unless a policy-specific written waiver has been provided by TriNet's Legal Department.

- **Direct Deposit:** Complete your banking information to have your pay deposited directly in to the financial account of your choosing. Alternatively, you may have the option to receive your pay via pay card. Check with your company or TriNet for more information.

- **Benefits Enrollment:** Access information about TriNet-sponsored benefits, including enrollment information, in the TriNet Benefits Guidebook and Summary Plan Description and make your plan selections (if applicable).

- **New Worksite Employee Orientation:** You have on-demand, 24/7 access to the online New Hire Orientation on the TriNet platform. TriNet encourages you to complete orientation within the first two weeks of your employment with TriNet.

Here are some other things you can do through the TriNet platform:

- View an electronic copy of your wage statements. You will have historical copies of your TriNet wage statements and Forms W-2 available online.

- Adjust your tax withholdings.

- Change your life insurance beneficiaries, if applicable.

- Receive and review your total compensation statement.

- Access discounts on electronics, apparel, entertainment and much more through the TriNet Marketplace.

If you are a manager, the TriNet platform provides additional functionality for hiring, terminations, reports, payroll entry and worksite employee administration.

## THE TRINET TERMS AND CONDITIONS AGREEMENT (TCA)

When you first logged into the TriNet platform, you were asked to read and accept the TriNet Terms and Conditions Agreement (TCA). The TCA contains important information regarding your employment relationship with TriNet, your use of the TriNet platform and online services, and the handling of any disputes arising out of your relationship with TriNet and related matters. Your acknowledgement and acceptance of the TCA is a condition of your use of the TriNet platform and online services and of your employment with TriNet.

After you accepted the TCA, you received a confirmation email with a copy of the TCA. The confirmation email also contained other important information, including your Initial COBRA Notification Letter, if you are eligible for TriNet-sponsored health plans. Please make sure to read that letter and become familiar with your rights and obligations under COBRA.

## UPDATING YOUR INFORMATION

For a variety of reasons, including to ensure dependable, accurate and timely delivery of your payroll and benefits information, TriNet needs to have your current name, address, email address, telephone number, emergency contacts and family status. You are required to use the TriNet platform to keep such information up to date.

## EMPLOYMENT AND INCOME VERIFICATION REQUESTS, REFERENCES AND OTHER REQUESTS BY THIRD PARTIES FOR COMPANY INFORMATION

### Income or Employment Verification
Instructions and information for obtaining income and employment verifications (including self-generated letters) can be accessed on the TriNet platform.

### Garnishment and Benefits Inquiries
Requests for garnishment and benefits inquiries should be directed to TriNet.

# EXHIBIT E

 **Gmail**

Brad Erhart <brae04@gmail.com>

## Offer questions

**Chris Hermida** <chris@switchboard.xyz>                                      Fri, Aug 20, 2021 at 12:25 PM
To: BE <brae04@gmail.com>, Mitch Gildenberg <mitch@switchboard.xyz>, Hiring <hiring@switchboard.xyz>

Hey Brad,

Just letting you know that we're still waiting for a response from our TriNet rep before we can get that over. Will keep you posted.

- Chris
[Quoted text hidden]

# EXHIBIT F

 Gmail

## Offer questions

**Chris Hermida** <chris@switchboard.xyz>                    Mon, Aug 23, 2021 at 4:01 PM
To: BE <brae04@gmail.com>, Mitch Gildenberg <mitch@switchboard.xyz>, Hiring <hiring@switchboard.xyz>

Hey Brad,

Apologies for the delays but we've attached the updated offer letter and NDIAA agreement below.

Note the updated letter contains a severance / notice paragraph which would give you 30 days prior notice OR 1 months severance component unless terminated with cause (conditions defined in the letter).

We trust that you won't find any of it controversial, however happy to hop on a quick call if you have any questions or concerns about it.

On behalf of the entire Switchboard team, we're looking forward to working with you!

Cheers,
Chris
[Quoted text hidden]



**2 attachments**

 **Updated Switchboard Technology Labs, Inc. - Employee Offer Letter Brad Erhart.pdf**
56K

**Switchboard Technology Labs, Inc. - Employee NDIAA Brad Erhart.pdf**
183K

**EMPLOYEE NON-DISCLOSURE AND INVENTION ASSIGNMENT AGREEMENT**

As a condition of my employment with Switchboard Technology Labs, Inc., its subsidiaries, affiliates, successors or assigns (collectively, the "**Company**"), and in consideration of my continued employment with the Company, and the compensation and benefits afforded to me in connection with that continued employment, I, **Brad Erhart**, am entering into this Employee Covenants Agreement (this "**Agreement**").  This Agreement applies to the entire period of my employment.



**By signing this Agreement below, (1) I agree to be bound by each of its terms, (2) I acknowledge that I have read and understand this Agreement and the important restrictions it imposes upon me, and (3) I represent and warrant to the Company that I have had ample and reasonable opportunity to consult with legal counsel of my own choosing to review this Agreement and understand its terms including that it places significant restrictions on me.**

EMPLOYEE:

By: *Brad Erhart*

Name: Brad Erhart

Address: 16506 SE 29th St Apt 51
Vancouver, WA 98683

Date: 08/23/2021

Accepted by Company:

SWITCHBOARD TECHNOLOGY LABS, INC.

By:

Name: Chris Hermida

Title: Co-founder & CEO

Date:

# **EXHIBIT G**

1/8/24, 8:50 AM    Brad Erhart(Senior Devops Engineer), Switchboard Technology Labs, invites you to log in to TriNet!

Case 3:23-cv-05882-TMC   Document 28   Filed 01/08/24   Page 22 of 71

 Gmail

Brad Erhart <brae04@gmail.com>

## Brad Erhart(Senior Devops Engineer), Switchboard Technology Labs, invites you to log in to TriNet!

1 message

**DoNotReply@email.trinet.com** <DoNotReply@email.trinet.com>
To: brae04@gmail.com

Tue, Aug 31, 2021 at 5:26 AM

   TriNet Logo

Dear Brad Erhart,

Welcome to incredible!

Switchboard Technology Labs, has contracted with TriNet to provide human resource services such as managing payroll and delivering real-time HR.

TriNet is your online platform for managing certain HR needs, including your contact information, paycheck details, access to benefits* and paid time off (PTO).

**To set up your profile in TriNet's system and ensure your first paycheck with TriNet is accurate and on time, you must complete the following:**

1. Log into TriNet (login.TriNet.com).

   Use your Employee ID (▓▓▓7534). For new users, your default password is the last four digits of your SSN.

   If you have logged in previously, even if you were working for a different TriNet client, use your existing TriNet Employee ID (▓▓▓7534) or Login ID and password to log in. (If you don't remember your password, click "Need Help?" to access the "Forgot Password" link to create a new one.)

2. Read the TriNet Terms and Conditions Agreement (TCA), and if you agree to the TCA, then click **Accept**.
3. Read the company policies and the Employee Handbook, and if you agree to the policies, then click **Accept**.
4. Fill out the I-9 form.
5. Provide your information for our records.
6. Specify how you'd like to be paid. Setup of your paycheck options can take up to three calendar days, so please do this as soon as possible.
7. Provide instructions for tax withholding.
8. If applicable, elect TriNet benefits.

When you log in to TriNet, you will find a complete new hire checklist with detailed instructions to assist you. Once you are all set up, TriNet will be your online site for viewing your earning statements and W-2s, updating your personal information, requesting time off, and much more.

Watch for additional emails from TriNet with important new hire information along with follow-up information on other products or services your company has elected to offer.

If you have questions, contact us via 24/7 Live Chat (login.TriNet.com > Contact TriNet > Live Chat), by phone (800.638.0461) Monday through Friday 6 a.m.-midnight ET (3 a.m.-9 p.m. PT), or by email (employees@TriNet.com). TriNet is closed on select U.S. holidays.

**Helpful Tip**
Download the TriNet Mobile app to quickly access information such as your paycheck, current benefits, company directory, and request time off.

 

Sincerely,

TriNet

Company ID: 15SV

*Not all worksite employees will be offered an opportunity to enroll in TriNet benefits. Benefit offerings are determined by TriNet and your company and are subject to eligibility requirements.*

This communication is for informational purposes only; it is not legal, tax or accounting advice. Click here for the full disclaimer.

TriNet will always offer you an unsubscribe option on non-mandatory communications. Role based, mandatory communications, such as this email, are generally required by law and not subject to an unsubscribe option. Please reach out to your TriNet account team if you would like to change who receives mandatory TriNet communications at your company.

© 2021 TriNet Group, Inc. All rights reserved. All trademarks, trade names, service marks and logos referenced herein belong to their respective companies. Our mailing address: One Park Place, Suite 600 Dublin, CA 94508

# EXHIBIT H

Form **W-4**
(Rev. December 2020)
Department of the Treasury
Internal Revenue Service

## Employee's Withholding Certificate

▶ Complete Form W-4 so that your employer can withhold the correct federal income tax from your pay.
▶ Give Form W-4 to your employer.
▶ Your withholding is subject to review by the IRS.

OMB No. 1545-0074

**2021**

| Step 1: Enter Personal Information | **(a)** First name and middle initial | Last name | **(b)** Social security number |
|---|---|---|---|
| | Brad | Erhart | ▉▉▉▉▉ |

**Address**
16506 SE 29th St Apt 51

**City or town, state, and ZIP code**
Vancouver, WA 98683-2339

▶ **Does your name match the name on your social security card?** If not, to ensure you get credit for your earnings, contact SSA at 800-772-1213 or go to *www.ssa.gov*.

**(c)**  ☐ Single or Married filing separately
☐ Married filing jointly or Qualifying widow(er)
☒ Head of household (Check only if you're unmarried and pay more than half the costs of keeping up a home for yourself and a qualifying individual.)

**Complete Steps 2–4 ONLY if they apply to you; otherwise, skip to Step 5.** See page 2 for more information on each step, who can claim exemption from withholding, when to use the estimator at *www.irs.gov/W4App*, and privacy.

| Step 2: Multiple Jobs or Spouse Works | Complete this step if you (1) hold more than one job at a time, or (2) are married filing jointly and your spouse also works. The correct amount of withholding depends on income earned from all of these jobs. |
|---|---|

Do **only one** of the following.

**(a)** Use the estimator at *www.irs.gov/W4App* for most accurate withholding for this step (and Steps 3–4); **or**

**(b)** Use the Multiple Jobs Worksheet on page 3 and enter the result in Step 4(c) below for roughly accurate withholding; **or**

**(c)** If there are only two jobs total, you may check this box. Do the same on Form W-4 for the other job. This option is accurate for jobs with similar pay; otherwise, more tax than necessary may be withheld  .  .  .  .  .  ▶ ☐

**TIP:** To be accurate, submit a 2021 Form W-4 for all other jobs. If you (or your spouse) have self-employment income, including as an independent contractor, use the estimator.

**Complete Steps 3–4(b) on Form W-4 for only ONE of these jobs.** Leave those steps blank for the other jobs. (Your withholding will be most accurate if you complete Steps 3–4(b) on the Form W-4 for the highest paying job.)

| Step 3: Claim Dependents | If your total income will be $200,000 or less ($400,000 or less if married filing jointly): | | |
|---|---|---|---|
| | Multiply the number of qualifying children under age 17 by $2,000 ▶ $ ▉▉▉ | | |
| | Multiply the number of other dependents by $500  .  .  .  .  ▶ $ ▉▉▉ | | |
| | Add the amounts above and enter the total here  .  .  .  .  .  .  .  .  . | **3** | $ ▉▉▉▉ |

| Step 4 (optional): Other Adjustments | **(a) Other income (not from jobs).** If you want tax withheld for other income you expect this year that won't have withholding, enter the amount of other income here. This may include interest, dividends, and retirement income  .  .  .  .  .  .  .  . | **4(a)** | $ |
|---|---|---|---|
| | **(b) Deductions.** If you expect to claim deductions other than the standard deduction and want to reduce your withholding, use the Deductions Worksheet on page 3 and enter the result here  .  .  .  .  .  .  .  .  .  .  . | **4(b)** | $ |
| | **(c) Extra withholding.** Enter any additional tax you want withheld each **pay period** | **4(c)** | $ |

| Step 5: Sign Here | Under penalties of perjury, I declare that this certificate, to the best of my knowledge and belief, is true, correct, and complete. |
|---|---|

▶ Electronically Signed on 08/31/2021 01:48 PM ET          ▶ 08/31/2021

**Employee's signature** (This form is not valid unless you sign it.)      **Date**

| Employers Only | Employer's name and address | First date of employment | Employer identification number (EIN) |
|---|---|---|---|
| | TriNet HR XI Inc, 16506 SE 29th St Apt 51, Vancouver, WA 98683-2339 | 8/31/2021 | ▉▉▉▉ 28 |

For Privacy Act and Paperwork Reduction Act Notice, see page 3.                     Cat. No. 10220Q                     Form **W-4** (2021)

Form **W-4**
(Rev. December 2020)
Department of the Treasury
Internal Revenue Service

## Employee's Withholding Certificate

▶ Complete Form W-4 so that your employer can withhold the correct federal income tax from your pay.
▶ Give Form W-4 to your employer.
▶ Your withholding is subject to review by the IRS.

