HONORABLE TIFFANY M. CARTWRIGHT

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WASHINGTON

AT TACOMA

| | |
|---|---|
| BRAD ERHART,<br><br>    Plaintiff,<br><br>    v.<br><br>TRINET HR XI, INC., SWITCHBOARD TECHNOLOGY LABS, INC., AND HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY, INC.,<br><br>    Defendants. | Case No. 3:23-cv-5882-TMC<br><br>**REPLY IN SUPPORT OF DEFENDANT SWITCHBOARD TECHNOLOGY LABS, INC.'S MOTION TO COMPEL ARBITRATION**<br><br>NOTED ON MOTION CALENDAR:<br>Friday, January 12, 2024 |

## I.   INTRODUCTION

Plaintiff claims primarily that he did not know "TCA"—which is defined in the very document Plaintiff signed—was an acronym for TriNet's Terms and Conditions Agreement. Ignorance is not a defense. Plaintiff is bound to arbitrate his claims against Switchboard as agreed when he accepted Switchboard's offer of employment. Each of Plaintiff's arguments to the contrary either fails under general contract law principles, goes to the merits of his underlying claims and is irrelevant here, or is delegated to the arbitrator.

DEFENDANT SWITCHBOARD TECHNOLOGY LABS, INC.'S
REPLY ISO MOTION TO COMPEL ARBITRATION - 1
Case No. 3:23-cv-5882-TMC

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

## II.     ARGUMENT

**A.     The TCA is incorporated into the parties' agreement.**

Plaintiff agrees that his offer letter, which he admits he signed, explicitly provides that the TCA forms part of the parties' employment agreement.[1] Indeed, Plaintiff begins his Complaint by alleging he "commenced a full-time remote position" after signing Switchboard's offer letter and "received consistent praise for his adept skills and performance" in the role. Dkt. 1 at 4. Plaintiff not only accepted the offer of employment, both parties *performed* under the offer letter, an agreement that required Plaintiff to accept the terms of the TCA. Nevertheless, Plaintiff presents four arguments as to why the TCA (and its arbitration provision) was not incorporated into the parties' agreement. Each of Plaintiff's arguments fails under settled Washington law.

<u>First</u>, Plaintiff primarily asserts that the acronym "TCA" was "unknown" to him at the time and, thus, could not have been incorporated by reference into the parties' employment agreement. Dkt. 21 (Plaintiff's Opposition) at 2, 8, 11 ("I had no familiarity with the TCA acronym nor that they allegedly intended to incorporate the previous 'TriNet Terms' attachment using the TCA acronym."). But the very document Plaintiff admittedly signed defines TCA as TriNet's Terms and Conditions Agreement, stating "the Terms and Conditions Agreement (TCA) each new employee must accept in order to access TriNet's on-line self-service portal." Dkt. 18, Ex. A. "One who accepts a written contract is conclusively presumed to know its contents and to assent to them." *Tjart v. Smith Barney, Inc.*, 28 P.3d 823, 829 (Wash. Ct. App. 2001) ("[W]hether or not Tjart read or understood the terms of the Shearson Application to constitute an agreement to arbitrate, she assented to its terms."); *Briggs v. Serv. Corp Int'l*, No. C22-1646JLR, 2023 WL

---

[1] Plaintiff disputes (or suggests it has yet to be established) that he had an employment relationship with Switchboard. This argument, although misguided, is not relevant to this motion. The question here is not whether the parties' arrangement was properly described as employment for ERISA purposes but whether the parties entered an agreement to arbitrate. Plaintiff focuses much of his response on the merits of his underlying claims. Those arguments can, and should, be addressed in arbitration.

DEFENDANT SWITCHBOARD TECHNOLOGY LABS, INC.'S
REPLY ISO MOTION TO COMPEL ARBITRATION - 2
Case No. 3:23-cv-5882-TMC

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

2075958, at *5 (W.D. Wash. Feb. 17, 2023) (finding arbitration agreement was supported by mutual assent despite plaintiff's claims that she was "unaware" of its meaning).

