HONORABLE TIFFANY M. CARTWRIGHT

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT TACOMA

BRAD ERHART,

           Plaintiff,

    v.

TRINET HR XI., INC., SWITCHBOARD
TECHNOLOGY LABS, INC., AND
HARTFORD LIFE AND ACCIDENT
INSURANCE COMPANY, INC.,

           Defendants.

Case No. 3:23-cv-5882-TMC

**PRAECIPE**

**(CLERK'S ACTION REQUIRED)**

To the Clerk of the above-entitled court:

    Defendant Switchboard Technology Labs, Inc. filed a motion to compel arbitration (Docket 17) on December 1, 2023, and a reply (Docket 25) on January 12, 2024. Switchboard inadvertently omitted a certification of the word count for both filings. Both filings fall within the word limits set forth in Local Civil Rule 7(e)(3): the word count is 3,228 words for the motion (Docket 17) and 2,543 words for the reply (Docket 25). Please replace Docket 17 with the corrected version attached hereto as <u>Exhibit A</u>, which includes the word count on page 11, lines 8–9. Please replace Docket 25 with the corrected version attached hereto as <u>Exhibit B</u>, which includes the word count on page 9, lines 12–13.

Summit Law Group, PLLC
315 Fifth Avenue South, Suite 1000
Seattle, Washington 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

1    DATED this 16th day of January 2024.

2                                      Respectfully submitted,

3                                      SUMMIT LAW GROUP, PLLC

4                                      By *s/ Eva Sharf Oliver*
5                                          Alexander A. Baehr, WSBA No. 25320
                                           Eva Sharf Oliver, WSBA No. 57019
6                                          315 Fifth Avenue S., Suite 1000
                                           Seattle, WA  98104
7                                          Telephone: (206) 676-7000
                                           Email: alexb@summitlaw.com
8                                          Email: evao@summitlaw.com

9
                                       *Attorneys for Defendant Switchboard*
10                                     *Technology Labs, Inc.*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

PRAECIPE - 2
Case No. 3:23-cv-5882-TMC

**CERTIFICATE OF SERVICE**

I hereby certify that on this day I electronically filed the foregoing with the Clerk of the USDC, Western District of Washington, using the CM/ECF system which will send notification of such filing to the following:

*Plaintiff Pro Se*

Brad Erhart
300 SE 184th Avenue, Apartment 101
Vancouver, WA 98683
Email:  china_nanomaterial@leo.spacejunk.dev

*Attorneys for Defendant Hartford Life and Accident Ins. Co., Inc.*

Sarah E Swale
JENSEN MORSE BAKER PLLC
1809 7th Avenue, Suite 410
Seattle, WA 98101
Email: sarah.swale@jmblawyers.com

*Attorneys for Defendant Trinet HR Xi, Inc.*

Catharine M. Morisset
Jeremy F. Wood
FISHER & PHILLIPS LLP
1700 7th Avenue, Suite 2200
Seattle, WA 98101
Email:  cmorisset@fisherphillips.com
jwood@fisherphillips.com

DATED THIS 16th day of January 2024.

s/ Karen  M.  Lang
Karen M. Lang, Legal Assistant
karenl@summitlaw.com

PRAECIPE - 3
Case No. 3:23-cv-5882-TMC

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

# EXHIBIT A

HONORABLE TIFFANY M. CARTWRIGHT

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| BRAD ERHART, | Case No. 3:23-cv-5882-TMC |
| Plaintiff, | **DEFENDANT SWITCHBOARD TECHNOLOGY LABS, INC.'S MOTION TO COMPEL ARBITRATION** |
| v. | |
| TRINET HR XI, INC., SWITCHBOARD TECHNOLOGY LABS, INC., AND HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY, INC., | NOTED ON MOTION CALENDAR: Friday, December 29, 2023 |
| Defendants. | ORAL ARGUMENT REQUESTED |

## I.     RELIEF REQUESTED

Defendant Switchboard Technology Labs, Inc., ("Switchboard") moves the Court to compel Plaintiff Brad Erhart ("Plaintiff") to arbitrate his claims against Switchboard as required by the TriNet Terms and Condition Agreement ("TCA") incorporated into the parties' employment agreement. Through the TCA, Plaintiff promised to arbitrate all disputes arising out of or relating to his employment with Switchboard, as well as his co-employment with Defendant TriNet HR XI, Inc. ("TriNet"), the professional employer organization that Switchboard uses to outsource human resource management services. Under well-established law, Plaintiff is required

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

to arbitrate his claims as promised. Switchboard respectfully asks the Court to compel arbitration of Plaintiff's claims against Switchboard and to dismiss Switchboard from this lawsuit.

## II.    FACTUAL BACKGROUND

### A.    The Parties and the TriNet Terms and Conditions Agreement (TCA).

Plaintiff is a former employee of Switchboard. In August 2021, Switchboard offered Plaintiff a job as a Senior DevOps Engineer working remotely from Washington. As Plaintiff's offer letter explains, Switchboard contracts with TriNet to provide human resource management services, including, as relevant here, setting dispute resolution protocols. Declaration of Chris Hermida ("Hermida Decl."), Ex. A. Consequently, the offer letter incorporates Trinet's Terms and Conditions Agreement (TCA), stating that the TCA expressly forms a part of Plaintiffs' employment agreement: "This offer letter, together with the TCA and your Employee Non-Disclosure and Invention Assignment Agreement, forms the complete and exclusive agreement as to your employment with Switchboard Technology Labs, Inc." *Id.* Plaintiff had an opportunity to review the TCA before accepting Switchboard's offer of employment. Hermida Decl., Ex. B (August 19, 2021 email from Switchboard to Plaintiff attaching the TCA and stating, "As requested I've attached copies of TriNet's terms and the employee handbook.").