OMB No. 1545-0074

**2021**

| **Step 1:** Enter Personal Information | **(a)** First name and middle initial<br>Brad | Last name<br>Erhart | **(b)** Social security number █████ |
|---|---|---|---|
| | Address<br>300 SE 184th Ave Apt 101 | | ▶ **Does your name match the name on your social security card?** If not, to ensure you get credit for your earnings, contact SSA at 800-772-1213 or go to *www.ssa.gov.* |
| | City or town, state, and ZIP code<br>Vancouver, WA 98683-1934 | | |

**(c)** ☐ Single or Married filing separately
☐ Married filing jointly or Qualifying widow(er)
☒ Head of household (Check only if you're unmarried and pay more than half the costs of keeping up a home for yourself and a qualifying individual.)

**Complete Steps 2–4 ONLY if they apply to you; otherwise, skip to Step 5.** See page 2 for more information on each step, who can claim exemption from withholding, when to use the estimator at *www.irs.gov/W4App*, and privacy.

| **Step 2:** Multiple Jobs or Spouse Works | Complete this step if you (1) hold more than one job at a time, or (2) are married filing jointly and your spouse also works. The correct amount of withholding depends on income earned from all of these jobs. |
|---|---|
| | Do **only one** of the following. |
| | **(a)** Use the estimator at *www.irs.gov/W4App* for most accurate withholding for this step (and Steps 3–4); **or** |
| | **(b)** Use the Multiple Jobs Worksheet on page 3 and enter the result in Step 4(c) below for roughly accurate withholding; **or** |
| | **(c)** If there are only two jobs total, you may check this box. Do the same on Form W-4 for the other job. This option is accurate for jobs with similar pay; otherwise, more tax than necessary may be withheld . . . . . ▶ ☐ |
| | **TIP:** To be accurate, submit a 2021 Form W-4 for all other jobs. If you (or your spouse) have self-employment income, including as an independent contractor, use the estimator. |

**Complete Steps 3–4(b) on Form W-4 for only ONE of these jobs.** Leave those steps blank for the other jobs. (Your withholding will be most accurate if you complete Steps 3–4(b) on the Form W-4 for the highest paying job.)

| **Step 3:** Claim Dependents | If your total income will be $200,000 or less ($400,000 or less if married filing jointly): | | |
|---|---|---|---|
| | Multiply the number of qualifying children under age 17 by $2,000 ▶ $ ███ | | |
| | Multiply the number of other dependents by $500 . . . . ▶ $ | | |
| | Add the amounts above and enter the total here . . . . . . . . | **3** | $ ███ |

| **Step 4 (optional):** Other Adjustments | **(a) Other income (not from jobs).** If you want tax withheld for other income you expect this year that won't have withholding, enter the amount of other income here. This may include interest, dividends, and retirement income . . . . . . . . . | **4(a)** | $ |
|---|---|---|---|
| | **(b) Deductions.** If you expect to claim deductions other than the standard deduction and want to reduce your withholding, use the Deductions Worksheet on page 3 and enter the result here . . . . . . . . . . . . . . . . | **4(b)** | $ |
| | **(c) Extra withholding.** Enter any additional tax you want withheld each **pay period** | **4(c)** | $ |

| **Step 5:** Sign Here | Under penalties of perjury, I declare that this certificate, to the best of my knowledge and belief, is true, correct, and complete. | |
|---|---|---|
| | ▶ Electronically Signed on 10/14/2021 09:15 AM ET<br>**Employee's signature** (This form is not valid unless you sign it.) | ▶ 10/14/2021<br>**Date** |

| **Employers Only** | Employer's name and address<br>TriNet HR XI Inc, 300 SE 184th Ave Apt 101, Vancouver, WA 98683-1934 | First date of employment<br>8/31/2021 | Employer identification number (EIN)<br>████ 28 |
|---|---|---|---|

**For Privacy Act and Paperwork Reduction Act Notice, see page 3.**        Cat. No. 10220Q        Form **W-4** (2021)

## Top Left W-2

OMB No. 1545-0008 — REISSUED STATEMENT

| d Control Number | 1 Wages, tips, other compensation | 2 Federal income tax withheld |
|---|---|---|
| b Employer identification number (EIN) | 3 Social security wages | 4 Social security tax withheld |
| 28 | | |
| a Employee's social security number | 5 Medicare wages and tips | 6 Medicare tax withheld |

c Employer's name, address and ZIP code
TRINET HR XI, INC.
SUITE 600
1 PARK PLACE
DUBLIN CA  94568-7983

| 7 Social security tips | 8 Allocated tips | 9 |
|---|---|---|
| 10 Dependent care benefits | 11 Nonqualified plans | 12a  See instructions for box 12 |
| 12b | 12c | 12d |
| 13 Statutory employee | Retirement plan | Third-party sick pay | 14 Other WAPFML |

e Employee's name, address and ZIP code
BRAD ERHART
300 SE 184TH AVE APT 101
VANCOUVER WA  98683

**2021**
Form **W-2**

| 15 State Employer's state I.D. no. | 16 State wages, tips, etc. |
|---|---|
| 17 State income tax | 18 Local wages, tips, etc. |
| 19 Local income tax | 20 Locality name |

Wage and Tax Statement
Copy C - For EMPLOYEE'S RECORDS (See Notice to Employee on back of Copy B.)
This information is being furnished to the Internal Revenue Service. If you are required to file a tax return, a negligence penalty or other sanction may be imposed on you if this income is taxable and you fail to report it.
Department of the Treasury – Internal Revenue Service

## Top Right W-2

OMB No. 1545-0008 — REISSUED STATEMENT

| d Control Number | 1 Wages, tips, other compensation | 2 Federal income tax withheld |
|---|---|---|
| b Employer identification number (EIN) | 3 Social security wages | 4 Social security tax withheld |
| 28 | | |
| a Employee's social security number | 5 Medicare wages and tips | 6 Medicare tax withheld |

c Employer's name, address and ZIP code
TRINET HR XI, INC.
SUITE 600
1 PARK PLACE
DUBLIN CA  94568-7983

| 7 Social security tips | 8 Allocated tips | 9 |
|---|---|---|
| 10 Dependent care benefits | 11 Nonqualified plans | 12a  See instructions for box 12 |
| 12b | 12c | 12d |
| 13 Statutory employee | Retirement plan | Third-party sick pay | 14 Other WAPFML |

e Employee's name, address and ZIP code
BRAD ERHART
300 SE 184TH AVE APT 101
VANCOUVER WA  98683

**2021**
Form **W-2**

| 15 State Employer's state I.D. no. | 16 State wages, tips, etc. |
|---|---|
| 17 State income tax | 18 Local wages, tips, etc. |
| 19 Local income tax | 20 Locality name |

Wage and Tax Statement
Copy B - To Be Filed With Employee's FEDERAL Tax Return.
This information is being furnished to the Internal Revenue Service.
Department of the Treasury – Internal Revenue Service

## Bottom Left W-2

OMB No. 1545-0008 — REISSUED STATEMENT

| d Control Number | 1 Wages, tips, other compensation | 2 Federal income tax withheld |
|---|---|---|
| b Employer identification number (EIN) | 3 Social security wages | 4 Social security tax withheld |
| 28 | | |
| a Employee's social security number | 5 Medicare wages and tips | 6 Medicare tax withheld |

c Employer's name, address and ZIP code
TRINET HR XI, INC.
SUITE 600
1 PARK PLACE
DUBLIN CA  94568-7983

| 7 Social security tips | 8 Allocated tips | 9 |
|---|---|---|
| 10 Dependent care benefits | 11 Nonqualified plans | 12a |
| 12b | 12c | 12d |
| 13 Statutory employee | Retirement plan | Third-party sick pay | 14 Other WAPFML |

e Employee's name, address and ZIP code
BRAD ERHART
300 SE 184TH AVE APT 101
VANCOUVER WA  98683

**2021**
Form **W-2**

| 15 State Employer's state I.D. no. | 16 State wages, tips, etc. |
|---|---|
| 17 State income tax | 18 Local wages, tips, etc. |
| 19 Local income tax | 20 Locality name |

Wage and Tax Statement
Copy 2 - To Be Filed With Employee's State, City, or Local Income Tax Return.
Department of the Treasury – Internal Revenue Service

## Bottom Right W-2

OMB No. 1545-0008 — REISSUED STATEMENT

| d Control Number | 1 Wages, tips, other compensation | 2 Federal income tax withheld |
|---|---|---|
| b Employer identification number (EIN) | 3 Social security wages | 4 Social security tax withheld |
| 28 | | |
| a Employee's social security number | 5 Medicare wages and tips | 6 Medicare tax withheld |

c Employer's name, address and ZIP code
TRINET HR XI, INC.
SUITE 600
1 PARK PLACE
DUBLIN CA  94568-7983

| 7 Social security tips | 8 Allocated tips | 9 |
|---|---|---|
| 10 Dependent care benefits | 11 Nonqualified plans | 12a |
| 12b | 12c | 12d |
| 13 Statutory employee | Retirement plan | Third-party sick pay | 14 Other WAPFML |

e Employee's name, address and ZIP code
BRAD ERHART
300 SE 184TH AVE APT 101
VANCOUVER WA  98683

**2021**
Form **W-2**

| 15 State Employer's state I.D. no. | 16 State wages, tips, etc. |
|---|---|
| 17 State income tax | 18 Local wages, tips, etc. |
| 19 Local income tax | 20 Locality name |

Wage and Tax Statement
Copy 2 - To Be Filed With Employee's State, City, or Local Income Tax Return.
Department of the Treasury – Internal Revenue Service

**Benefits Enrollment Confirmation**

Thank you for submitting your TriNet benefit elections for the current benefits plan year (January 1, 2021-December 31, 2021). Your benefits enrollment confirmation number is: **1003743372**. Please save a copy of this confirmation for your records.

We encourage you to take this opportunity to check your benefit elections for accuracy and omissions and confirm that you have enrolled your eligible dependents. Your "Pay Period Cost" noted below will be deducted from your pay. Please note that you may experience greater benefit deductions than your customary Pay Period Cost in your first and last paychecks due to retroactive and prospective benefits coverage. While you are actively enrolled in TriNet-sponsored benefits you will be responsible for paying the cost of your elected benefits, even if your wages become insufficient to cover the costs.

To make changes, log in to TriNet (login.TriNet.com) **no later than October 31** and click **Go to Enrollment** to review your elections and make any necessary corrections.

If you have questions or concerns, contact Connect 360 via 24/7* Live Chat (login.TriNet.com > Contact TriNet > Live Chat), by phone (800.638.0461) Monday through Friday 6 a.m.-midnight ET (3 a.m.-9 p.m. PT)*, or by email (employees@TriNet.com). *TriNet is closed on select U.S. holidays.

Please read this entire notice carefully, as there is important information included below the summary of your benefit elections.