      One could also discern the meaning of the acronym from a glance at the TCA, which Plaintiff admittedly received before signing the offer letter and is titled on page one, "**TRINET TERMS AND CONDITIONS AGREEMENT (TCA)**." Dkt. 18, Ex. C at 1 (emphasis original); Dkt. 18, Ex. B (email to Plaintiff attaching the TCA). Immediately following this heading, the TCA begins with the all-caps directive, "PLEASE READ THIS TCA CAREFULLY. IT CONTAINS IMPORTANT INFORMATION REGARDING . . . THE HANDLING OF ANY DISPUTES ARISING OUT OF YOUR RELATIONSHIP WITH TRINET, YOUR COMPANY, AND RELATED MATTERS." Dkt. 18, Ex. C at 1. "[Y]our company" is defined as "the company you work for"—plainly Switchboard. *Id.* at 2. It is difficult to imagine that Plaintiff was unaware the "TCA" was the TriNet Terms and Conditions Agreement shared with him in the context of discussing his offer and defined in the offer letter itself. But even if Plaintiff was subjectively unaware, parties are responsible for reading contracts they sign. *Del Rosario v. Del Rosario*, 97 P.3d 11, 16 (Wash. 2004) ("Washington adheres to the general contract principle that parties have a duty to read the contracts they sign."); *Brewer v. Lake Easton Homeowners Ass'n*, 413 P.3d 16, 21 (Wash. Ct. App. 2018) ("The Brewers were responsible for understanding the terms of their title report and the nature of the real estate purchase."). Plaintiff cannot evade the terms of the parties' agreement by claiming he chose not to "pay any special attention" to the TCA identified in the offer letter before signing. Dkt. 21 at 5; *Signavong v. Volt Mgmt. Corp.*, No. C07-515JLR, 2007 WL 1813845, at *3 (W.D. Wash. June 21, 2007) ("[W]here a party has signed a contract without reading it, she cannot successfully argue that the contract is unenforceable as long as she was not deprived of the opportunity to read it." (citing *Yakima County Fire Prot. Dist. No. 12 v. City of Yakima*, 858 P.2d 245, 255 (Wash. 1993)).

      <u>Second</u>, Plaintiff suggests a separately signed document cannot be incorporated by reference, arguing the TCA is an agreement accepted through TriNet's portal and, thus, cannot

DEFENDANT SWITCHBOARD TECHNOLOGY LABS, INC.'S
REPLY ISO MOTION TO COMPEL ARBITRATION - 3
Case No. 3:23-cv-5882-TMC

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

form a part of his agreement with Switchboard. Not so. "As long as the contract makes clear reference to the document and describes it in such terms that its identity may be ascertained beyond doubt, the parties to a contract may incorporate contractual terms by reference to a separate, noncontemporaneous document, including a separate agreement to which they are not parties, and including a separate document which is unsigned." 11 Williston on Contracts § 30:25 (4th ed.); *W. Wash. Corp. of Seventh-Day Adventists v. Ferrellgas, Inc.*, 7 P.3d 861, 865 (Wash. Ct. App. 2000). Nothing bars parties from incorporating a document that could also be accepted by other means. The offer letter requires Plaintiff to accept the terms of the TCA to work for Switchboard.

Third, Plaintiff suggests the TCA cannot form a part of its agreement with Switchboard because it is exclusive to TriNet. This argument fails for several reasons. Most notably, the TCA by its plain language is *not* exclusive to TriNet. It also governs Plaintiff's employment with "your company," *i.e.*, Switchboard. Dkt. 18, Ex. C at 1–2. Using the arbitration provision as an example, the provision explicitly applies to disputes with "your company" (Switchboard) and contemplates TriNet clients (also Switchboard) enforcing the agreement for their own benefit. *Id.* at 5–7. This makes sense as TriNet provides outsourced human resource management services like the dispute resolution protocol reflected in the TCA. Dkt. 18, Ex. A. But more fundamentally, the fact the TCA is an agreement between Plaintiff and TriNet does not preclude the parties from incorporating the document by reference—parties can incorporate agreements to which they are not parties. *Ferrellgas, Inc.*, 7 P.3d at 865.