As explained in more detail below, the TCA requires Plaintiff to arbitrate claims against Switchboard arising out of or relating to his employment. It begins, "PLEASE READ THIS TCA CAREFULLY. IT CONTAINS IMPORTANT INFORMATION REGARDING . . . THE HANDLING OF ANY DISPUTES ARISING OUT OF YOUR RELATIONSHIP WITH TRINET, YOUR COMPANY, AND RELATED MATTERS." Hermida Decl., Ex. C at 1 (emphasis original). "[Y]our company" is defined in the TCA as "the company you work for"— i.e., Switchboard. *Id.* at 2.

Section 8 of the TCA is titled "Dispute Resolution Protocol ("DRP") and Mandatory Arbitration of Claims." *Id.* at 1, 5. It provides in part,

DEFENDANT SWITCHBOARD TECHNOLOGY LABS,
INC.'S MOTION TO COMPEL PLAINTIFF - 2
Case No. 3:23-cv-5882-TMC

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

**arbitration will be used instead of going before a court (for a judge or jury trial) . . . for any dispute arising out of or relating to your co-employment with TriNet and/or arising out of or relating to your employment with your company, and for any dispute with an employee, officer, or director of TriNet or of a TriNet client.**

*Id.* at 5 (bold original). The agreement further provides, "[t]he Federal Arbitration Act ("FAA") applies to this DRP." *Id.* It selects the "rules and procedures of the Judicial Arbitration and Mediation Services, Inc.," unless the parties agree otherwise. *Id.* at 6.

Plaintiff signed the offer letter on August 23, 2021. He worked for Switchboard from August 31, 2021, until November 2022 when the parties entered a Separation and General Release Agreement. This lawsuit followed.

**B.      The Parties' dispute.**

Plaintiff brings claims against three defendants: Switchboard, TriNet, and Hartford Life and Accident Insurance Company, Inc. ("Hartford"). While Plaintiff chiefly raises claims against TriNet, including for disability discrimination, violations of ERISA, and breach of fiduciary duty, Plaintiff asserts two claims against Switchboard. First, in Claim 2, Plaintiff alleges Switchboard violated the Separation and General Release Agreement by purportedly requiring Plaintiff to sign before a stipulated 10-day review period and providing copies of the agreement to Hartford and TriNet. Dkt. 1 at IV.B. Second, in Claim 3, Plaintiff alleges Switchboard "engaged in a civil conspiracy intended to interfere with Plaintiff's rights under the Americans with Disabilities Act (ADA) and other employment-related laws; and to fraudulently induce Plaintiff into the separation agreement and other employer-related agreements." Dkt. 1 at IV.C.

### III.      ARGUMENT

**A.      Governing law and legal standards.**

**1.      The Federal Arbitration Act.**

Pursuant to the Federal Arbitration Act ("FAA" or "Act"), agreements to arbitrate are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Under § 4 of the Act, "a party 'aggrieved' by the failure

DEFENDANT SWITCHBOARD TECHNOLOGY LABS, INC.'S MOTION TO COMPEL PLAINTIFF - 3
Case No. 3:23-cv-5882-TMC

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1  of another party 'to arbitrate under a written agreement for arbitration' may petition a federal court

2  'for an order directing that such arbitration proceed in the manner provided for in such agreement.'

3  The court 'shall' order arbitration 'upon being satisfied that the making of the agreement for

4  arbitration or the failure to comply therewith is not in issue.'" *Rent-A-Ctr., W., Inc. v. Jackson*,

5  561 U.S. 63, 68 (2010) (quoting 9 U.S.C. § 4). The FAA applies to "contract[s] evidencing a

6  transaction involving commerce," 9 U.S.C. § 2, which the Supreme Court has held includes

7  employment agreements. *Cir. City Stores, Inc. v. Adams*, 532 U.S. 105, 123 (2001) (the FAA

8  generally applies to employment agreements); *see also id.* ("Arbitration agreements allow parties

9  to avoid the costs of litigation, a benefit that may be of particular importance in employment

10  litigation.").

11      Congress passed the FAA to "reverse the longstanding judicial hostility to arbitration

12  agreements." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991). "The 'principal

13  purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced according to

14  their terms.'" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) (quoting *Volt Info.

15  Scis. v. Bd. of Trs.*, 489 U.S. 468, 478 (1989)). Consistent with this purpose, the Supreme Court

16  has emphasized that "courts must rigorously enforce arbitration agreements according to their

17  terms, including terms that specify with whom [the parties] choose to arbitrate their disputes and

18  the rules under which that arbitration will be conducted." *Am. Exp. Co. v. Italian Colors Rest.*, 570

19  U.S. 228, 233 (2013) (internal quotations and citations omitted).

20      2.      **Legal standard for compelling arbitration.**

21      A court has only a limited gatekeeper function in determining whether to compel

22  arbitration under the FAA. *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th

23  Cir. 2000). In this role, the court's inquiry is generally limited to considering "two gateway issues:

24  (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement

25  covers the dispute. However, these gateway issues can be expressly delegated to the arbitrator

26  where the parties *clearly and unmistakably* provide otherwise." *Brennan v. Opus Bank*, 796 F.3d

DEFENDANT SWITCHBOARD TECHNOLOGY LABS,
INC.'S MOTION TO COMPEL PLAINTIFF - 4
Case No. 3:23-cv-5882-TMC

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1125, 1130 (9th Cir. 2015) (emphasis original) (internal quotations and citations omitted). Thus, where "there is clear and unmistakable evidence" that the parties have delegated arbitrability to an arbitrator, the court may properly reach only the first question: the existence of an agreement to arbitrate. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 527, 531 (2019). In such cases, the court must compel arbitration if it finds there is a valid agreement to arbitrate, leaving questions of the scope of that agreement to the arbitrator. *Id.* at 530 ("[I]f a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue."); *LeBoeuf v. Nvidia Corp.*, 833 F. App'x 465, 467 (9th Cir. 2021) ("the Supreme Court requires enforcement of [delegation] clauses").