**Your TriNet Benefits Election Summary**

| Your Health Plan Elections | | | |
|---|---|---|---|
| **Coverage** | **Plan Name** | **Plan Covers** | **Pay Period Cost** |
| Dental | Aetna Dental EPP Group | Brad Erhart ███████ | $24.04 |
| Vision | Aetna EyeMed Group Vision | Brad Erhart ███████ | $3.67 |
| Health Coverage Subtotal | $27.71 | | |
| Your Company Pays on Elected Plan(s) | $13.02 | | |
| **Your Pay Period Cost for Health Plans** | **$14.69** | | |

| Your Life & Disability Plan Elections | | | |
|---|---|---|---|
| **Coverage Type** | **Coverage** | **Beneficiaries** | **Pay Period Cost** |
| Supplemental AD&D | $500,000 | P-█████████ -100% | $10.00 |
| Supplemental Life | $300,000 | P-█████████ -100% | $12.00 |
| Dependent Life | $10,000 | - | $0.90 |
| Long-Term Disability | 50% LTD Employee Paid | - | $4.53 |
| Short-Term Disability | 50% STD Employee Paid | - | $4.68 |
| **Your Pay Period Cost for Life & Disability Plans** | **$32.11** | | |

**\*Important**: Elections for supplemental life and spouse/domestic partner life insurance and disability insurance may not be the actual amount of coverage allowed by the insurance carrier, and accordingly, may be subject to change. Certain supplemental life and disability insurance elections and increases in coverage require you to submit a Statement of Health (SOH) application to the insurance carrier for review. The insurance carrier will notify you if a SOH is required. **The insurance carrier has sole discretion over all coverage decisions. Supplemental life insurance or disability election amounts requiring a SOH are not effective until approved by the insurance carrier.** Coverage amounts may also be subject to age reduction rules set by the carrier. Refer to the Carrier Certificate for more information.

| Your Voluntary Benefit Elections | | | |
|---|---|---|---|
| **Plan Name** | **Coverage** | **Plan Covers** | **Pay Period Cost** |
| Legal | Declined Coverage | N/A | $0.00 |
| Accident | Declined Coverage | None | $0.00 |
| Critical Illness | Declined Coverage | None | $0.00 |
| Hospital Indemnity | Declined Coverage | None | $0.00 |
| **Your Pay Period Cost for Voluntary Benefits** | **$0.00** | | |

| Per Pay Period Cost | |
|---|---|

| Total Benefits Cost: | $59.82 |
| What Your Company Pays: | $13.02 |
| What you pay: | $46.80 |

TriNet will enroll you in your health plans as soon as possible, and will begin taking payroll deductions retroactive to the date you became eligible for benefits. If you subsequently change your elections within your 30-day election period, it is likely that TriNet has already enrolled you in the plan you first elected, and TriNet may have already taken a deduction from your paycheck for that plan. TriNet will ensure you get enrolled in the new plan, and TriNet will correct any differences in cost on following paychecks.

You may not get insurance ID cards for dental or vision plans; your provider will use your Social Security number.

If you need to see a provider before this, or if your provider does not have your information on record yet, you may need to pay out-of-pocket for your health care services and submit a reimbursement request later (hold on to your itemized receipts!).

If you have a severe medical condition and you must have your benefits confirmed immediately, please contact TriNet.

### Changing your Benefit Elections
You may change your benefit elections throughout the enrollment period as often as you like. Keep in mind you will be enrolled in the benefits you elect in your last submission before the end of the enrollment period. After that period, you will not be able to change your benefit elections until the next TriNet open enrollment unless you experience certain life status change events and submit your enrollment to TriNet in a timely manner.

### Double Coverage Limitations
If you work full-time for more than one TriNet client, you may be covered once under TriNet-sponsored dental, vision and supplemental life plans. Dependent spouses or domestic partners may not be covered as both a worksite employee and a dependent. Likewise, eligible dependent children can be covered under the Plan by one of the parents, not both.

### Carrier Certificates Govern Coverage
Eligibility, enrollment and coverage decisions are subject to the actual terms and conditions of the benefit plans sponsored by TriNet and as explained in detail in the Carrier Certificates (posted under Benefits > Carriers).

Insurance coverage exclusions and limitations apply. In the event there is a conflict between any of the information contained in any benefits guidance materials provided by TriNet (including but not limited to information contained in any TriNet website, the Benefits Enrollment Confirmation email, any written or electronic pamphlets, letters, emails, text messages, and statements made by TriNet employees) and the TriNet Plan document, the Plan document shall control. Also, if there is a conflict between an official certificate provided by the TriNet insurance carrier(s) (the "Carrier Certificate") and either the TriNet Plan document, any TriNet Summary Plan Description, statements made by a

TriNet employee, or any other benefits guidance materials provided by TriNet (including but not limited to those described above), the Carrier Certificate shall control.

TriNet is the single-employer sponsor of all its benefit plans. This communication is for informational purposes only, is not legal, tax or accounting advice, and is not an offer to sell, buy or procure insurance. TriNet reserves the right to amend the benefit plans or change the offerings and deadlines. Official plan documents always control. Click here for the full disclaimer.

Voluntary benefit plans are offered by Aflac or MetLife and are not ERISA-covered group health insurance plans. Enrollment is completely voluntary. If you enroll in a plan you must deal directly with the insurance company to request assistance or submit a claim.

TriNet will always offer you an unsubscribe option on non-mandatory communications. However, benefit communications are generally required by law, and are therefore mandatory and not subject to an unsubscribe option.

© 2021 TriNet Group, Inc. All rights reserved. This communication is for informational purposes only, is not legal, tax or accounting advice, and is not an offer to sell, buy or procure insurance. TriNet is the single-employer sponsor of all its benefit plans, which does not include voluntary benefits that are not ERISA-covered group health insurance plans and enrollment is voluntary. Official plan documents always control and TriNet reserves the right to amend the benefit plans or change the offerings and deadlines.

PO BOX 14869
Lexington, KY 40512
888-301-5615

**THE HARTFORD**

**Medical Information Request**

| To: Dr. Austin Chamberlain | | From: The Hartford Disability |
|---|---|---|
| Employer: TRINET HR XI, INC. | | Date: 11/24/2021 |
| Fax Number: 3605537450 | | Sender's Fax Number: 833-357-5153 |
| | | CLAIM NUMBER: ███55 |
| Phone number: | | Sender's Phone Number: 888-301-5615 |
| **Re: Brad Erhart** | | |
| Date of Birth: ███ | | |

## ** REQUEST FOR MEDICAL INFORMATION **

Dear Dr. Austin Chamberlain,

Brad Erhart requested Short-Term Disability benefits for a disability beginning on 11/15/2021. We need some information from you before we can make a decision on the claim.

Please send a completed Attending Provider Statement. We've attached the form for you here. You can return the completed form by email to GBInformationUpload@thehartford.com, or by fax to 833-357-5153.

If you need proof that Brad has authorized you to release records to us, please see the attached authorization form.

If you need Brad to provide formal permission for you to release records to us, please have them fill out the attached authorization form.

Additional records for the period of 11/01/2021 to present can be helpful in making our decision. Please include the following information when you send back the Attending Provider Statement:

Let us know if Brad is able to return to work with restrictions. Brad's employer may be able to accommodate the restrictions and help them return to work.

We have to have this information before we can proceed with Brad's request. We can't make any decisions without the completed form.

Please make sure your fax stays under 150 pages. Large faxes that are more than 150 pages should be sent in sections, and include a coversheet with the claim number.

If you have questions or need help, you can call us at **888-301-5615** between 8:00 AM and 8:00 PM ET, Monday through Friday or visit us online at **https://abilityadvantage.thehartford.com**. We're here to help.

Your underwriting company is HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY. The Hartford® is The Hartford Financial Services Group, Inc. and its subsidiaries, including underwriting companies Hartford Life and Accident Insurance Company and Hartford Fire Insurance Company. Home Office is Hartford, CT. The Hartford is the administrator for certain group benefits business written by Aetna Life Insurance Company and Talcott Resolution Life Insurance Company (formerly known as Hartford Life Insurance Company). The Hartford also provides administrative and claim services for employer leave of absence programs and self-funded disability benefit plans.



## Incredible starts here.

## TriNet HR XI, Inc. Benefits Guidebook and Summary Plan Description

## Benefits Plan Year
## January 1, 2021 – December 31, 2021

**For temporary COVID-19 pandemic benefits information, please refer to Appendix A.**

If you have questions about your benefits, please contact Connect 360 via 24/7 Live Chat (login.TriNet.com > **Contact TriNet > Live Chat**) by phone (800.638.0461) Monday through Friday 6 a.m.-midnight ET (3 a.m.-9 p.m. PT),  or by email (employees@TriNet.com). TriNet is closed on select U.S. holidays.

Si tiene preguntas sobre sus beneficios, comuníquese con TriNet a través de Live Chat las 24 horas los 7 días de la semana* (login.TriNet.com> Contact TriNet > Live Chat), por teléfono (800.638.0461) de lunes a viernes de 6 a.m. a medianoche hora del este (3 a.m. a 9 p.m. hora del pacífico)*, o por correo electrónico (employees@TriNet.com). *TriNet está cerrado los días festivos seleccionados por los EE.UU.

This proprietary communication has been prepared for educational and informational purposes only. The content does not provide and shall not be construed as providing legal, financial or tax advice on any specific matters. Transmission of this information is not intended to create, and receipt does not constitute, an attorney-client relationship between TriNet and you. TriNet is not an insurance company, but rather is the single-employer sponsor of all its benefit plans. Nothing contained herein constitutes an offer to sell, buy or procure insurance.

TriNet is the single employer sponsor of all its benefit plans. TriNet makes these plans available to qualifying Worksite employees ("WSEs"), with whom TriNet has established an employment relationship, and who perform services for clients of TriNet in a Professional Employer Organization ("PEO") or service model. Under this model, TriNet incurs all expenses associated with its plan sponsorship and maintenance, and TriNet bills the client for its services. The client has no other financial obligation to TriNet, its other clients, or any of its insurance carriers for TriNet benefit plan sponsorship or provision. TriNet carriers have no recourse against TriNet clients. Other than compliance with TriNet contract terms, clients have no legal responsibilities to TriNet, the WSEs or any other TriNet client for plan sponsorship or compliance. Federal and state laws may impose obligations on our clients independent of the role of TriNet as the plan sponsor. Because TriNet does not provide tax or legal advice, clients should address the resolutions of these obligations with their advisors.

Any references to "your benefit programs or plans" are not legal terms or terms of art and should not be confused with legal plan sponsorship, participation or fiduciary compliance. These terms and others, such as "your employees" or "your selections, plan, or investments," are used solely as lay terms of convenience so that you understand we are referring only to the decisions made and TriNet plans available in a specific Worksite or to a specific group of WSEs.

Insurance coverage exclusions and limitations apply. In the event there is a conflict between any of the information contained in any benefits guidance materials provided by TriNet (including but not limited to information contained in any TriNet website, the TriNet Benefits Enrollment Confirmation, any written or electronic pamphlets, letters, emails, text messages and statements made by TriNet employees) and the TriNet Plan document, the Plan document shall control. Also, if there is a conflict between an official certificate provided by TriNet insurance carrier(s) (the "Carrier Certificate") and either the TriNet Plan document, any TriNet Summary Plan Description, statements made by a TriNet employee or any other benefits guidance materials provided by TriNet (including but not limited to those described above), the Carrier Certificate shall control.

# YOUR BENEFIT PLAN

## TRINET HR XI, INC.

Contributory

**Group Disability Income Insurance**



## HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY

**One Hartford Plaza**
**Hartford, Connecticut 06155**
**1-800-523-2233**
**(A stock insurance company)**

**CERTIFICATE OF INSURANCE**

**The Hartford® is The Hartford Financial Services Group, Inc. and its subsidiaries.**

**Policyholder:**  TRINET HR XI, INC.
**Policy Number:**  GRH-804595
**Policy Effective Date:**  October 1, 2019
**Policy Anniversary Date:**  January 1, 2021

We have issued The Policy to the Policyholder.  Our name, the Policyholder's name and the Policy Number are shown above.  The provisions of The Policy, which are important to You, are summarized in this certificate consisting of this form and any additional forms which have been made a part of this certificate.  This certificate replaces any other certificate We may have given to You earlier under The Policy.  The Policy alone is the only contract under which payment will be made. Any difference between The Policy and this certificate will be settled according to the provisions of The Policy on file with Us at Our home office.  The Policy may be inspected at the office of the Policyholder.