Fourth, Plaintiff asks the Court to find the agreement did not incorporate the TCA because it did not use the words "integrate," "merge," or "incorporate." Washington law contains no such magic words requirement. In *W. Wash. Corp. of Seventh-Day Adventists v. Ferrellgas, Inc.*, 7 P.3d 861 (Wash. Ct. App. 2000), for example, the court found clear and unequivocal incorporation by reference where a contract provided a party was "to perform the Work . . . in accordance with" other documents. *Id.* at 865. In *Santos v. Sinclair*, 884 P.2d 941 (Wash Ct. App. 1994), the court

DEFENDANT SWITCHBOARD TECHNOLOGY LABS, INC.'S
REPLY ISO MOTION TO COMPEL ARBITRATION - 4
Case No. 3:23-cv-5882-TMC

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

found a description of land was incorporated into an agreement based on a simple reference to the document containing it. *Id.* at 943. In *Brown v. Poston*, 269 P.2d 967 (Wash. 1954), the court found that where a subcontractor contracted to perform work on a building "as per plans and specifications," both documents were thereby incorporated by reference into the contract. *Id.* at 968. The offer letter here is even more explicit, stating that the offer letter "together with the TCA . . . forms the complete and exclusive agreement as to your employment with Switchboard Technology Labs, Inc." Dkt. 18, Ex. A.

**B.     The signed offer letter binds Plaintiff to arbitrate his claims against Switchboard.**

Turning to what appears to be the merits of his underlying claims, Plaintiff argues the offer letter is not binding because he claims in this lawsuit that the parties did not have an "employer-employee" relationship. At issue in this motion is the narrow question of whether the parties have an agreement to arbitrate. *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (a court has only a limited gatekeeper function in determining whether to compel arbitration under the FAA); *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (a court's inquiry is generally limited to (1) whether there is an agreement to arbitrate between the parties and (2) whether the agreement covers the dispute); *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 527, 531 (2019) (where, as here, the parties have delegated arbitrability to the arbitrator, the inquiry is even more limited—the court may properly reach only whether there exists an agreement to arbitrate). Plaintiff cannot seriously dispute that the parties entered an agreement: he admittedly signed the offer letter and began working for Switchboard. Nor can Plaintiff seriously dispute that the agreement included an arbitration provision, as explained above.

Plaintiff cannot avoid his promise to arbitrate by alleging TriNet, not Switchboard, was his "employer" for purposes of ERISA. No matter Plaintiff's claims, the offer letter—which Plaintiff admittedly signed—governed the terms by which Plaintiff in fact worked for Switchboard,

DEFENDANT SWITCHBOARD TECHNOLOGY LABS, INC.'S
REPLY ISO MOTION TO COMPEL ARBITRATION - 5
Case No. 3:23-cv-5882-TMC

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

including Plaintiff's role (which he held for months), his compensation for that role, and the agreement to arbitrate.

**C.    Plaintiff's arguments as to arbitrability are for an arbitrator, not the Court.**

Plaintiff also raises arguments about the scope and enforceability of the arbitration clause, arguing, for example, that the agreement is unconscionable, that his claims are excluded, and that the agreement is superseded by the parties' Separation and General Release Agreement. Each of these arguments is for the arbitrator to decide as the parties delegated arbitrability to the arbitrator.

As explained in the motion, the TCA "clearly and unmistakably" delegates arbitrability to an arbitrator by incorporating the JAMS rules and procedures. *See, e.g.*, *Briggs*, 2023 WL 2075958, at *7 ("The court concludes that the MRPA clearly and unmistakably delegates arbitrability questions to the arbitrator by incorporating the JAMS rules by reference."). Plaintiff asserts the arbitration clause "never defaults to incorporating the JAMS rules." Dkt. 21 at 15. This is belied by the provision, which defaults to JAMS rules (which are referred to repeatedly and linked in the provision) unless the parties have an agreement to use another dispute resolution provider. Dkt. 18, Ex. C at 6. Here, Plaintiff does not argue the parties have agreed to use another provider (they have not). Accordingly, JAMS rules would apply by default.