An arbitration agreement "clearly and unmistakably" delegates arbitrability to the arbitrator when it incorporates arbitration rules that give the arbitrator authority to decide arbitrability. *Brennan*, 796 F.3d at 1130; *accord Raven Offshore Yacht, Shipping, LLP v. F.T. Holdings*, LLC, 400 P.3d 347, 350 (Wash. Ct. App. 2017). As explained in more detail below, the Judicial Mediation and Arbitration Services (JAMS) rules selected by the parties here specifically grant such authority to the arbitrator. *See* JAMS Employment Arbitration Rule 11(b). The only issue properly before the Court in this case is, therefore, whether the parties agreed to arbitrate.

**B.     Plaintiff agreed to arbitrate claims against Switchboard via the TCA.**

Plaintiff plainly agreed to arbitrate his claims against Switchboard. "In determining whether the parties agreed to arbitrate, Courts apply ordinary state-law contract [principles]" (here, Washington contract law). *Peters v. Amazon Servs. LLC*, 2 F. Supp. 3d 1165, 1170 (W.D. Wash. 2013), *aff'd*, 669 F. App'x 487 (9th Cir. 2016). "Washington courts apply the manifest theory of contract interpretation: '[t]he role of the court is to determine the mutual intentions of the parties according to the reasonable meaning of their words and acts.'" *Id.* (citations omitted).

As a threshold matter, Plaintiff's employment agreement with Switchboard incorporates the TCA in full, including its arbitration provision. "A nonsignatory may be bound to an arbitration agreement through contract or agency principles . . . include[ing] incorporation by

DEFENDANT SWITCHBOARD TECHNOLOGY LABS,
INC.'S MOTION TO COMPEL PLAINTIFF - 5
Case No. 3:23-cv-5882-TMC

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

reference." *Raven*, 400 P.3d at 351; *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006) (same). "If the parties to a contract clearly and unequivocally incorporate by reference into their contract some other document, that document becomes part of their contract." *Satomi Owners Ass'n v. Satomi, LLC*, 225 P.3d 213, 225 (Wash. 2009) (finding document containing arbitration agreement was incorporated by reference); *W. Washington Corp. of Seventh-Day Adventists v. Ferrellgas, Inc.*, 7 P.3d 861, 865 (Wash. Ct. App. 2000) ("Incorporation by reference allows the parties to 'incorporate contractual terms by reference to a separate . . . agreement to which they are not parties, and including a separate document which is unsigned." (citation omitted)). Courts routinely compel arbitration based on contracts that are incorporated into the underlying agreement by reference. *See, e.g.*, *Satomi*, 225 P.3d at 234; *see also Todd v. Venwest Yachts, Inc.*, 127 Wash. App. 393, 398, 111 P.3d 282, 284 (2005) ("We agree that when the parties' employment agreement has incorporated an arbitration clause by reference, the arbitration clause may be enforced."). Here, Plaintiff's signed offer letter clearly and unequivocally incorporates the TCA into the parties' employment agreement, providing, "This offer letter, *together with the TCA* . . . forms the complete and exclusive agreement as to your employment with Switchboard Technology Labs, Inc." Hermida Decl., Ex. A (emphasis added).

The TCA contains a valid, enforceable arbitration agreement. By its plain language, the TCA requires Plaintiff to arbitrate claims against Switchboard. Section 8 of the TCA, titled "Dispute Resolution Protocol ('DRP') and Mandatory Arbitration of Claims," emphatically states in bold,

> **the DRP expressly requires that arbitration will be used instead of going before a court (for a judge or jury trial) and that NO JURY TRIAL WILL BE PERMITTED (unless applicable law does not allow enforcement of a pre-dispute jury trial waiver in the particular circumstances presented) for any dispute arising out of or relating to your co-employment with TriNet and/or arising out of or relating to your employment with your company, and for any dispute with an employee, officer, or director of TriNet or of a TriNet client.**

Hermida Decl., Ex. C at 5.  It goes on,

DEFENDANT SWITCHBOARD TECHNOLOGY LABS,
INC.'S MOTION TO COMPEL PLAINTIFF - 6
Case No. 3:23-cv-5882-TMC

Summit Law Group, pllc
315 Fifth Avenue South, Suite 1000
Seattle, Washington 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

this DRP covers any dispute arising out of or relating to your co-employment with TriNet, including your TriNet co-employer, and/or arising out of or relating to your employment with your company, as well as any dispute with an employee, officer, or director of TriNet or of a TriNet client (all of whom, in addition to TriNet clients, are intended to be beneficiaries of this DRP) ("covered dispute"), including, but not limited to, all claims whether arising in tort or contract and whether arising under statute or common law including, but not limited to, any claim of breach of contract, discrimination or harassment of any kind.

*Id.* "[Y]our company" is defined as "the company you work for," here Switchboard (which is also a "TriNet client"): "Your relationship with TriNet is beginning because the company you work for ('your worksite employer,' 'your company' or 'my company') is a TriNet customer." *Id.* at 2. This language is unambiguous: Plaintiff agreed to arbitrate claims against Switchboard. And Switchboard can enforce the agreement to arbitrate as contemplated by the TCA. *See e.g. id.* at 7 (contemplating "a TriNet client . . . enforcing this DRP for its/their own benefit").[1] In sum, the first gateway requirement is met: the parties agreed to arbitrate.

## C.   The arbitration agreement delegates issues of arbitrability to the arbitrator.

The Court need not address the second gateway issue—the scope of the TCA's arbitration agreement—because the parties expressly delegated the issue to the arbitrator. The TCA "clearly and unmistakably" delegates arbitrability to an arbitrator by incorporating the JAMS rules and procedures.

JAMS Employment Arbitration Rule 11(b) provides,

Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator. Unless the relevant law requires otherwise, the Arbitrator

---

[1] Although it is enough that the parties' agreement incorporates the TCA, one could also view Switchboard as a third-party beneficiary of the arbitration agreement. *See Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006). ("[N]onsignatories can enforce arbitration agreements as third party beneficiaries.").

1    has the authority to determine jurisdiction and arbitrability issues as a preliminary

     matter.