Signed for the Company

Lisa Levin, *Secretary*                Jonathan Bennett, *President*

---

*A note on capitalization in this certificate:*
Capitalization of a term, not normally capitalized according to the rules of standard punctuation, indicates a word or phrase that is a defined term in The Policy or refers to a specific provision contained herein.

# TABLE OF CONTENTS

SCHEDULE OF INSURANCE ............................................................................................................16
   Cost of Coverage ....................................................................................................................16
   Eligible Class(es) for Coverage ...............................................................................................16
   Eligibility Waiting Period for Coverage ....................................................................................16
   Weekly Benefit .......................................................................................................................16
ELIGIBILITY AND ENROLLMENT .................................................................................................17
   Eligible Persons .....................................................................................................................17
   Eligibility for Coverage ...........................................................................................................17
   Enrollment .............................................................................................................................17
   Evidence of Insurability ..........................................................................................................17
PERIOD OF COVERAGE .............................................................................................................18
   Effective Date .........................................................................................................................18
   Deferred Effective Date ..........................................................................................................18
   Changes in Coverage .............................................................................................................18
   Termination ............................................................................................................................19
   Continuation Provisions ..........................................................................................................19
BENEFITS ..................................................................................................................................20
   Disability Benefit ....................................................................................................................20
   Disabled and Working Benefit .................................................................................................20
   Termination of Payment ..........................................................................................................21
EXCLUSIONS AND LIMITATIONS ................................................................................................21
GENERAL PROVISIONS ..............................................................................................................22
DEFINITIONS .............................................................................................................................26
ERISA ........................................................................................................................................31

## SCHEDULE OF INSURANCE

The Policy of short term Disability insurance provides You with short term income protection if You become Disabled from a covered Injury, Sickness, or pregnancy.

**The benefits described herein are those in effect as of February 1, 2020.**

**Cost of Coverage:**
You must contribute toward the cost of coverage.

**Disclosure of Fees:**
We may reduce or adjust premiums, rates, fees and/or other expenses for programs under The Policy.

**Disclosure of Services:**
In addition to the insurance coverage, We may offer noninsurance benefits and services to Active Employees.

**Eligible Class(es) For Coverage:**
All Full-time Active Employees who are considered industry risk class A, B, C, or D who are citizens or legal residents of the United States, its territories and protectorates; excluding temporary, leased or seasonal employees.

Full-time Employment:  at least 30 hours weekly

**Annual Enrollment Period:**  as determined by Your Employer on a yearly basis.

**Eligibility Waiting Period for Coverage:**
As defined by your employer

**Benefits Commence:**  (See your certificate rider)

**Weekly Benefit:**  (See your certificate rider)

**Maximum Weekly Benefit:**  (See your certificate rider)

**Example: For employees in a shared employee status**
Weekly Benefit will be calculated from each disability worksite employer plan based on the Pre-Disability Earnings from each worksite employer disability plan and summed to determine the gross Weekly Benefit, subject to the Maximum Weekly Benefit.

**Example 1:**
Worksite employer No. 1
Plan Design:  50% benefit calculated on a  weekly basis
Hours working: 30
Weekly Pre-Disability Earnings equal: $1,250

$1,250 X .50 = $625 gross Weekly Benefit

Worksite employer No. 2
Plan Design:  60% benefit calculated on a weekly basis
Hours working: 30
Weekly Pre-Disability Earnings equal: $1,000

$1,000 X .60 = $600 gross Weekly Benefit

A. combined gross Weekly Benefit:  $625 + $600 = $1,225
B. Maximum Weekly Benefit:         $1,154

Weekly Benefit (Lesser of A or B) = $1,154**,** reduced by Other Income Benefits

**Example 2:**
Worksite employer No. 1

Plan Design:  50% benefit calculated on a weekly basis
Hours working: 30
Weekly Pre-Disability Earnings equal: $2,500

$2,500 X .50 = $1,250 gross Weekly Benefit

Worksite employer No.2
Plan Design:  60% benefit calculated on a weekly basis
Hours working: 30
Weekly Pre-Disability Earnings equal: $4,000

$4,000 X .60 = $2,400

A. combined gross Weekly Benefit:  $1,250 + $2,400 = $3,650
B. Maximum Weekly Benefit:      $1,154

Weekly Benefit (Lesser of A or B) = $1,154, reduced by Other Income Benefits

**Minimum Weekly Benefit:**
$25

**Maximum Duration of Benefits Payable:**   (See your certificate rider)

**Additional Benefits:**

**<u>Disabled and Working Benefit</u>**
see benefit

# ELIGIBILITY AND ENROLLMENT

**Eligible Persons:**  *Who is eligible for coverage?*
All persons in the class or classes shown in the Schedule of Insurance will be considered Eligible Persons.

**Eligibility for Coverage:**  *When will I become eligible?*
You will become eligible for coverage on the later of:
1)  the Policy Effective Date; or
2)  the date on which You complete the Eligibility Waiting Period for Coverage shown in the Schedule of Insurance, if applicable.

**Enrollment:**  *How do I enroll for coverage?*
To enroll for coverage You must:
1)  complete and sign a group insurance enrollment form which is satisfactory to Us; and
2)  deliver it to Your Employer.
You have the option to enroll by voice recording or electronically.  Your Employer will provide instructions.

If You do not enroll within 31 days after becoming eligible under The Policy, or if You were eligible to enroll under the Prior Policy and did not do so, and later choose to enroll:
1)  You must give Us Evidence of Insurability satisfactory to Us; and
2)  You may only enroll during an Annual Enrollment Period designated by the Policyholder.
However, if You are enrolling for an increase in coverage to a higher option that Your Employer is offering for the first time, as shown in the Schedule of Insurance, no Evidence of Insurability will be required.

The dates of the Annual Enrollment Period are shown in the Schedule of Insurance.

**Evidence of Insurability:**  *What is Evidence of Insurability and what happens if Evidence of Insurability is not satisfactory to Us?*
Evidence of Insurability must be satisfactory to Us and may include, but will not be limited to:
1)  a completed and signed application approved by Us;

All statements made by the Policyholder, the Employer or You under The Policy will be deemed representations and not warranties.  No statement made to affect this insurance will be used in any contest unless it is in writing and a copy of it is given to the person who made it, or to his or her beneficiary or Your representative.

**Policy Interpretation:**  *Who interprets the terms and conditions of The Policy?*
We have full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of The Policy.  This provision applies where the interpretation of The Policy is governed by the Employee Retirement Income Security Act of 1974, as amended (ERISA).

**Physical Examinations and Autopsy:**  *Will I be examined during the course of my claim?*
While a claim is pending We have the right at Our expense:
   1)  to have the person who has a loss examined by a Physician when and as often as reasonably necessary; and
   2)  to make an autopsy in case of death where it is not forbidden by law.


# DEFINITIONS

**Actively at Work** means at work with the Employer on a day that is one of the Employer's scheduled workdays.  On that day, You must be performing for wage or profit all of the regular duties of Your Occupation:
   1)  in the usual way; and
   2)  for Your usual number of hours.
We will consider You Actively at Work on a day that is not a scheduled work day only if You were Actively at Work on the preceding scheduled work day.

**Active Employee** means an employee who works for the Employer on a regular basis in the usual course of the Employer's business.  This must be at least the number of hours shown in the Schedule of Insurance.

**Bonuses** means the weekly average of monetary bonuses You received from Your Employer over:
   1)  the 12 month period ending immediately prior to the last day You were Actively at Work before You became Disabled; or
   2)  the total period of time You worked for Your Employer, if less than the above period.

**Commissions** means the weekly average of monetary commissions You received from Your Employer over:
   1)  the 12 month period ending immediately prior to the last day You were Actively at Work before You became Disabled; or
   2)  the total period of time You worked for Your Employer, if less than the above period.

**Current Weekly Earnings** means weekly earnings You receive from:
   1)  Your Employer; and
   2)  other employment;
while You are Disabled and eligible for the Disabled and Working Benefit.

However, if the other employment is a job You held in addition to Your job with Your Employer, then during any period that You are entitled to benefits for being Disabled from Your Occupation, only the portion of Your earnings that exceeds Your average earnings from the other employer over the 6 month period just before You became Disabled will count as Current Weekly Earnings.

**Disabled and Working** means that You are prevented by:
   1)  Injury;
   2)  Sickness;
   3)  Mental Illness;
   4)  Substance Abuse; or
   5)  pregnancy;
from performing some, but not all of the Essential Duties of Your Occupation, are working on a part-time or limited duty basis, and as a result, Your Current Weekly Earnings are more than 20%, but are less than 80% of Your Pre-disability Earnings.

**Disability or Disabled** means Total Disability or Disabled and Working Disability.

**Employer** means the Policyholder.

**Essential Duty** means a duty that:
1) is substantial, not incidental;
2) is fundamental or inherent to the occupation; and
3) cannot be reasonably omitted or changed.
Your ability to work the number of hours in Your regularly scheduled workweek is an Essential Duty.

**Injury** means bodily injury resulting:
1) directly from accident; and
2) independently of all other causes;
which occurs while You are covered under The Policy.  However, an Injury will be considered a Sickness if Your Disability begins more than 30 days after the date of the accident.

**Mental Illness** means a mental disorder as listed in the current version of the Diagnostic and Statistical Manual of Mental Disorders, published by the American Psychiatric Association.  A Mental Illness may be caused by biological factors or result in physical symptoms or manifestations.

For the purpose of The Policy, Mental Illness does not include the following mental disorders outlined in the Diagnostic and Statistical Manual of Mental Disorders:
1) Mental Retardation;
2) Pervasive Developmental Disorders;
3) Motor Skills Disorder;
4) Substance-Related Disorders;
5) Delirium, Dementia, and Amnesic and Other Cognitive Disorders; or
6) Narcolepsy and Sleep Disorders related to a General Medical Condition.

**Other Income Benefits** means the amount of any benefit for loss of income, provided to You or Your family, as a result of the period of Disability for which You are claiming benefits under The Policy.  This includes any such benefits for which You or Your family are eligible or that are paid to You or Your family, or to a third party on Your behalf, pursuant to any:
1) temporary, permanent disability, or impairment benefits under a Workers' Compensation Law, the Jones Act, occupational disease law, similar law or substitutes or exchanges for such benefits;
2) governmental law or program that provides disability or unemployment benefits as a result of Your job with Your Employer;
3) plan or arrangement of coverage, other than income from any accumulated sick time, salary continuation or paid time off, whether insured or not, which is received from Your Employer as a result of employment by or association with Your Employer or which is the result of membership in or association with any group, association, union or other organization;
4) any income You received from Your Employer as a result of any accumulated sick time, salary continuation or paid time off, which causes the Weekly Benefit, plus Other Income Benefits to exceed 100% of Your Pre-disability Earnings.  The amount in excess of 100% of Your Pre-disability Earnings will be used to reduce the Weekly Benefit;
5) mandatory "no-fault" automobile insurance plan;
6) disability benefits under:
   a) the United States Social Security Act or alternative plan offered by a state or municipal government;
   b) the Railroad Retirement Act;
   c) the Canada Pension Plan, the Canada Old Age Security Act, the Quebec Pension Plan or any provincial pension or disability plan; or
   d) similar plan or act;
   that You, Your spouse and/or children, are eligible to receive because of Your Disability; or
7) disability benefit from the Department of Veterans Affairs, or any other foreign or domestic governmental agency:
   a) that begins after You become Disabled; or
   b) that You were receiving before becoming Disabled, but only as to the amount of any increase in the benefit attributed to Your Disability.

Other Income Benefits also means the amount of any payments that are made to You or to Your family, or to a third party on Your behalf, pursuant to any:
1) disability benefit under Your Employer's Retirement Plan;
2) temporary, permanent disability or impairment benefits under a Workers' Compensation Law, the Jones Act, occupational disease law, similar law or substitutes or exchanges for such benefits;

**ERISA INFORMATION**
**THE FOLLOWING NOTICE**
**CONTAINS IMPORTANT INFORMATION**

This employee welfare benefit plan (Plan) is subject to certain requirements of the Employee Retirement Income Security Act of 1974 (ERISA), as amended.  ERISA requires that you receive a Statement of ERISA Rights, a description of Claim Procedures, and other specific information about the Plan.  This document serves to meet ERISA requirements and provides important information about the Plan.