And Plaintiff does not dispute JAMS rules delegate issues of arbitrability to the arbitrator. It is therefore the arbitrator's role to decide issues of scope, continued validity, and enforceability—namely, whether the agreement is unconscionable or fraudulently induced,[2] whether Plaintiff's claims against Switchboard fall within the scope of the arbitration provision or RCW 49.60.310, and whether the parties' separation agreement supersedes the agreement to arbitrate. *See, e.g.*, *Johnson v. Oracle Am., Inc.*, No. 17-CV-05157-EDL, 2017 WL 8793341, at *8

---

[2] Plaintiff's arguments about the enforceability of the arbitration provision are directed to the contract as a whole or, even more broadly, are predicated on the parties' purported conspiracy. Such arguments are "reserved for the arbitrator." *Townsend v. Quadrant Corp.*, 268 P.3d 917, 921–22 (Wash. 2012). Only where a plaintiff asserts facts "relating specifically and only to the arbitration agreement" and not the contract "as a whole" does the court decide issues of enforceability. *Id.*

DEFENDANT SWITCHBOARD TECHNOLOGY LABS, INC.'S
REPLY ISO MOTION TO COMPEL ARBITRATION - 6
Case No. 3:23-cv-5882-TMC

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

(N.D. Cal. Nov. 17, 2017), *aff'd*, 764 F. App'x 607 (9th Cir. 2019) (dispute about whether arbitration agreement was superseded by later agreement should be decided by an arbitrator per the incorporated JAMS rules); *Trenwick Am. Reinsurance Corp. v. CX Reinsurance Co.*, No. 3:13CV1264 JBA, 2014 WL 2168504, at *4 (D. Conn. May 23, 2014) (issues presented by a subsequent agreement must be decided by the arbitrator); *Mobile Real Est., LLC v. NewPoint Media Grp., LLC*, 460 F. Supp. 3d 457, 476 (S.D.N.Y. 2020) (collecting cases finding issues of continued validity of an arbitration agreement are for the arbitrator where parties have delegated arbitrability).

**D.    Plaintiff's arguments fail in any event.**

If the Court reaches Plaintiff's arguments as to the scope, continued validity, and enforceability of the arbitration agreement, each fails on the merits.

The TCA's mandatory arbitration provision "covers any dispute arising out of or relating to [Plaintiff's] employment with [Switchboard], . . . including, but not limited to, all claims whether arising in tort or contract and whether arising under statute or common law including, but not limited to, any claim of breach of contract, discrimination or harassment of any kind." Dkt. 18, Ex. C. Plaintiffs' claims against Switchboard—for violating the Separation and General Release Agreement (Claim 2) and civil conspiracy/fraudulent inducement (Claim 3)—arise out of or relate to his employment and must be arbitrated under the plain language of the TCA. To the extent there is any doubt these claims are arbitrable (there should not be), it must be resolved "in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

In addition, RCW 49.44.085 is inapplicable as Plaintiff raises his discrimination claim (Claim 1) against TriNet, not Switchboard. But even if applicable on its face, the statute would be preempted by the FAA. "When state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 341 (2011); *see also Kindred Nursing Centers Ltd. P'ship v. Clark*, 581 U.S. 246, 255 (2017) (holding state law that disfavors arbitration was

DEFENDANT SWITCHBOARD TECHNOLOGY LABS, INC.'S
REPLY ISO MOTION TO COMPEL ARBITRATION - 7
Case No. 3:23-cv-5882-TMC

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

1  preempted by the FAA); *Marmet Health Care Ctr., Inc. v. Brown*, 565 U.S. 530, 534 (2012)
2  (holding state prohibition against pre-dispute agreements to arbitrate personal-injury and
3  wrongful-death claims against nursing homes was a categorical rule prohibiting arbitration of a
4  particular type of claim and, therefore, preempted by the FAA); *Whyte v. Wework Companies,*
5  *Inc.*, No. 20-CV-1800 (CM), 2020 WL 4383506, at *2–3  (S.D.N.Y. July 31, 2020) (denying
6  request for interlocutory review of finding that New York's law prohibiting mandatory arbitration
7  of discrimination claims was preempted by the FAA, noting the fact FAA preempts state laws like
8  the one at issue is "quite well settled").[3]

In addition, the agreement was not superseded by the parties' separation agreement. The separation agreement provides that it "supersedes any and all prior agreements or understandings . . . *concerning the subject matter of this Agreement*." Dkt. 22, Ex. I. The subject matter of the separation agreement is Plaintiff's termination. *See id.* As Plaintiff notes, the entire agreement provision also lists certain agreements that are not superseded even though they concern the subject matter of the separation agreement by their connection to Plaintiff's termination or specific provisions of the agreement (confidentiality being one example as the separation agreement includes its own confidentiality provision). *See* Dkt. 22, Ex I. The parties' general dispute resolution protocol, however, is not the subject of the separation agreement.