2    Courts presented with the issue consistently hold that by incorporating JAMS rules, parties

3    delegate questions of arbitrability to an arbitrator. *See Belnap v. Iasis Healthcare*, 844 F.3d 1272,

4    1279 (10th Cir. 2017) ("We conclude that by incorporating the JAMS Rules into the Agreement,

5    Dr. Belnap and SLRMC evidenced a clear and unmistakable intent to delegate questions of

6    arbitrability to an arbitrator."); *LeBoeuf v. NVIDIA Corp.*, 833 F. App'x 465, 467 (9th Cir. 2021)

7    (same); *Simply Wireless, Inc v. T-Mobile US, Inc.*, 877 F.3d 522, 527–28 (4th Cir. 2017) (same),

8    *abrogated on other grounds by Henry Schein*, 139 S. Ct. 524. In addition, Washington courts have

9    found that the incorporation of similarly worded arbitral rules provide "clear and unmistakable"

10   evidence that the parties agreed to arbitrate arbitrability. *See In re Estate of Anches*, No. 78732-2-

11   I, 2019 WL 3417100, at *2 (Wash. Ct. App. July 29, 2019) (American Arbitration Association

12   rule providing that the "arbitrator shall have the power to rule on his or her own jurisdiction,

13   including any objections with respect to the existence, scope, or validity of the arbitration

14   agreement or to the arbitrability of any claim or counterclaim"); *Raven*, 400 P.3d at 349–50

15   (Maritime Arbitration Association rule providing that "the arbitral tribunal shall have the power to

16   decide all issues arising out of or related to any claim or response, or agreement to arbitrate an

17   existing dispute. This includes not only the merits of the dispute but any issues with respect to the

18   jurisdiction of the arbitral tribunal and the existence, scope or validity of the underlying arbitration

19   agreement.").

20          Here, the TCA incorporates the JAMS rules, providing, "Arbitration begins by bringing a

21   claim under the applicable employment arbitration rules and procedures of the Judicial Arbitration

22   and Mediation Services, Inc. ("JAMS")." The agreement then directs the parties to those rules:

23   "JAMS' Employment Arbitration Rules may be found on the internet at www.jamsadr.com or by

24   using an internet search engine to locate the 'JAMS Employment Arbitration Rules.'" That is, the

25   agreement incorporates and specifically directs the parties to the JAMS rules that give the

26   arbitrator authority to decide issues of arbitrability (unless, inapplicable here, the parties have

DEFENDANT SWITCHBOARD TECHNOLOGY LABS,
INC.'S MOTION TO COMPEL PLAINTIFF - 8
Case No. 3:23-cv-5882-TMC

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

1  agreed to use another dispute resolution provider). By agreeing to the JAMS rules, the parties

2  clearly and unmistakably delegated issues of arbitrability to the arbitrator. *Raven*, 400 P.3d at 350.

3  The Court "possesses no power to decide the arbitrability issue" and must compel arbitration on

4  the scope of the arbitration agreement. *Henry Schein*, 139 S. Ct. at 529.

5  **D.      The arbitration clause covers the parties' dispute, in any event.**

6         Because the parties delegated issues of arbitrability to the arbitrator, the Court should not

7  consider the scope of the arbitration clause. Even if the Court reached the issue, however, the

8  outcome would be the same: Plaintiffs' claims against Switchboard all arise out of or relate to his

9  employment and must be arbitrated under the plain language of the TCA.

10        The FAA imposes a presumption of arbitrability, requiring courts to resolve "any doubts

11 concerning the scope of arbitrable issues . . . in favor of arbitration." *Moses H. Cone Mem'l Hosp.*

12 *v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983) ("any doubts concerning the scope of

13 arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the

14 construction of the contract language itself or an allegation of waiver, delay, or a like defense to

15 arbitrability."). Therefore, "[i]n determining whether parties have agreed to arbitrate a dispute,"

16 courts "apply general state-law principles of contract interpretation, while giving due regard to the

17 federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor

18 of arbitration." *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1044 (9th Cir. 2009).

19        The TCA's mandatory arbitration provision "covers any dispute arising out of or relating

20 to [Plaintiff's] employment with [Switchboard], . . . including, but not limited to, all claims

21 whether arising in tort or contract and whether arising under statute or common law including, but

22 not limited to, any claim of breach of contract, discrimination or harassment of any kind."

23 Washington courts construe the phrases "arising out of" and "relating to" broadly in arbitration

24 provisions, consistent with the "strong policy favoring arbitration." *David Terry Invs., LLC-PRC*

25 *v. Headwaters Dev. Grp. Ltd. Liab. Co.*, 463 P.3d 117, 122 (Wash. Ct. App. 2020); *JC Aviation*

26 *Invest., LLC v. Hytech Power, LLC*, No. 81539-3-I, 2021 WL 778043, *3 n.11 (Wash. App. Div. I,

DEFENDANT SWITCHBOARD TECHNOLOGY LABS,
INC.'S MOTION TO COMPEL PLAINTIFF - 9
Case No. 3:23-cv-5882-TMC

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

March 1, 2021) ("Clauses requiring arbitration of disputes 'arising out of' are interpreted broadly."). But even applying a narrow interpretation, Plaintiff's claims fall within the scope of the agreement.

Both of Plaintiff's claims against Switchboard arise out of or relate to his employment. In Claim 2, Plaintiff alleges Switchboard violated the agreement by which the parties ended Plaintiff's employment. In Claim 3, Plaintiff alleges Switchboard engaged in a civil conspiracy to interfere with his rights as an employee and fraudulently induced Plaintiff to enter "employer-related agreements." Dkt. 1. These claims fall well within the language of the provision. And even if there was ambiguity (there is not), caselaw directs it must be resolved in favor of arbitrability.

In sum, each of Plaintiffs claims against Switchboard is arbitrable under the parties' arbitration agreement. The Court should compel arbitration.