The benefits described in your booklet-certificate (Booklet) are provided under a group insurance policy (Policy) issued by the Hartford Life and Accident Insurance Company (Insurance Company) and are subject to the Policy's terms and conditions.  The Policy and Booklet are incorporated into, and form a part of, the Plan.  The Plan has designated and named the Insurance Company as the claims fiduciary for benefits provided under the Policy.  The Plan has granted the Insurance Company full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Policy, to the extent permitted by applicable state law.

A copy of the Plan is available for your review during normal working hours in the office of the Plan Administrator.

---

1. **Plan Name**

   Group Short Term Disability Plan for employees of TRINET HR XI, INC..

---

2. **Plan Number**

   WD - 501

---

3. **Employer/Plan Sponsor**

   TRINET HR XI, INC.
   9000 Town Center Parkway
   Bradenton, FL 34202

---

4. **Employer Identification Number**

   28

---

5. **Type of Plan**

   Welfare Benefit Plan providing Group Short Term Disability.

---

6. **Plan Administrator**

   TRINET HR XI, INC.
   9000 Town Center Parkway
   Bradenton, FL 34202

---

7. **Agent for Service of Legal Process**

   For the Plan

CONTROL NUMBER:

| 44444 | For Official Use Only ▶ OMB No. 1545-0008 | | |
|---|---|---|---|

| **a** Employer's name, address, and ZIP code | **c** Tax year/Form corrected | **d** Employee's correct SSN |
|---|---|---|

HARTFORD LIFE & ACC INS CO
FOR TRINET HR XI, INC.
PO BOX 14772
LEXINGTON, KY 40512

866-854-9219

**c** Tax year/Form corrected

2022    / W-2  C

**e** Corrected SSN and/or name (Check this box and complete boxes f and/or g if incorrect on form previously filed.)

Complete boxes f and/or g only if incorrect on form **previously filed** ▶

**f** Employee's **previously reported** SSN

| **b** Employer's Federal EIN 48 | **g** Employee's **previously reported** name |
|---|---|

**h** Employee's first name and initial    Last name    Suff.

BRAD    ERHART

300 SE 184TH AVE APT 101
VANCOUVER, WA 98683

Note. Only complete money fields that are being corrected (exception: for corrections involving MQGE, see the General Instructions for W-2 and W-3, under Specific Instructions for Form W-2c, boxes 5 and 6).

**I** Employee's address and ZIP code

| Previously reported | Correct information | Previously reported | Correct information |
|---|---|---|---|
| 1 Wages, tips, other compensation | 1 Wages, tips, other compensation | 2 Federal income tax withheld | 2 Federal income tax withheld |
| 3 Social security wages | 3 Social security wages | 4 Social security tax withheld | 4 Social security tax withheld |
| 5 Medicare wages and tips | 5 Medicare wages and tips | 6 Medicare tax withheld | 6 Medicare tax withheld |
| 7 Social security tips | 7 Social security tips | 8 Allocated tips | 8 Allocated tips |
| 9 | 9 | 10 Dependent care benefits | 10 Dependent care benefits |
| 11 Nonqualified plans | 11 Nonqualified plans | 12a See instructions for box 12 | 12a See instructions for box 12 |
| 13 Statutory employee  Retirement plan  Third-party sick pay | 13 Statutory employee  Retirement plan  Third-party sick pay | 12b | 12b |
| 14 Other (see instructions) | 14 Other (see instructions) | 12c | 12c |
| | | 12d | 12d |
| | | 12e | 12e |
| | | 12f | 12f |

### State Correction Information

| Previously reported | Correct information | Previously reported | Correct information |
|---|---|---|---|
| 15 State | 15 State | 15 State | 15 State |
| Payer's state ID number | Payer's state ID number | Payer's state ID number | Payer's state ID number |
| 16 State wages, tips, etc. | 16 State wages, tips, etc. | 16 State wages, tips, etc. | 16 State wages, tips, etc. |
| 17 State income tax | 17 State income tax | 17 State income tax | 17 State income tax |

### Locality Correction Information

| Previously reported | Correct information | Previously reported | Correct information |
|---|---|---|---|
| 18 Local wages, tips, etc. | 18 Local wages, tips, etc. | 18 Local wages, tips, etc. | 18 Local wages, tips, etc. |
| 19 Local income tax | 19 Local income tax | 19 Local income tax | 19 Local income tax |
| 20 Locality name | 20 Locality name | 20 Locality name | 20 Locality name |

Copy 2 - To Be Filed with Employee's State, City, or Local Income Tax Return

Form **W-2c** (Rev. 8-2016)
2H8069 1.000

**Corrected Wage and Tax Statement**

Department of the Treasury
Internal Revenue Service



Brad Erhart <brae04@gmail.com>

## Trinet XI Payment Processed Successfully

1 message

**TriNet - TriNetCOBRA at billerpayments.com**                                    Thu, Dec 30, 2021 at
<trinetcobra.at.billerpayments.com_slrsss@simplelogin.co>                                   4:44 AM
To: ELEK_ACQUIESCENT@leo.spacejunk.dev

Dear ERHART,BRAD,

This email is to confirm the successful processing of a one-time payment for your Trinet XI account number ending XXXX7534.

A one-time payment of $26.55 that was scheduled with a date of 12/30/2021 has been processed. The funding source that was debited for this payment is your funding account number ending XXXX1096.

The unique confirmation number for this payment is ID8Q99DBVX.

Thank you for using Online Payment Processing at www.trinet.com.

TriNet COBRA

———————————————————————————

About This Message

This email was sent to ELEK_ACQUIESCENT@LEO.SPACEJUNK.DEV. You received this email to confirm the activity described above on your TriNet account.

Account Related Questions:

Please do not reply to this message with account related questions. If you have account related questions, please call theTriNet Solution Center at 800.638.0461 or email employees@trinet.com.

# EXHIBIT I

**Washington State Human Rights Commission**
Public Records Review

Index of WITHHELD or *REDACTED Documents
Pursuant to the Exemptions under RCW 42.56

**Case Name:**   Brad Erhart v. TriNet HR XL, Inc
**Case number:**  06ED-0466-21-2

**Exemption:** RCW 42.56.230 - Personal Information

Ck acct: 79, 186-190


**Exemption:** RCW 42.56.590 - Personal Info - security breaches

DOB: 66-68, 78, 382
SS#: 182, 184

**Exemption:** N/A

*redacted

### WASHINGTON STATE HUMAN RIGHTS COMMISSION
### CASE SUMMARY AND ROUTING LOG FOR CASE #06ED-0466-21-2
### Erhart, Brad v. TriNet HR XI, Inc.

| Complaint Received | Acknowledgement Sent | Notice of Complaint Sent | HRC # | EEOC # | HUD # |
|---|---|---|---|---|---|
| 1/5/2022 | 2-18-22 | 10-20-22 | 06ED-0466-21-2 | 38G-2022-00134 | |

| Investigator: | Specialist: |
|---|---|
| Weggely | Lee |

| Complainant's Name: | Complainant's Attorney: |
|---|---|
| **BRAD ERHART** | |
| Complainant's Address: | Company Name: |
| **300 SE 184TH AVE #101** | Address: |
| **VANCOUVER, WA  98683** | |
| Complainant's Phone Numbers: | Phone(s):                    Fax: |
| *Home*     (971) 319-2723 | |

| Respondent's Name: | Respondent's Attorney: |
|---|---|
| **TRINET HR XI, INC.** | Catherine Morisset |
| Respondent's Address: | Company Name: Fisher & Phillips LLP |
| **9000 TOWN CENTER PKWY** | Address: |
| **LAKEWOOD RANCH, FL  34202-4101** | 1700 7th Ave Ste 2200 |
| | Seattle, WA  98101-4416 |
| Respondent's Phone Numbers: | Phone(s):                    Fax: |
| *Work*     (510) 352-5000 | |

| Name of Other Interested Part | Name of Other Interested Part |
|---|---|
| Company Name: | Company Name: |
| Address: | Address: |
| Phone(s):                    Fax: | Phone(s):                    Fax: |

| Recommended Finding and Date: | Specialist Review & Approval Date: |
|---|---|
| Conciliator & Conciliation Date: | Date Referred to Litigation: |

| Routing To > | Complainant | Attorney | Respondent | Attorney | Commissioners | Interested Parties | Initials |
|---|---|---|---|---|---|---|---|
| Findings | Date | Date | Date | Date | Date | Date | Initials |
| Order and Findings | | | | | | | |
| Second Findings | | | | | | | |

| Commission Agenda | | Request to Administratively Reopen | | | Compliance Review | |
|---|---|---|---|---|---|---|
| Approval & Date | Request Date | ☐ Denied | ☐ Approved   Date: _____ | | Compliance Review Date & Initials |

000001



fisherphillips.com

**Seattle**
1700 7ᵗʰ Avenue
Suite 2200
Seattle, WA  98101

(206) 682-2308 Tel
(206) 682-7908 Fax

**Writer's Direct Dial:**
(206)  693-5076
(206) 247-7028

**Writer's E-mail:**
cmorisset@fisherphillips.com
jwood@fisherphillips.com

December 27, 2022

*VIA E-MAIL*

Riley Wessels
Civil Rights Investigator
Washington State Human Rights Commission
711 S. Capitol Way, Suite 402
Olympia, WA 98504-2490
Email:  Riley.Wessels@hum.wa.gov

Re:     *Brad Erhart v. TriNet HR XI, Inc.*
        Washington State Human Rights Commission Complaint LT2021-01401

Dear Mr. Wessels:

Thank you for allowing us the opportunity to respond to this charge on behalf of TriNet HR XI,
Inc. ("TriNet"). This letter and accompanying exhibits set forth TriNet's position in response to
Brad Erhart's charge that TriNet failed to accommodate his disability before terminating him.

This charge should be summarily dismissed for two clear reasons:

1. TriNet was not his employer. Mr. Erhart never worked for TriNet, including during the
   period alleged in his charge. Nor did any of the individuals he references in his charge work
   for TriNet. Instead, he worked during that time for Switchboard Technology Labs, Inc.
   ("Switchboard"). TriNet provided no more than limited payroll processing and other
   administrative services to Switchboard and had no other involvement in Mr. Erhart's
   employment. TriNet did not handle his alleged accommodation request and did not
   terminate his employment.

2. Mr. Erhart contractually released TriNet from any and all liability on the claims in his
   charge in exchange for valuable consideration.

As a result, his charge lacks any factual or legal support.

**Fisher & Phillips LLP**
Atlanta • Baltimore • Boston • Charlotte • Chicago • Cleveland • Columbia • Columbus • Dallas • Denver • Fort Lauderdale • Gulfport • Houston
Irvine • Kansas City • Las Vegas • Los Angeles • Louisville • Memphis • New Jersey • New Orleans • New York • Orlando • Philadelphia
Phoenix • Portland • Sacramento • San Diego • San Francisco • Seattle • Tampa • Washington, DC

000391

Riley Wessels
December 27, 2022
Page 2

## A.   FACTS

### I.   TriNet's Business Model

TriNet is a Professional Employer Organization ("PEO"), which means that it is engaged by other companies to help prepare, process and distribute payroll checks and deal with other administrative matters.  In essence, the actual employer (here Switchboard) engages TriNet to complete limited administrative services.

A PEO relationship is not a temporary staffing or facilities management relationship.  Unlike a temporary staffing company, a PEO does not have a core of employees whom it sends to various companies that it contracts with.  Rather, PEOs provide payroll outsourcing services, by placing their client's own employees onto the PEO's payroll.  Employees who are placed on the PEO's payroll at all times retain their status as "employees" of the client.  The employees who work for a particular client after the relationship with the PEO is entered into are the very same employees who had been working for the client before the PEO relationship was entered into.