The parties' agreement also is not unconscionable. "Procedural unconscionability has been described as the lack of a meaningful choice, considering all the circumstances surrounding the transaction including the manner in which the contract was entered, whether each party had a reasonable opportunity to understand the terms of the contract, and whether the important terms [were] hidden in a maze of fine print." *Tjart*, 28 P.3d at 830 (internal quotation marks omitted). Plaintiff had a fair opportunity to understand the terms—and negotiate the terms—of his contract,

---

[3] Inapplicable here, in 2022 Congress amended the FAA to render invalid and unenforceable at claimant's option pre-dispute arbitration agreements in cases relating to a sexual assault or sexual harassment dispute. 9 U.S.C. § 402. The amendment does not cover other types of discrimination claims. *Id.*

DEFENDANT SWITCHBOARD TECHNOLOGY LABS, INC.'S
REPLY ISO MOTION TO COMPEL ARBITRATION - 8
Case No. 3:23-cv-5882-TMC

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

as shown in the emails between Plaintiff and Switchboard surrounding the terms of the offer. Dkt. 22, Exs. B, C, F; Dkt. 18, Ex. B. Plaintiff cannot prove he lacked meaningful choice and only speculates that the parties "concocted" a plan prior to his signing the offer letter to "misrepresent[] the relationship." Dkt. 21 at 18.

### III.  CONCLUSION

For the foregoing reasons, the Court should grant Switchboard's motion to compel arbitration and dismiss Switchboard from this litigation.

DATED this 12th day of January 2024.

Respectfully submitted,

SUMMIT LAW GROUP, PLLC

By *s/ Eva Sharf Oliver*
Alexander A. Baehr, WSBA No. 25320
Eva Sharf Oliver, WSBA No. 57019
315 Fifth Avenue S., Suite 1000
Seattle, WA  98104
Telephone: (206) 676-7000
Email: alexb@summitlaw.com
evao@summitlaw.com

*Attorneys for Defendant Switchboard Technology Labs, Inc.*

DEFENDANT SWITCHBOARD TECHNOLOGY LABS, INC.'S REPLY ISO MOTION TO COMPEL ARBITRATION - 9
Case No. 3:23-cv-5882-TMC

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

# CERTIFICATE OF SERVICE

I hereby certify that on this day I electronically filed the foregoing with the Clerk of the USDC, Western District of Washington, using the CM/ECF system which will send notification of such filing to the following:

*Plaintiff Pro Se*

Brad Erhart
300 SE 184th Avenue, Apartment 101
Vancouver, WA 98683
Email:  china_nanomaterial@leo.spacejunk.dev

*Attorneys for Defendant Hartford Life and Accident Ins. Co., Inc.*

Sarah E Swale
JENSEN MORSE BAKER PLLC
1809 7th Avenue, Suite 410
Seattle, WA 98101
Email: sarah.swale@jmblawyers.com

*Attorneys for Defendant Trinet HR Xi, Inc.*

Catharine M. Morisset
Jeremy F. Wood
FISHER & PHILLIPS LLP
1700 7th Avenue, Suite 2200
Seattle, WA 98101
Email:  cmorisset@fisherphillips.com
jwood@fisherphillips.com

DATED THIS 12th day of January 2024.

*s/ Karen M. Lang*
Karen M. Lang, Legal Assistant
karenl@summitlaw.com

DEFENDANT SWITCHBOARD TECHNOLOGY LABS, INC.'S REPLY ISO MOTION TO COMPEL ARBITRATION - 10
Case No. 3:23-cv-5882-TMC

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001