**E.     Dismissal is appropriate.**

Section 3 of the FAA provides that, upon determination by a court that an issue or issues are referable to arbitration, the court, on application of a party, "shall" stay the trial of the action pending arbitration. 9 U.S.C. § 3. "On its face, Congress's use of 'shall' appears to require courts to stay litigation that is subject to mandatory arbitration, at least where all issues are subject to arbitration." *Forrest v. Spizzirri*, 62 F.4th 1201, 1204 (9th Cir. 2023). But the Ninth Circuit "has long carved out an exception if all claims are subject to arbitration." *Id.*; *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1073 (9th Cir. 2014). Courts have applied this exception where all claims against a particular defendant are subject to arbitration: the court may dismiss that defendant from the lawsuit, even if other defendants remain. *See, e.g.*, *F.D.I.C. v. Artesa Holdings, LLC*, No. CV11-00499-PHX-FJMRE, 2011 WL 2669231, at *3 (D. Ariz. July 7, 2011).

As all of Plaintiff's claims against Switchboard should be referred to arbitration, a stay of proceedings would needlessly waste judicial resources. Accordingly, the Court should dismiss Switchboard from this lawsuit.

DEFENDANT SWITCHBOARD TECHNOLOGY LABS,
INC.'S MOTION TO COMPEL PLAINTIFF - 10
Case No. 3:23-cv-5882-TMC

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1

## IV.  CONCLUSION

2     For the foregoing reasons, the Court should grant Switchboard's motion to compel

3 arbitration and dismiss Switchboard from this litigation.

4

5     DATED this 1st day of December 2023.

6                                           Respectfully submitted,

7                                           SUMMIT LAW GROUP, PLLC

8                                           I certify that this memorandum contains 3,228 words,
                                            in compliance with the Local Civil Rules.
9

10                                          By *s/ Eva Sharf Oliver*
                                               Alexander A. Baehr, WSBA No. 25320
11                                             Eva Sharf Oliver, WSBA No. 57019
                                               315 Fifth Avenue S., Suite 1000
12                                             Seattle, WA  98104
                                               Telephone: (206) 676-7000
13                                             Email: alexb@summitlaw.com
                                               Email: evao@summitlaw.com
14

15                                          *Attorneys for Defendant Switchboard*
                                            *Technology Labs, Inc.*
16

17

18

19

20

21

22

23

24

25

26

DEFENDANT SWITCHBOARD TECHNOLOGY LABS,
INC.'S MOTION TO COMPEL PLAINTIFF - 11
Case No. 3:23-cv-5882-TMC

**CERTIFICATE OF SERVICE**

I hereby certify that on this day I electronically filed the foregoing with the Clerk of the USDC, Western District of Washington, using the CM/ECF system which will send notification of such filing to the following:

*Plaintiff Pro Se*

Brad Erhart
300 SE 184th Avenue, Apartment 101
Vancouver, WA 98683
Email: china_nanomaterial@leo.spacejunk.dev

*Attorneys for Defendant Hartford Life and Accident Ins. Co., Inc.*

Sarah E Swale
JENSEN MORSE BAKER PLLC
1809 7th Avenue, Suite 410
Seattle, WA 98101
Email: sarah.swale@jmblawyers.com

*Attorneys for Defendant Trinet HR Xi, Inc.*

Catharine M. Morisset
Jeremy F. Wood
FISHER & PHILLIPS LLP
1700 7th Avenue, Suite 2200
Seattle, WA 98101
Email: cmorisset@fisherphillips.com
jwood@fisherphillips.com

DATED THIS 1st day of December 2023.

s/ Karen  M.  Lang
Karen M. Lang, Legal Assistant
karenl@summitlaw.com

DEFENDANT SWITCHBOARD TECHNOLOGY LABS,
INC.'S MOTION TO COMPEL PLAINTIFF - 12
Case No. 3:23-cv-5882-TMC

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

# EXHIBIT B

HONORABLE TIFFANY M. CARTWRIGHT

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WASHINGTON

AT TACOMA

| | |
|---|---|
| BRAD ERHART, | Case No. 3:23-cv-5882-TMC |
| Plaintiff, | **REPLY IN SUPPORT OF DEFENDANT SWITCHBOARD TECHNOLOGY LABS, INC.'S MOTION TO COMPEL ARBITRATION** |
| v. | |
| TRINET HR XI, INC., SWITCHBOARD TECHNOLOGY LABS, INC., AND HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY, INC., | NOTED ON MOTION CALENDAR: Friday, January 12, 2024 |
| Defendants. | |

## I.     INTRODUCTION

Plaintiff claims primarily that he did not know "TCA"—which is defined in the very document Plaintiff signed—was an acronym for TriNet's Terms and Conditions Agreement. Ignorance is not a defense. Plaintiff is bound to arbitrate his claims against Switchboard as agreed when he accepted Switchboard's offer of employment. Each of Plaintiff's arguments to the contrary either fails under general contract law principles, goes to the merits of his underlying claims and is irrelevant here, or is delegated to the arbitrator.

DEFENDANT SWITCHBOARD TECHNOLOGY LABS, INC.'S
REPLY ISO MOTION TO COMPEL ARBITRATION - 1
Case No. 3:23-cv-5882-TMC

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

## II.   ARGUMENT

### A.   The TCA is incorporated into the parties' agreement.

Plaintiff agrees that his offer letter, which he admits he signed, explicitly provides that the TCA forms part of the parties' employment agreement.[1] Indeed, Plaintiff begins his Complaint by alleging he "commenced a full-time remote position" after signing Switchboard's offer letter and "received consistent praise for his adept skills and performance" in the role. Dkt. 1 at 4. Plaintiff not only accepted the offer of employment, both parties *performed* under the offer letter, an agreement that required Plaintiff to accept the terms of the TCA. Nevertheless, Plaintiff presents four arguments as to why the TCA (and its arbitration provision) was not incorporated into the parties' agreement. Each of Plaintiff's arguments fails under settled Washington law.