New hires and terminated employees are hired and fired exclusively by the PEO's client and added to or deleted from the PEO's payroll as directed by the client.  PEOs do not have the expertise or the desire to run any of their clients' businesses.  PEOs do not tell any employee working at any client worksite how to perform their duties.  Further, PEOs do not set the wages of client company employees, direct or control the schedules of client company employees, handle disability accommodation requests, or otherwise interject themselves in the day-to-day operations of the client company.

### II.   TriNet did not Employ Mr. Erhart

On or about August 30, 2021, Switchboard hired Mr. Erhart as a Senior DevOps Engineer. TriNet played no role in that decision.  Indeed, Mr. Erhart did not interact with any representative of TriNet during his employment with Switchboard.

### III.   TriNet did not Handle Mr. Erhart's Accommodation Request or Termination

Mr. Erhart alleges that "[o]n November 15, 2021, [he] notified [his] immediate Supervisor of [his] disability and requested a reasonable accommodation in the form of taking leave." TriNet lacks any information to affirm or deny this allegation because Mr. Erhart's supervisor was not a TriNet employee. TriNet did not receive any accommodation request from Mr. Erhart and thus played no role in any actions related to that request. Additionally, TriNet lacks knowledge regarding Mr. Erhart's allegation that Switchboard terminated him shortly thereafter because TriNet played no role in Switchboard's decision to terminate Mr. Erhart's employment.

Mr. Erhart had no contact or interaction with any representative of TriNet during these alleged events and no representative of TriNet made or implemented any decision concerning his request or termination.

Riley Wessels
December 27, 2022
Page 3

**IV.    Mr. Erhart Released Any Claims against Trinet**

Mr. Erhart left his employment with Switchboard on November 18, 2021. On November 22, 2021, he signed a severance agreement which contained a general release of all claims. Exhibit 1.

In exchange for over ▉▉▉▉ in severance, Mr. Erhart agreed to release **all** claims against not only Switchboard but "its . . . affiliated entities. . ." and expressly including TriNet HR Corporation." *Id.* at 5. Although the agreement released a wider host of claims, it specifically identified certain claims that Mr. Erhart released. *Id.* These included all claims "of discrimination, harassment, retaliation, or wrongful termination" as well as all claims "for violation or alleged violation of any federal, state or municipal statute, rule, regulation or ordinance, including, but not limited to . . . the Americans with Disabilities Act, . . . [and the Washington Law Against Discrimination." *Id.*

**B.    LEGAL ANALYSIS – DISABILITY DISCRIMINATION**

Mr. Erhart's claim that TriNet discriminated against him based on his disability fails for two dispositive reasons.

First, TriNet, as Switchboard's PEO, did not employ Mr. Erhart. It did not know he claimed to be disabled. It did not receive or respond to his accommodation request. It had no power to grant or deny his request. And it neither had the power to nor did it terminate his employment. Only Switchboard maintained the authority to handle Mr. Erhart's accommodation request or terminate his employment.

Second, Mr. Erhart specifically released TriNet from any liability for the specific claims he raises here. He thus cannot proceed on them even if TriNet were responsible for what he has alleged.

**C.    CONCLUSION**

Based on the information discussed herein, Mr. Erhart's disability discrimination claim against TriNet is entirely without merit. As a result, TriNet respectfully requests that the Washington Human Rights Commission issue a no-cause determination.

Please do not hesitate to contact us should you have any questions or require additional information.

Sincerely,

Catharine Morisset
Jeremy Wood
For FISHER & PHILLIPS LLP

CM:JW
Enclosure

# EXHIBIT 1

000394

## SEPARATION AND GENERAL RELEASE AGREEMENT

This Separation and General Release Agreement ("Agreement") confirms the terms of the separation of Brad Erhart's ("you" or "your") employment with Switchboard Technology Labs, Inc. (the "Company"), including the severance payment described below in section 4 that you will receive if you (a) sign and return this Agreement to the Company by November 24, 2021, and (b) comply with the other terms of this Agreement. By signing and delivering this Agreement, you will be entering into a binding agreement with the Company and agreeing to the terms and conditions in the numbered sections below, including the general release of claims in section 5. **Therefore, you are advised to consult with an attorney of your choice before signing this Agreement. This supersedes and replaces the prior version you received and is the result of negotiation and compromise.**

If you choose not to sign and return this Agreement by November 24, 2021, you will not receive the severance payment described in section 4.

1.     Last Day of Employment. You acknowledge that the last day of your employment with the Company was November 18, 2021 ("Separation Date"). The Company will respond to inquiries from prospective employers by verifying dates of employment and last position held. The Company will not specify the reasons for your departure to prospective new employers.

2.     Final Pay. You will receive your final paycheck on the Company's next regularly scheduled pay date after your Separation Date. Your final paycheck will include payment for all salary/wages due to you through and including your Separation Date less applicable withholdings and deductions. You will also receive a payment equal to one month of your base salary (\$███, less applicable withholdings) in accordance with the terms of your offer letter dated as of August 23, 2021 (the "Offer Letter"). You will receive these payments even if you choose not to enter into this Agreement.

3.     Employee Benefits. Your active participation in the Company's group health insurance plan(s), if any, will end on November 30, 2021. Coverage under any other group benefit plans or programs in which you participated, if any, will also end on the Separation Date. Regardless of whether you enter into this Agreement, you may have the right to continue the medical and/or dental insurance coverage that you had in effect as of the Separation Date (generally for up to 18 months) under COBRA or state law equivalent. You will receive benefits, continuation notices and information about your 401(k) account (if any), in separate letters. If you had group life insurance, you also will receive information about the option to convert this coverage to an individual policy.

4.     Consideration. If you choose to sign and return this Agreement within the required time period and you abide by the other terms of this Agreement, the Company will pay you severance of \$███ less applicable withholdings and deductions, on 12/15/2021. You acknowledge that you are not otherwise entitled to this severance payment under any severance policy, plan, program, agreement, or otherwise, and that the Company would not agree to provide you with this severance payment without your general release of claims and other promises in this

40151/1
11/19/2021 210364793.1

Agreement.   You also agree that this severance payment constitutes good and valuable consideration for your general release of claims and other promises in this Agreement.

5.    <u>General Release of Claims</u>   In exchange for the severance payment described in <u>section 4</u> to which you are not otherwise entitled, you (for yourself and your heirs, executors, administrators, beneficiaries, personal representatives and assigns) hereby completely, forever, irrevocably and unconditionally release and discharge, to the maximum extent permitted by law, the Company, the Company's past, present and future parent organizations, subsidiaries and other affiliated entities, related companies and divisions and each of their respective past, present and future officers, directors, employees, shareholders, trustees, members, partners, attorneys and agents (in each case, individually and in their official capacities) and each of their respective employee benefit plans (and such plans' fiduciaries, agents, administrators and insurers, individually and in their official capacities), as well as any predecessors, future successors or assigns or estates of any of the foregoing and expressly including TriNet HR Corporation (the "Released Parties") from any and all claims, actions, charges, controversies, causes of action, suits, rights, demands, liabilities, obligations, damages, costs, expenses, attorneys' fees, damages and obligations of any kind or character whatsoever, that you ever had, now have or may in the future claim to have by reason of any act, conduct, omission, transaction, agreement, occurrence or any other matter whatsoever occurring up to and including the date that you sign and return this Agreement.  This general release of claims includes, without limitation, any and all claims:

- of discrimination, harassment, retaliation, or wrongful termination;
- for breach of contract, whether oral, written, express or implied; breach of covenant of good faith and fair dealing, both express and implied; promissory estoppel; negligent or intentional infliction of emotional distress; fraud; negligent or intentional misrepresentation; negligent or intentional interference with contract or prospective economic advantage; unfair business practices; defamation; libel or slander; negligence; assault; battery; invasion of privacy; personal injury; compensatory or punitive damages, or any other claim for damages or injury of any kind whatsoever;
- for violation or alleged violation of any federal, state or municipal statute, rule, regulation or ordinance, including, but not limited to, the Age Discrimination in Employment Act of 1967, the Older Workers Benefit Protection Act of 1990, Title VII of the Civil Rights Act of 1964, the Civil Rights Acts of 1991, the Americans with Disabilities Act, the Fair Labor Standards Act, the Equal Pay Act, the Lilly Ledbetter Fair Pay Act, the Fair Credit Reporting Act, the Worker Adjustment and Retraining Notification Act, the Family & Medical Leave Act, the Sarbanes-Oxley Act of 2002, the federal False Claims Act, the Florida Civil Rights Act, the Florida Whistleblower Protection Act, the Florida Workers' Compensation Retaliation provision, the Florida Minimum Wage Act, Article X, Section 24 of the Florida Constitution, the Florida Fair Housing Act,  the Washington Law Against Discrimination, the Washington Equal Pay Act, the Washington Family Care Act, the Washington Family Leave Act, the Washington Worker and Community Right to Know Act, the Washington Minimum Wage Act, the Washington Wage, Hour, and Working Conditions Law, and the Washington Wage Payment and Collection Law, in each case, as such laws have been or may be amended;

000396

- for employee benefits, including, without limitation, any and all claims under the Employee Retirement Income Security Act of 1974 (excluding COBRA);
- to any non-vested ownership interest in the Company, contractual or otherwise, including, but not limited to, claims to stock or stock options;
- arising out of or relating to any promise, agreement, offer letter, contract (whether oral, written, express or implied), understanding, personnel policy or practice, or employee handbook;
- relating to or arising from your employment with the Company, the terms and conditions of that employment, and the termination of that employment, including, without limitation any and all claims for discrimination, harassment, retaliation or wrongful discharge under any common law theory, public policy or any federal state or local statute or ordinance not expressly listed above; and
- any and all claims for monetary recovery, including, without limitation, attorneys' fees, experts' fees, costs and disbursements.

You expressly acknowledge that this general release of claims includes any and all claims arising up to and including the date you sign and return this Agreement which you have or may have against the Released Parties, whether such claims are known or unknown, suspected or unsuspected, asserted or un-asserted, disclosed or undisclosed. By signing this Agreement, you expressly waive any right to assert that any such claim, demand, obligation or cause of action has, through ignorance or oversight, been omitted from the scope of this release and you further waive any rights under statute or common law principles that otherwise prohibit the release of unknown claims.

This general release of claims does not apply to, waive or affect: any rights or claims that may arise after the date you sign this Agreement; any claim for workers' compensation benefits (but it does apply to, waive and affect claims of discrimination and/or retaliation on the basis of having made a workers' compensation claim); claims for unemployment benefits or any other claims or rights that by law cannot be waived in a private agreement between an employer and employee; or your rights to any vested benefits to which you are entitled under the terms of the applicable employee benefit plan (the "Excluded Claims"). *This general release of claims also does not apply to, waive, affect, limit or interfere with your preserved rights described in section 12 below.*

6.      No Pending Claims. You represent and warrant that you have no charges, lawsuits, or actions pending in your name against any of the Released Parties relating to any claim that has been released in this Agreement. You also represent and warrant that you have not assigned or transferred to any third party any right or claim against any of the Released Parties that you have released in this Agreement.

7.      Covenant not to Sue. Except as provided in section 12 below, you covenant and agree that you will not report, institute or file a charge, lawsuit or action (or encourage, solicit, or voluntarily assist or participate in, the reporting, instituting, filing or prosecution of a charge, lawsuit or action by a third party) against any of the Released Parties with respect to any claim that has been released in this Agreement.

TRINET 000003 000397

8.    <u>Cooperation with Investigations/Litigation</u>.    You agree, at the Company's request, to reasonably cooperate, by providing truthful information, documents and testimony, in any Company investigation, litigation, arbitration, or regulatory proceeding regarding events that occurred during your employment with the Company. Your requested cooperation may include, for example, making yourself reasonably available to consult with the Company's counsel, providing truthful information and documents, and to appear to give truthful testimony. The Company will, to the extent permitted by applicable law and court rules, reimburse you for reasonable out-of-pocket expenses that you incur in providing any requested cooperation, so long as you provide advance written notice to the Company of your request for reimbursement and provide satisfactory documentation of the expenses. <u>Nothing in this section is intended to, and shall not, preclude or limit your preserved rights described in section 12 below.</u>

9.    <u>Confidentiality of this Agreement; Non-Disparagement</u>.    You agree that you will not disclose to others the existence or terms of this Agreement, except to your immediate family, attorneys and bona fide financial advisors and then only after securing the agreement of such individual(s) to maintain the confidentiality of this Agreement. You also agree that you will not at any time make any disparaging or derogatory statements concerning the Company, its business, products, or services. The Company's founders agree not to make disparaging or derogatory statements about you to any prospective new employer. However, nothing in this section is intended to, and shall not, restrict or limit you or the Company from exercising your preserved rights described in <u>section 12</u> or restrict or limit you or the Company from providing truthful information in response to a subpoena, other legal process or valid governmental inquiry.