<u>First</u>, Plaintiff primarily asserts that the acronym "TCA" was "unknown" to him at the time and, thus, could not have been incorporated by reference into the parties' employment agreement. Dkt. 21 (Plaintiff's Opposition) at 2, 8, 11 ("I had no familiarity with the TCA acronym nor that they allegedly intended to incorporate the previous 'TriNet Terms' attachment using the TCA acronym."). But the very document Plaintiff admittedly signed defines TCA as TriNet's Terms and Conditions Agreement, stating "the Terms and Conditions Agreement (TCA) each new employee must accept in order to access TriNet's on-line self-service portal." Dkt. 18, Ex. A. "One who accepts a written contract is conclusively presumed to know its contents and to assent to them." *Tjart v. Smith Barney, Inc.*, 28 P.3d 823, 829 (Wash. Ct. App. 2001) ("[W]hether or not Tjart read or understood the terms of the Shearson Application to constitute an agreement to arbitrate, she assented to its terms."); *Briggs v. Serv. Corp Int'l*, No. C22-1646JLR, 2023 WL

---

[1] Plaintiff disputes (or suggests it has yet to be established) that he had an employment relationship with Switchboard. This argument, although misguided, is not relevant to this motion. The question here is not whether the parties' arrangement was properly described as employment for ERISA purposes but whether the parties entered an agreement to arbitrate. Plaintiff focuses much of his response on the merits of his underlying claims. Those arguments can, and should, be addressed in arbitration.

DEFENDANT SWITCHBOARD TECHNOLOGY LABS, INC.'S
REPLY ISO MOTION TO COMPEL ARBITRATION - 2
Case No. 3:23-cv-5882-TMC

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

2075958, at *5 (W.D. Wash. Feb. 17, 2023) (finding arbitration agreement was supported by mutual assent despite plaintiff's claims that she was "unaware" of its meaning).

One could also discern the meaning of the acronym from a glance at the TCA, which Plaintiff admittedly received before signing the offer letter and is titled on page one, "**TRINET TERMS AND CONDITIONS AGREEMENT (TCA)**." Dkt. 18, Ex. C at 1 (emphasis original); Dkt. 18, Ex. B (email to Plaintiff attaching the TCA). Immediately following this heading, the TCA begins with the all-caps directive, "PLEASE READ THIS TCA CAREFULLY. IT CONTAINS IMPORTANT INFORMATION REGARDING . . . THE HANDLING OF ANY DISPUTES ARISING OUT OF YOUR RELATIONSHIP WITH TRINET, YOUR COMPANY, AND RELATED MATTERS." Dkt. 18, Ex. C at 1. "[Y]our company" is defined as "the company you work for"—plainly Switchboard. *Id.* at 2. It is difficult to imagine that Plaintiff was unaware the "TCA" was the TriNet Terms and Conditions Agreement shared with him in the context of discussing his offer and defined in the offer letter itself. But even if Plaintiff was subjectively unaware, parties are responsible for reading contracts they sign. *Del Rosario v. Del Rosario*, 97 P.3d 11, 16 (Wash. 2004) ("Washington adheres to the general contract principle that parties have a duty to read the contracts they sign."); *Brewer v. Lake Easton Homeowners Ass'n*, 413 P.3d 16, 21 (Wash. Ct. App. 2018) ("The Brewers were responsible for understanding the terms of their title report and the nature of the real estate purchase."). Plaintiff cannot evade the terms of the parties' agreement by claiming he chose not to "pay any special attention" to the TCA identified in the offer letter before signing. Dkt. 21 at 5; *Signavong v. Volt Mgmt. Corp.*, No. C07-515JLR, 2007 WL 1813845, at *3 (W.D. Wash. June 21, 2007) ("[W]here a party has signed a contract without reading it, she cannot successfully argue that the contract is unenforceable as long as she was not deprived of the opportunity to read it." (citing Y*akima County Fire Prot. Dist. No. 12 v. City of Yakima*, 858 P.2d 245, 255 (Wash. 1993)).

Second, Plaintiff suggests a separately signed document cannot be incorporated by reference, arguing the TCA is an agreement accepted through TriNet's portal and, thus, cannot

DEFENDANT SWITCHBOARD TECHNOLOGY LABS, INC.'S
REPLY ISO MOTION TO COMPEL ARBITRATION - 3
Case No. 3:23-cv-5882-TMC

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

form a part of his agreement with Switchboard. Not so. "As long as the contract makes clear reference to the document and describes it in such terms that its identity may be ascertained beyond doubt, the parties to a contract may incorporate contractual terms by reference to a separate, noncontemporaneous document, including a separate agreement to which they are not parties, and including a separate document which is unsigned." 11 Williston on Contracts § 30:25 (4th ed.); *W. Wash. Corp. of Seventh-Day Adventists v. Ferrellgas, Inc.*, 7 P.3d 861, 865 (Wash. Ct. App. 2000). Nothing bars parties from incorporating a document that could also be accepted by other means. The offer letter requires Plaintiff to accept the terms of the TCA to work for Switchboard.

Third, Plaintiff suggests the TCA cannot form a part of its agreement with Switchboard because it is exclusive to TriNet. This argument fails for several reasons. Most notably, the TCA by its plain language is *not* exclusive to TriNet. It also governs Plaintiff's employment with "your company," *i.e.*, Switchboard. Dkt. 18, Ex. C at 1–2. Using the arbitration provision as an example, the provision explicitly applies to disputes with "your company" (Switchboard) and contemplates TriNet clients (also Switchboard) enforcing the agreement for their own benefit. *Id.* at 5–7. This makes sense as TriNet provides outsourced human resource management services like the dispute resolution protocol reflected in the TCA. Dkt. 18, Ex. A. But more fundamentally, the fact the TCA is an agreement between Plaintiff and TriNet does not preclude the parties from incorporating the document by reference—parties can incorporate agreements to which they are not parties. *Ferrellgas, Inc.*, 7 P.3d at 865.