10.    <u>Continuing Obligations</u>. You acknowledge and reaffirm, and agree to comply with, your surviving obligations under any confidentiality, assignment of inventions, or restrictive covenants agreement you signed.

11.    <u>Return of Company Documents and Other Property</u>. You confirm that you have returned to the Company any and all Company documents, materials and information (whether in hardcopy, on electronic media or otherwise) related to Company business and/or containing any non-public information concerning the Company or its clients, as well as all equipment, keys, access cards, credit cards, computers, computer hardware and software, electronic devices and any other Company property in your possession, custody or control. You also represent and warrant that you have not retained copies of any Company documents, materials or information (whether in hardcopy, on electronic media or otherwise). You also agree that you will disclose to the Company all passwords necessary or desirable to enable the Company to access all information which you have password-protected on any of its computer equipment or on its computer network or system.

12.    <u>Preserved Rights:</u>  This Agreement is not intended to, and shall not in any way, prohibit, limit or otherwise interfere with

(a)    your protected rights under federal, state or local employment discrimination laws (including, without limitation, the ADEA and Title VII) to communicate or file a charge with, or

000398
TRINET 000004

participate in an investigation or proceeding conducted by, the Equal Employment Opportunity Commission ("EEOC") or similar federal, state or local government body or agency charged with enforcing employment discrimination laws; provided, however, you shall not be entitled to any relief or recovery (whether monetary or otherwise), and you hereby waive any and all rights to relief or recovery, under, or by virtue of, any such filing of a charge with, or investigation, hearing or proceeding conducted by, the EEOC or any other similar federal, state or local government agency relating to any claim that has been released in this Agreement; or

(b)     your right or the Company's right to enforce the terms of this Agreement and to exercise your rights relating to any other Excluded Claims.

13.     No Other Pay or Benefits. You acknowledge and agree that upon payment of the amounts described herein, you will have been paid for all work performed including, without limitation, all salary/wages, bonuses, overtime, commissions and any earned, but unused, vacation time due to you up through and including the last day of your employment.   You acknowledge and agree that, except for the Company's obligation to provide the severance payment specifically provided in section 4, you are entitled to no other payments or benefits and the Released Parties have no further obligations to you whatsoever, whether arising out of your employment with the Company, your separation from the Company or otherwise.

14.     No Admission.   Nothing contained in this Agreement will constitute or be treated as an admission by you, the Company or any of the other Released Parties of any liability, wrongdoing or violation of law.

15.     Remedies.   If you breach your obligations under this Agreement, then, in addition to any of the Company's other rights and remedies at law or in equity, the Company shall have the right to cease providing the consideration and/or require you to return, upon written demand, 90% of the severance payment you received, but all of the other terms of this Agreement will remain in effect.

16.     Miscellaneous.

(a)     This Agreement contains the entire agreement and understanding between you and the Company concerning the subject matter of this Agreement and supersedes any and all prior agreements or understandings (both written and oral) between you and the Company concerning the subject matter of this Agreement, except that your obligations under any employee agreement(s) relating to non-competition, non-solicitation, intellectual property, confidential information, and non-disclosure that you have signed for the benefit of the Company remain in full force and effect.   This Agreement may only be modified by a written document signed by you and an authorized officer of the Company.

(b)     This Agreement shall inure to the benefit of the Company and the other Released Parties and shall be binding upon the Company and its successors and assigns. This Agreement also shall inure to the benefit of, and be binding upon, you and your heirs, executors, administrators, trustees and legal representatives.   This Agreement is personal to you and you

may not assign or delegate your rights or duties under this Agreement, and any such assignment or delegation will be null and void.

(c)     The provisions of this Agreement are severable.   If any provision in this Agreement is held to be invalid, illegal or unenforceable, the remaining provisions of this Agreement will remain in full force and effect and the invalid, illegal and unenforceable provision shall be reformed and construed so that it will be valid, legal and enforceable to the maximum extent permitted by law.

(d)     The Company and you shall each bear their own costs, fees (including, without limitation, attorney's fees) and expenses in connection with the negotiation, preparation and execution of this Agreement.

(e)     The failure of the Company to seek enforcement of any provision of this Agreement in any instance or for any period of time shall not be construed as a waiver of such provision or of the Company's right to seek enforcement of such provision in the future.

(f)     Given the full and fair opportunity provided to each party to consult with their respective counsel regarding terms of this Agreement, ambiguities shall not be construed against either party by virtue of such party having drafted the subject provision.

(g)     The headings in this Agreement are included for convenience of reference only and shall not affect the interpretation of this Agreement.

17.   <u>Opportunity to Review</u>.  You represent and warrant that you:

- have had sufficient opportunity to consider this Agreement;
- have carefully read this Agreement and understand all of its terms;
- are not incompetent and have not had a guardian, conservator or trustee appointed for you;
- have entered into this Agreement of your own free will and volition and that, except for the promises expressly made by the Company in this Agreement, no other promises or agreements of any kind have been made to you by any person or entity whatsoever to cause you to sign this Agreement;
- understand that you are responsible for your own attorneys' fees and costs;
- have been advised and encouraged by the Company to consult with your own independent counsel before signing this Agreement;
- have had the opportunity to review this Agreement with counsel of your choice or have chosen voluntarily not to do so;
- you were given ten (10) days to review this Agreement before signing it and understood that you were free to use as much or as little of the review period as you wished or considered necessary before deciding to sign it; and
- understand that this Agreement is valid, binding, and enforceable against you and the Company according to its terms.

TRINET 000006   000400

CONFIDENTIAL

TRINET 000007 000401

If you wish to accept this Agreement, please sign, date and return it to the Company by November 24, 2021.

Agreed to and accepted on this __22__ day of __November__, 2021.

_Brad Erhart_
Brad Erhart

Agreed to and accepted on this __22__ day of __November__, 2021.

SWITCHBOARD TECHNOLOGY LABS, INC.

By:_____

Name: Chris Hermida
Title: Co-founder & CEO

-8-
CONFIDENTIAL

TRINET 0000000 0 0 4 0 2

# EXHIBIT J

 **Washington State Department of Revenue**    

‹  **Business Lookup**

# License Information:

New search    Back to results

| | |
|---|---|
| **Entity name:** | TRINET HR III, INC. |
| **Business name:** | TRINET HR CORP |
| **Entity type:** | Profit Corporation |
| **UBI #:** | 602-327-832 |
| **Business ID:** | 001 |
| **Location ID:** | 0002 |
| **Location:** | Active |
| **Location address:** | 9000 TOWN CENTER PARKWAY BRADENTON FL 34202 |
| **Mailing address:** | 9000 TOWN CENTER PARKWAY LAKEWOOD RANCH FL 34202-4101 |
| **Excise tax and reseller permit status:** | Click here |
| **Secretary of State status:** | Click here |

# Governing People  *May include governing people not registered with Secretary of State*

| Governing people | Title |
|---|---|



# COVER LETTER

**TO:** Amendment Section
Division of Corporations

**SUBJECT:** TriNet HR Corporation
_____
Name of Corporation

**DOCUMENT NUMBER:** F04000001376
_____

The enclosed Amendment and fee are submitted for filing.

Please return all correspondence concerning this matter to the following:

Simone Gravesande
_____
Name of Contact Person

TriNet HR III, Inc. (FKA)TriNet HR Corporation
_____
Firm/Company

1100 San Leandro Blvd., Suite 400
_____
Address

San Leandro, CA 94577
_____
City/State and Zip Code

simone.gravesande@trinet.com
_____
E-mail address: (to be used for future annual report notification)

For further information concerning this matter, please call:

Simone Gravesande                    646       356-8632
_____  at (_____)_____
Name of Contact Person        Area Code & Daytime Telephone Number

Enclosed is a check for the following amount:

☐ $35.00 Filing Fee    ☒ $43.75 Filing Fee &    ☐ $43.75 Filing Fee &    ☐ $52.50 Filing Fee,
                           Certificate of Status       Certified Copy           Certificate of Status &
                                                        (Additional copy is      Certified Copy
                                                        enclosed)                (Additional copy is
                                                                                 enclosed)

**Mailing Address:**                    **Street Address:**
Amendment Section                       Amendment Section
Division of Corporations                Division of Corporations
P.O. Box 6327                           Clifton Building
Tallahassee, FL 32314                   2661 Executive Center Circle
                                        Tallahassee, FL 32301

# EXHIBIT K

 Gmail

Brad Erhart <brae04@gmail.com>

---

## WSE Complaint

---

**Connect360 <connect360@trinet.com>**          Thu, Nov 18, 2021 at 1:39 PM
To: "brae04@gmail.com" <brae04@gmail.com>

Hi Brad,

I'm Angela with the HR Tier II team.  It was communicated to our team that you are reaching out regarding a complaint of retaliation.

TriNet can assist with your complaint by reaching out to our client, your employer, to make them aware of your complaint to see if we are able to assist in any way.

It is not in the scope of services within TriNet to offer guidance to you on this complaint, but we are able to ensure that this is brought to your company's attention to address directly with you.

We will reach out to the appropriate role holder at Switchboard Technology Labs with your complaint.

Should you have any questions please let us know.

If you have any questions, contact Connect 360 and reference case number:18365798

If follow-up is needed, please reply to this request within 24 hours so that your response will be included within this case.

•Chat: Log in to TriNet (login.TriNet.com), navigate to the Admin/Manager View and click Contact TriNet > Live Chat, available 24/7*
•Phone: Call 800.638.0461, Monday through Friday 6 a.m.–midnight ET (3 a.m.–9 p.m. PT)*
•Email: Connect360@TriNet.com
*TriNet is closed on select U.S. holidays.

Regards,
Angela

Copyright 2021 TriNet. All rights reserved. All trademarks, trade names, service marks and logos referenced herein belong to their respective companies. The content of this document has been prepared for educational and information purposes only. The content does not provide legal advice or legal opinions on any specific matters. Transmission of this information is not intended to create, and receipt does not constitute, a lawyer-client relationship between TriNet, the author(s), or the publishers and you. You should not act or refrain from acting on any legal matter based on the content without seeking professional counsel.
C-21MAY-55

ref:_00D30oCa._5004z1aXL5N:ref

# EXHIBIT L

by the leasing organization plan are "employees" of the leasing organization.  As discussed below, in order for an individual to be considered an "employee" of an "employer" for purposes of the MEWA provisions, an employer-employee relationship must exist between the employer and the individual covered by the plan.  In this regard, the payment of wages, the payment of Federal, State and local employment taxes, and the providing of health and/or pension benefits are not solely determinative of an employer-employee relationship.  Moreover, a contract purporting to create an employer-employee relationship will not be determinative where the facts and circumstances establish that the relationship does not exist.

### 4. Plans maintained by professional employer organizations
[Updated as of April 2022]

The term professional employer organization (PEO) generally refers to an organization that contracts with client employers to provide a range of human resource management, payroll, administrative, and employee benefit services to client employers and the employees of the client employers.  A PEO plan or arrangement that offers or provides health coverage to employees of two or more client employers, or employees of both the PEO and one or more client employers, is a MEWA under Section 3(40) because it offers or provides benefits to employees of two or more employers.  A PEO's status or responsibilities as "co-employer" under laws other than ERISA are not determinative for purposes of identifying the PEO as a single employer to the exclusion of others for purposes of ERISA Section 3(40).  Rather, if the PEO's client employers remain, in any respect, employers of the employees covered by the PEO's plan or arrangement, then the PEO's plan or arrangement would cover the employees of two or more employers and would be a MEWA.  (See, e.g., Information Letter to George J. Chanos, Attorney General, Nevada Department of Justice (May 8, 2006)).