Fourth, Plaintiff asks the Court to find the agreement did not incorporate the TCA because it did not use the words "integrate," "merge," or "incorporate." Washington law contains no such magic words requirement. In *W. Wash. Corp. of Seventh-Day Adventists v. Ferrellgas, Inc.*, 7 P.3d 861 (Wash. Ct. App. 2000), for example, the court found clear and unequivocal incorporation by reference where a contract provided a party was "to perform the Work . . . in accordance with" other documents. *Id.* at 865. In *Santos v. Sinclair*, 884 P.2d 941 (Wash Ct. App. 1994), the court

DEFENDANT SWITCHBOARD TECHNOLOGY LABS, INC.'S
REPLY ISO MOTION TO COMPEL ARBITRATION - 4
Case No. 3:23-cv-5882-TMC

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

found a description of land was incorporated into an agreement based on a simple reference to the document containing it. *Id.* at 943. In *Brown v. Poston*, 269 P.2d 967 (Wash. 1954), the court found that where a subcontractor contracted to perform work on a building "as per plans and specifications," both documents were thereby incorporated by reference into the contract. *Id.* at 968. The offer letter here is even more explicit, stating that the offer letter "together with the TCA . . . forms the complete and exclusive agreement as to your employment with Switchboard Technology Labs, Inc." Dkt. 18, Ex. A.

**B.     The signed offer letter binds Plaintiff to arbitrate his claims against Switchboard.**

Turning to what appears to be the merits of his underlying claims, Plaintiff argues the offer letter is not binding because he claims in this lawsuit that the parties did not have an "employer-employee" relationship. At issue in this motion is the narrow question of whether the parties have an agreement to arbitrate. *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (a court has only a limited gatekeeper function in determining whether to compel arbitration under the FAA); *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (a court's inquiry is  generally limited to (1) whether there is an agreement to arbitrate between the parties and (2) whether the agreement covers the dispute); *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 527, 531 (2019) (where, as here, the parties have delegated arbitrability to the arbitrator, the inquiry is even more limited—the court may properly reach only whether there exists an agreement to arbitrate). Plaintiff cannot seriously dispute that the parties entered an agreement: he admittedly signed the offer letter and began working for Switchboard. Nor can Plaintiff seriously dispute that the agreement included an arbitration provision, as explained above.

Plaintiff cannot avoid his promise to arbitrate by alleging TriNet, not Switchboard, was his "employer" for purposes of ERISA. No matter Plaintiff's claims, the offer letter—which Plaintiff admittedly signed—governed the terms by which Plaintiff in fact worked for Switchboard,

DEFENDANT SWITCHBOARD TECHNOLOGY LABS, INC.'S
REPLY ISO MOTION TO COMPEL ARBITRATION - 5
Case No. 3:23-cv-5882-TMC

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

including Plaintiff's role (which he held for months), his compensation for that role, and the agreement to arbitrate.

**C.     Plaintiff's arguments as to arbitrability are for an arbitrator, not the Court.**

Plaintiff also raises arguments about the scope and enforceability of the arbitration clause, arguing, for example, that the agreement is unconscionable, that his claims are excluded, and that the agreement is superseded by the parties' Separation and General Release Agreement. Each of these arguments is for the arbitrator to decide as the parties delegated arbitrability to the arbitrator.

As explained in the motion, the TCA "clearly and unmistakably" delegates arbitrability to an arbitrator by incorporating the JAMS rules and procedures. *See, e.g.*, *Briggs*, 2023 WL 2075958, at *7 ("The court concludes that the MRPA clearly and unmistakably delegates arbitrability questions to the arbitrator by incorporating the JAMS rules by reference."). Plaintiff asserts the arbitration clause "never defaults to incorporating the JAMS rules." Dkt. 21 at 15. This is belied by the provision, which defaults to JAMS rules (which are referred to repeatedly and linked in the provision) unless the parties have an agreement to use another dispute resolution provider. Dkt. 18, Ex. C at 6. Here, Plaintiff does not argue the parties have agreed to use another provider (they have not). Accordingly, JAMS rules would apply by default.

And Plaintiff does not dispute JAMS rules delegate issues of arbitrability to the arbitrator. It is therefore the arbitrator's role to decide issues of scope, continued validity, and enforceability—namely, whether the agreement is unconscionable or fraudulently induced,[2] whether Plaintiff's claims against Switchboard fall within the scope of the arbitration provision or RCW 49.60.310, and whether the parties' separation agreement supersedes the agreement to arbitrate. *See, e.g.*, *Johnson v. Oracle Am., Inc.*, No. 17-CV-05157-EDL, 2017 WL 8793341, at *8

---

[2] Plaintiff's arguments about the enforceability of the arbitration provision are directed to the contract as a whole or, even more broadly, are predicated on the parties' purported conspiracy. Such arguments are "reserved for the arbitrator." *Townsend v. Quadrant Corp.*, 268 P.3d 917, 921–22 (Wash. 2012). Only where a plaintiff asserts facts "relating specifically and only to the arbitration agreement" and not the contract "as a whole" does the court decide issues of enforceability. *Id.*

DEFENDANT SWITCHBOARD TECHNOLOGY LABS, INC.'S
REPLY ISO MOTION TO COMPEL ARBITRATION - 6
Case No. 3:23-cv-5882-TMC

Summit Law Group, pllc
315 Fifth Avenue South, Suite 1000
Seattle, Washington 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

(N.D. Cal. Nov. 17, 2017), *aff'd*, 764 F. App'x 607 (9th Cir. 2019) (dispute about whether arbitration agreement was superseded by later agreement should be decided by an arbitrator per the incorporated JAMS rules); *Trenwick Am. Reinsurance Corp. v. CX Reinsurance Co.*, No. 3:13CV1264 JBA, 2014 WL 2168504, at *4 (D. Conn. May 23, 2014) (issues presented by a subsequent agreement must be decided by the arbitrator); *Mobile Real Est., LLC v. NewPoint Media Grp., LLC*, 460 F. Supp. 3d 457, 476 (S.D.N.Y. 2020) (collecting cases finding issues of continued validity of an arbitration agreement are for the arbitrator where parties have delegated arbitrability).

**D.    Plaintiff's arguments fail in any event.**

If the Court reaches Plaintiff's arguments as to the scope, continued validity, and enforceability of the arbitration agreement, each fails on the merits.