Depending on the facts, a PEO-sponsored MEWA may be an arrangement that provides benefits, similar to an insurance company, to a collection of separate ERISA-covered single employer plans sponsored by the individual client employers, or the PEO-sponsored MEWA may itself be an ERISA-covered multiple employer plan.  As explained elsewhere in this booklet, if a MEWA is itself an ERISA-covered multiple employer plan that is fully insured within the meaning of Section 514(b)(6)(D) of ERISA, state insurance law may apply to the extent it provides standards requiring the maintenance of specified levels of reserves and contributions, and provisions to enforce such standards (See: Section 514(b)(6)(A)(i)).  If the MEWA plan is not fully insured, any law of any state which regulates insurance may apply to the extent such law is not inconsistent with Title I of ERISA (See: ERISA Section 514(b)(6)(A)(ii)).  To the extent a PEO MEWA is an arrangement that is not itself an ERISA plan, ERISA does not preempt state regulation of the arrangement under state insurance law.

# EXHIBIT M

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
### WASHINGTON, DC 20549

---

# FORM 10-K

---

**(Mark One)**

☒ **ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**
**For the year ended December 31, 2021**

or

☐ **TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**
For the transition period from _____ to _____
**Commission File Number: 001-36373**

---

**TriNet**

---

## TRINET GROUP, INC.
**(Exact Name of Registrant as Specified in its Charter)**

---

| | |
|---|---|
| **Delaware** | **95-3359658** |
| (State or other jurisdiction of incorporation or organization) | (I.R.S. Employer Identification No.) |
| **One Park Place, Suite 600** | |
| **Dublin, CA** | **94568** |
| (Address of principal executive offices) | (Zip Code) |

**Registrant's telephone number, including area code: (510) 352-5000**

---

Securities registered pursuant to Section 12(b) of the Act:

| Title of each class | Trading Symbol(s) | Name of each exchange on which registered |
|---|---|---|
| Common stock par value $0.000025 per share | TNET | New York Stock Exchange |

Securities registered pursuant to Section 12(g) of the Act: None

Indicate by check mark if the registrant is a well-known seasoned issuer, as defined in Rule 405 of the Securities Act. Yes ☒   No ☐

Indicate by check mark if the registrant is not required to file reports pursuant to Section 13 or Section 15(d) of the Act. Yes ☐   No ☒

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days.   Yes ☒   No ☐

Indicate by check mark whether the registrant has submitted electronically every Interactive Data File required to be submitted pursuant to Rule 405 of Regulation S-T (§ 232.405 of this chapter) during the preceding 12 months (or for such shorter period that the registrant was required to submit such files).   Yes ☒   No ☐

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, a non-accelerated filer, a smaller reporting company, or an emerging growth company. See the definitions of "large accelerated filer," "accelerated filer," "smaller reporting company," and "emerging growth company" in Rule 12b-2 of the Exchange Act.

| | | | | | |
|---|---|---|---|---|---|
| Large accelerated filer | ☒ | Accelerated filer | ☐ | Non-accelerated filer | ☐ |
| Smaller reporting company | ☐ | Emerging growth company | ☐ | | |

If an emerging growth company, indicate by check mark if the registrant has elected not to use the extended transition period for complying with any new or revised financial accounting standards provided pursuant to Section 13(a) of the Exchange Act. Yes ☐   No ☐

Indicate by check mark whether the registrant has filed a report on and attestation to its management's assessment of the effectiveness of its internal control over financial reporting under Section 404(b) of the Sarbanes-Oxley Act (15 U.S.C. 7262(b)) by the registered public accounting firm that prepared or issued its audit report.☒

Indicate by check mark whether the registrant is a shell company (as defined in Rule 12b-2 of the Exchange Act).   Yes ☐   No ☒

The aggregate market value of the voting and non-voting common equity held by non-affiliates of the Registrant, based on the closing price of the shares of common stock on The New York Stock Exchange on June 30, 2021, was $2.9 billion.

The number of shares of Registrant's Common Stock outstanding as of February 7, 2022 was 65,700,174.

required to offer. Our ability to comply with, and adapt our service offerings to take advantage of, any such changes could require significant additional costs, divert management attention, or be prohibitive based on cost, technology or other factors, which could result in a material adverse effect on our business, financial condition and results of operations.

*If we are not recognized as an employer of worksite employees under federal and state regulations, we and our clients could be adversely impacted.*

In order to sponsor certain employee benefit plan offerings for WSEs, we must qualify as an employer of WSEs for certain purposes under the Code and ERISA. In addition, our status as the employer for the purposes of ERISA is important for purposes of ERISA's preemption of certain state laws. The definition of employer under various laws is not uniform, and under both the Code and ERISA the term is defined in part by different facts and circumstances tests.

Generally, these tests are designed to evaluate whether an individual is an independent contractor or employee and they provide substantial weight to whether a purported employer has the right to direct and control the details of an individual's work. Some factors that may be considered important under these tests have included the employer's degree of behavioral control (for example the extent of instructions, training and evaluation of the work), financial control and the economic aspects of the work relationship, the type of relationship, as evidenced by the specific contract, if any, whether employee benefits are provided, whether the work is indefinite in duration or project-based, and whether it is a regular part of the employer's business. However, a definitive judicial interpretation of "employer" in the context of PEOs has not been established.

We believe that we qualify as the employer of WSEs for the purposes of Sections 3(5) and 3(40) of ERISA and that our health plans are single-employer plans that, as such, are entitled to ERISA's preemption of the application of state law. The DOL, however, has determined on a facts and circumstances basis that certain entities in the HR outsourcing industry do not qualify as common law employers. In addition, the DOL routinely audits employee benefit plan offerings of employers, and these audits can take years to complete. In one routine audit of one of TriNet's health plans, the DOL has indicated that while it agrees that we are an employer for ERISA purposes, it believes that wherever there is more than one employer of a WSE, no employer may qualify as a single employer for ERISA purposes. This DOL interpretation is contrary to our interpretation of the applicable ERISA facts and circumstances test, and we understand it also is contrary to the position of other national PEOs. We will continue to vigorously defend our position that we are the sole employer of our WSEs for the purposes of Sections 3(5) and 3(40) of ERISA, and therefore that our health plans are single-employer plans entitled to ERISA's preemption of applicable state laws. While we have no current DOL audit on-going regarding this issue, the DOL's position remains uncertain, and this issue may arise in future audits of TriNet plans or the plans of other PEOs in our industry. If it were ultimately determined that all health plans sponsored by PEOs are multiple-employer plans and subject to potential regulation at the state level, we would likely adjust our business model and the manner in which we provide employee health benefits to WSEs. Any such adjustment would require significant investment in time, cost and management attention and would have a material impact on our clients and WSEs, which could have a material adverse effect on our business and results of operations.

Similarly, to qualify for favorable tax treatment under the Code, certain employee benefit plans, such as 401(k) retirement plans and cafeteria plans must be established and maintained by an employer for the exclusive benefit of its employees. All of our 401(k) retirement plans are operated pursuant to guidance provided by the IRS and have received favorable determination letters from the IRS confirming the qualified status of these plans. However, the IRS uses its own complex, multi-factor test to ascertain whether an employment relationship exists between a worker and a purported employer. Although we believe that we qualify as an employer of WSEs under the Code, we cannot assure you that the IRS will not challenge our position or continue to provide favorable determination letters. Moreover, the IRS' 401(k) guidance and qualification requirements are not applicable to the operation of our cafeteria plans.

Further, if we are not recognized as an employer under the Code, we may be required to change the method by which we report and remit payroll taxes to tax authorities. Such changes could have a material adverse effect on our business and results of operations.

TRINET         27         2021 FORM 10-K

# EXHIBIT N

O. AMERICANS WITH DISABILITIES ACT (A.D.A.). Although TRINET assists SUBSCRIBERS with A.D.A. compliance, TRINET cannot assume the SUBSCRIBER's responsibility for compliance or liability for non-compliance with the Americans with Disabilities Act. SUBSCRIBER is responsible for insuring that facilities where employees are assigned permit access to handicapped individuals and as necessary, provide reasonable accommodations required by the American with Disabilities Act. SUBSCRIBER and TRINET acknowledge, understand, and agree that, notwithstanding any other provision of this AGREEMENT, access to any property over which SUBSCRIBER has ownership, administration, maintenance, or some other control, as well as the accommodation of said property to any person who may be handicapped, disabled, or perceived as being handicapped or disabled, shall be the sole and exclusive responsibility of SUBSCRIBER. The parties further agree that any exposure, risk, or liability for said access or accommodation, or failure thereof, whether imposed by the Americans with Disabilities Act, or some other federal, state, or local statute, law or regulation, shall be the sole responsibility of SUBSCRIBER. SUBSCRIBER agrees to indemnify, hold harmless, and defend TRINET from any costs, attorneys' fees, or other consequences of any sort arising out of SUBSCRIBER's breach of this provision. Any and all damages awarded to a TRINET employee, his or her representative, or any other person as a result of a claim related to such access or accommodation, will be paid by SUBSCRIBER and not TRINET, or if required to be paid by TRINET, SUBSCRIBER will reimburse TRINET for all costs expended by TRINET, including but not limited to awards, judgments, and attorney fees.

## VI. GENERAL PROVISIONS.

A. ENTIRE AGREEMENT. This AGREEMENT constitutes the entire agreement between the parties with respect to the subject matter and supersedes any and all agreements, whether oral or written, between the parties with respect to its subject matter. Failure by either party at any time to require performance by the other party or to claim a breach of any provision of this AGREEMENT will not be construed as a waiver of any subsequent breach nor affect the effectiveness of this AGREEMENT, nor any part thereof, nor prejudice either party as regards to any subsequent action. In the event that any action is brought by either party hereto as a result of a breach or default in any provision of this AGREEMENT, the prevailing party in such action shall be awarded reasonable attorneys' fees and costs in addition to any other relief to which the party may be entitled.

B. MODIFICATION. This AGREEMENT may not be altered or amended except by written agreement duly executed by all parties hereto.

C. SUCCESSORS. The provisions of this AGREEMENT shall be binding upon and shall inure to the benefit of the parties hereto and their respective heirs, executors, administrators, legal representatives, successors and assigns.

D. COUNTERPARTS. This agreement may be executed in several counterparts, each of which shall be deemed an original, and such counterparts shall together constitute but one and the same agreement, binding upon all the parties hereto, not withstanding that all the parties are not signatories to the original of the same counterpart.

E. HEADINGS. The headings of the paragraphs of this AGREEMENT are inserted solely for the convenience of reference, and in no way define, limit, extend or aid in the construction of the scope, extent or intent of this AGREEMENT or of any term or provision hereof.

F. SEVERABILITY. Should any term, warranty, covenant, condition, or provision of this AGREEMENT be held to be invalid or unenforceable, the balance of this AGREEMENT shall remain in force and shall stand as if the unenforceable part did not exist. In the event that any provision contained in this AGREEMENT is held unenforceable by a court of competent jurisdiction, the remaining provisions continue and, in the event that portion of any provision is held unenforceable, the remaining portion of such provision shall nevertheless be carried into effect.

G. CHOICE OF LAW. This AGREEMENT shall be governed by and construed in accordance with the laws of the State of California and jurisdiction shall rest with applicable California courts. Both parties acknowledge the personal jurisdiction of the courts in and for Alameda County, California. Both parties acknowledge and agree to service and service of process from the courts in and for Alameda County, California. All suits and special proceedings arising out of the AGREEMENT shall be brought in the courts in and for Alameda County, California, unless the parties agree to mediate or arbitrate their dispute as provided in 3 below. The Parties agree and hereby irrevocably submit any suit, action or proceeding arising out of or related to this AGREEMENT or any of the transactions contemplated by this AGREEMENT to the jurisdiction and venue of the United States District Court for the Northern District of California or the jurisdiction and venue of any court if the State of California located in Alameda County and waive any and all objections to jurisdiction and venue that they may have under the laws of California or the United States.

TriNet Employer Group, Confidential and Proprietary         Form 201 (Dec 95)     6