The TCA's mandatory arbitration provision "covers any dispute arising out of or relating to [Plaintiff's] employment with [Switchboard], . . . including, but not limited to, all claims whether arising in tort or contract and whether arising under statute or common law including, but not limited to, any claim of breach of contract, discrimination or harassment of any kind." Dkt. 18, Ex. C. Plaintiffs' claims against Switchboard—for violating the Separation and General Release Agreement (Claim 2) and civil conspiracy/fraudulent inducement (Claim 3)—arise out of or relate to his employment and must be arbitrated under the plain language of the TCA. To the extent there is any doubt these claims are arbitrable (there should not be), it must be resolved "in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

In addition, RCW 49.44.085 is inapplicable as Plaintiff raises his discrimination claim (Claim 1) against TriNet, not Switchboard. But even if applicable on its face, the statute would be preempted by the FAA. "When state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 341 (2011); *see also Kindred Nursing Centers Ltd. P'ship v. Clark*, 581 U.S. 246, 255 (2017) (holding state law that disfavors arbitration was

DEFENDANT SWITCHBOARD TECHNOLOGY LABS, INC.'S
REPLY ISO MOTION TO COMPEL ARBITRATION - 7
Case No. 3:23-cv-5882-TMC

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

preempted by the FAA); *Marmet Health Care Ctr., Inc. v. Brown*, 565 U.S. 530, 534 (2012) (holding state prohibition against pre-dispute agreements to arbitrate personal-injury and wrongful-death claims against nursing homes was a categorical rule prohibiting arbitration of a particular type of claim and, therefore, preempted by the FAA); *Whyte v. Wework Companies, Inc.*, No. 20-CV-1800 (CM), 2020 WL 4383506, at *2–3  (S.D.N.Y. July 31, 2020) (denying request for interlocutory review of finding that New York's law prohibiting mandatory arbitration of discrimination claims was preempted by the FAA, noting the fact FAA preempts state laws like the one at issue is "quite well settled").[3]

In addition, the agreement was not superseded by the parties' separation agreement. The separation agreement provides that it "supersedes any and all prior agreements or understandings . . . *concerning the subject matter of this Agreement*." Dkt. 22, Ex. I. The subject matter of the separation agreement is Plaintiff's termination. *See id.* As Plaintiff notes, the entire agreement provision also lists certain agreements that are not superseded even though they concern the subject matter of the separation agreement by their connection to Plaintiff's termination or specific provisions of the agreement (confidentiality being one example as the separation agreement includes its own confidentiality provision). *See* Dkt. 22, Ex I. The parties' general dispute resolution protocol, however, is not the subject of the separation agreement.

The parties' agreement also is not unconscionable. "Procedural unconscionability has been described as the lack of a meaningful choice, considering all the circumstances surrounding the transaction including the manner in which the contract was entered, whether each party had a reasonable opportunity to understand the terms of the contract, and whether the important terms [were] hidden in a maze of fine print." *Tjart*, 28 P.3d at 830 (internal quotation marks omitted). Plaintiff had a fair opportunity to understand the terms—and negotiate the terms—of his contract,

---

[3] Inapplicable here, in 2022 Congress amended the FAA to render invalid and unenforceable at claimant's option pre-dispute arbitration agreements in cases relating to a sexual assault or sexual harassment dispute. 9 U.S.C. § 402. The amendment does not cover other types of discrimination claims. *Id.*

DEFENDANT SWITCHBOARD TECHNOLOGY LABS, INC.'S
REPLY ISO MOTION TO COMPEL ARBITRATION - 8
Case No. 3:23-cv-5882-TMC

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

as shown in the emails between Plaintiff and Switchboard surrounding the terms of the offer. Dkt. 22, Exs. B, C, F; Dkt. 18, Ex. B. Plaintiff cannot prove he lacked meaningful choice and only speculates that the parties "concocted" a plan prior to his signing the offer letter to "misrepresent[] the relationship." Dkt. 21 at 18.

### III.      CONCLUSION

For the foregoing reasons, the Court should grant Switchboard's motion to compel arbitration and dismiss Switchboard from this litigation.

DATED this 12th day of January 2024.

Respectfully submitted,

SUMMIT LAW GROUP, PLLC

I certify that this memorandum contains 2,543 words, in compliance with the Local Civil Rules.

By *s/ Eva Sharf Oliver*
      Alexander A. Baehr, WSBA No. 25320
      Eva Sharf Oliver, WSBA No. 57019
      315 Fifth Avenue S., Suite 1000
      Seattle, WA  98104
      Telephone: (206) 676-7000
      Email: alexb@summitlaw.com
      evao@summitlaw.com

      *Attorneys for Defendant Switchboard Technology Labs, Inc.*

DEFENDANT SWITCHBOARD TECHNOLOGY LABS, INC.'S
REPLY ISO MOTION TO COMPEL ARBITRATION - 9
Case No. 3:23-cv-5882-TMC

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

**CERTIFICATE OF SERVICE**

I hereby certify that on this day I electronically filed the foregoing with the Clerk of the USDC, Western District of Washington, using the CM/ECF system which will send notification of such filing to the following:

*Plaintiff Pro Se*

Brad Erhart
300 SE 184th Avenue, Apartment 101
Vancouver, WA 98683
Email: china_nanomaterial@leo.spacejunk.dev

*Attorneys for Defendant Hartford Life and Accident Ins. Co., Inc.*

Sarah E Swale
JENSEN MORSE BAKER PLLC
1809 7th Avenue, Suite 410
Seattle, WA 98101
Email: sarah.swale@jmblawyers.com

*Attorneys for Defendant Trinet HR Xi, Inc.*

Catharine M. Morisset
Jeremy F. Wood
FISHER & PHILLIPS LLP
1700 7th Avenue, Suite 2200
Seattle, WA 98101
Email: cmorisset@fisherphillips.com
jwood@fisherphillips.com

DATED THIS 12th day of January 2024.

s/ Karen M. Lang
Karen M. Lang, Legal Assistant
karenl@summitlaw.com

DEFENDANT SWITCHBOARD TECHNOLOGY LABS, INC.'S
REPLY ISO MOTION TO COMPEL ARBITRATION - 10
Case No. 3:23-cv-5882-TMC

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001